**CONSUMER LAW PRACTICE**
Daniel T. LeBel
PO Box 720286
San Francisco, CA 94172
Tel: 415-513-1414
Fax: 877-563-7848
danlebel@consumerlawpractice.com

**WADDELL LAW FIRM LLC**
A. Scott Waddell
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
Tel: 816-914-5365
Fax:  816-817-8500
scott@aswlawfirm.com
(*pro hac vice* forthcoming)

**BELL LAW, LLC**
Bryce B. Bell (admitted *pro hac vice*)
Mark W. Schmitz (*pro hac vice* forthcoming)
Andrew R. Taylor (*pro hac vice* forthcoming)
2600 Grand Blvd., Suite 580
Kansas City, Missouri 6410
Tel: 816-886-8206
Fax:  816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com
AT@BellLawKC.com

Attorneys  for  Plaintiffs  JERMAINE  THOMAS,  JERMAINE  MILLER,  JAMIE  POSTPICHAL,
RONALD ELLISON, SARAH WATERS, KAMILAH RIDDICK, FELICIA REDDICK, TIARA
CROMWELL,  LYSHA  ENCARNACION,  LANI  HALE,  MELIZZA  WEAVER,  ALFREDO
SANCHEZ, and CLARISSA KELLY, individuals, on behalf of themselves and others similarly
situated,

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JERMAINE THOMAS, et al., individually and on behalf of others similarly situated,<br><br>                          Plaintiffs,<br><br>       v.<br><br>CRICKET WIRELESS LLC,<br><br>                          Defendant. | Case No. 3:19-cv-07270-WHA<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CRICKET WIRELESS LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA**<br><br>Date: March 26, 2020<br>Time:  8:00 a.m.<br>Courtroom: 12, 19th Floor<br><br>Judge: Hon. William H. Alsup |

# TABLE OF CONTENTS

Table of Contents………………………………………………………………………………2

Table of Authorities……………………………………………………………………………3

I.     INTRODUCTION AND BACKGROUND…………………………………………………6

II.    LEGAL STANDARD………………………………………………………………………6

III.   STATEMENT OF THE ISSUES TO BE DECIDED…………………………………………7

IV.    THIS COURT HAS PERSONAL JURISDICTION OVER ALL CLAIMS IN THIS CASE, INCLUDING THOSE BROUGHT BY PLAINTIFFS AND PUTATIVE CLASS MEMBERS WHO DO NOT RESIDE IN CALIFORNIA…………………………………7

    a.     Overview of RICO venue and personal jurisdiction…………………………………9

    b.     Cricket, at the time of filing, could be found in and transacted its affairs in the Northern District of California. Accordingly, this Court has personal jurisdiction pursuant to 18 U.S.C. § 1965(a) and/or (d)…………………………………………11

    c.     Alternatively, this Court has personal jurisdiction over Cricket pursuant to 18 U.S.C. § 1965(b)………………………………………………………………………………13

    d.     All of Plaintiffs' claims arise out of a common nucleus of operative facts…………15

    e.     *Bristol-Myers Squibb* does not change this analysis………………………………15

        i.     None of the claims in *Bristol-Myers Squibb* had nationwide venue or service of process provisions…………………………………………………………16

        ii.    *Bristol-Myers Squibb* did not create new law………………………………16

        iii.   *Bristol-Myers Squibb* was a mass tort, not a class action, and did not decide the issue of personal jurisdiction for federal courts…………………………17

V.     VENUE IS PROPER IN THIS DISTRICT……………………………………………………18

VI.    THIS COURT SHOULD NOT TRANSFER VENUE UNDER 28 U.S.C. § 1404………...19

    a.     If this Court does decide to transfer venue, this Court should not transfer to the Northern District of Georgia…………………………………………………………24

VII.   CONCLUSION……………………………………………………………………………24

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

# TABLE OF AUTHORITIES

**Case**                                                                                                    **Page**

*ACLU of N. Cal. v. Burwell*,
    2017 WL 4551492 (N.D. Cal. Oct. 11, 2017)………………………………………………19

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004)………………………………………………...7-10, 15

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
    169 F.Supp.3d 1079 (D. Or. 2016)………………………………………………...6, 7

*Allen v. ConAgra Foods, Inc.*,
    2018 WL 6460451 (N.D. Cal. Dec. 10, 2018)……………………………………………18

*Avocent Huntsville Corp. v. Aten. Int'l Co., Ltd.*,
    552 F.3d 1324 (Fed. Cir. 2008)……………….....……………………………………………8

*Barantsevich v. VTB Bank*,
    954 F.Supp.2d 972 (C.D. Cal. 2013)………………………………………………...10

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008)………………………………………………...6

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    137 S.Ct. 1773 (2017)………………………………………………...15-18

*Brown v. Kerkhoff*,
    504 F.Supp.2d 464 (S.D. Iowa 2007)………………………………………………...10

*Burger King Corp. v. Rudzewicz*,
    105 S.Ct. 2174 (1985)………………………………………………...13

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986)………………………………………………...9-11

*Cory v. Aztec Steel Building, Inc.*,
    468 F.3d 1226 (10th Cir. 2006)………………………………………………...9, 10

*Daie v. Intel Corp.*,
    2016 WL 641646, (N.D. Cal. Feb. 18, 2016)………………………………………………...21

*Damiani v. Adams*,
    657 F.Supp. 1409 (S.D. Cal. 1987)………………………………………………...10

*Erwin-Simpson v. AirAsia Berhad*,
    375 F.Supp.3d 8 (D.C. Cir. 2019)………………………………………………...9

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997)……………………………………………………….8, 10

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008)……………………………………………………..9, 10

*Gress v. Freedom Mortgage Corp.*,
  386 F.Supp.3d 455 (M.D. Pa. 2019)……………………………………………….18

*Go-Video, Inc. v. Akai elec. Co., Ltd.*,
  885 F.2d 1406 (9th Cir. 1989)………………………………………………….....13

*Hill v. Opus Corp.*,
  2011 WL 13272268 (C.D. Cal. Apr. 7, 2011)……………………………………….10

*Hung V. Vu, D.D.S. v. I Credit, LLC*,
  2017 WL 2686538 (N.D. Cal. June 22, 2017)……………………………………….19

*In re Takata Airbag Prods. Liability Litig.*,
  396 F.Supp.3d 1101 (S.D. Fla. 2019)……………………………………………….18

*IUE AFL-CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2nd Cir. 1993)………………………………………………………..8

*Ferrantino v. Sacramento County Office of Educ.*,
  2020 WL 1030892 (E.D. Cal. Mar. 3, 2020)………………………………………..19

*Jones v. Depuy Synthes Prods., Inc.*,
  330 F.R.D. 298 (N.D. Ala. 2018)…………………………………………………..18

*Laurel Gardens, LLC v. McKenna*,
  948 F.3d 105 (3rd Cir. 2020)……………………………………………………..9, 11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011)……………………………………………………..6, 7

*Murphy v. Aaron's, Inc.*,
  2019 WL 5394050 (D. Colo. Oct. 22, 2019)………………………………………..18

*Nutrimost,LLC v. Werfel*,
  2016 WL 5107730 (W.D. Pa. Mar. 2, 2016)………………………………………..9-10

*Oetiker v. Werke*,
  556 F.2d 1 (D.C. Cir. 1977)………………………………………………………..8

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006)……………………………………………………..7

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
    138 F.3d 65 (2nd Cir. 1998)……………………………………………………9-11

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997)……………………………………………………7, 10

*Robinson v. Penn Cent. Co.*,
    484 F.2d 553 (3rd Cir. 1973)……………………………………………………8

*Robinson Eng'g Co., Ltd. Pension Plan Trust v. George*,
    223 F.3d 445 (7th Cir. 2000)……………………………………………………8

*Saravia v. Sessions*,
    280 F.Supp.3d 1168 (N.D. Cal. 2017)……………………………………………19

*Sloan v. General Motors, LLC*,
    287 F.Supp.3d 840 (N.D. Cal. 2018)……………………………………………18

*Sotomayor v. Bank of Am., N.A.*,
    377 F.Supp.3d 1034 (C.D. Cal. 2019)……………………………………………18

*Stewart Org., Inc. v. Ricoh Corp.*,
    108 S.Ct. 2239 (1988)……………………………………………………………7

*Swamy v. Title Source, Inc.*,
    2017 WL 2533252 (N.D. Cal. June 12, 2017)……………………………19-21, 23

*Ultratech Inc. v. Ensure Nanotech (Beijing), Inc.*,
    108 F.Supp.3d 816 (N.D. Cal. 2015)……………………………………………15

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
    108 F.Supp.3d 733 (N.D. Cal. 2015)……………………………………………19

*U.S. v. Botefuhr*,
    309 F.3d 1263 (10th Cir. 2002)……………………………………………………8


**Statutes, Rules, and Regulations**

18 U.S.C. § 1965………………………………………………………………*passim*

28 U.S.C. § 1391………………………………………………………………9

28 U.S.C. § 1404………………………………………………………………19

Fed. R. Civ. P. 4………………………………………………………………9

Fed. R. Civ. P. 9………………………………………………………………11

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

## I.     INTRODUCTION AND FACTUAL BACKGROUND

This Court is already familiar with the factual allegations in this case, for they were previously before this Court in *Barraza v. Cricket Wireless, LLC*, 15-cv-247-WHA (N.D. Cal.). As a refresher: beginning in late 2006, and continuing through at least May of 2014, Cricket Wireless, LLC ("Cricket") lured consumers in with promises of "No Contract" wireless service. FAC ¶¶ 3, 16, 199, 495-97. This promise to consumers was the heart of Cricket's business model, which sought to carve out a niche in the U.S. wireless market by targeting value-conscious consumers who desired flexible services. FAC ¶ 141.

Beginning by at least May 1, 2012, and running through at least May 18, 2014, Cricket also falsely marketed itself as being able to provide "NATIONWIDE" and "UNLIMITED" 4G/LTE service. FAC ¶¶ 3, 9, 12, 481, 495-97, 502-03, 532-33. It did this in conjunction with selling 4G/LTE-capable phones for a significantly higher price. FAC ¶¶ 153-58. The 4G/LTE plans Cricket sold also went for a higher price than non-4G/LTE plans. FAC ¶ 150. As a result, Cricket made millions. In removing the *Barraza* case, Cricket represented to this Court that the phone-only damages for California alone exceeded $5,000,000.00 in value. *Barraza*, Doc. 1, ¶ 14.  Cricket's victims now ask for Cricket to be held accountable and to disgorge its ill-gotten gains.

## II.     LEGAL STANDARD

Plaintiffs embrace their burden of proof on this motion. When a motion to dismiss for lack of personal jurisdiction is decided on written materials, Plaintiffs "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Absent an evidentiary hearing, Courts "only inquire into whether the plaintiff[s'] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F.Supp.3d 1079, 1084 (D. Or. 2016) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). Uncontroverted allegations in the Complaint must be taken as true, *Boschetto*, 539 F.3d at 1015, and factual disputes

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

must be resolved in Plaintiffs' favor. *Mavrix Photo*, 647 F.3d at 1223; *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Further, "[w]hen a jurisdictional motion to dismiss depends, as in this case, on the assertion of a right created by a federal statute, the court should dismiss for lack of jurisdiction only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941 (11th Cir. 1997) (internal quotations omitted).

Cricket's alternative motion to transfer is a matter of discretion left to this Court. *Adidas*, 169 F.Supp.3d at 1085. Such motions require that the destination venue be one where the case could have been brought and must be considered on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 108 S.Ct. 2239 (1988).

## III.   STATEMENT OF THE ISSUES TO BE DECIDED.

    1)    Does this Court have personal jurisdiction over the RICO claims?

    2)    Should this Court exercise pendent personal jurisdiction over the non-RICO claims?

    3)    Is this Court the proper venue for the RICO claims?

    4)    Should this Court exercise the doctrine of pendent venue over the non-RICO claims?

    5)    Should this Court transfer this case to a venue foreign to *all* of the Plaintiffs?

## IV.   THIS COURT HAS PERSONAL JURISDICTION OVER ALL CLAIMS IN THIS CASE, INCLUDING THOSE BROUGHT BY PLAINTIFFS AND PUTATIVE CLASS MEMBERS WHO DO NOT RESIDE IN CALIFORNIA.

This Court has pendent personal jurisdiction over all claims in this case because it has personal jurisdiction over the Racketeer Influence and Corrupt Organizations Act ("RICO") claims. In this, the Court need go no further than *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004). In *Action Embroidery*, the Ninth Circuit joined the Second, Third, Fourth, Seventh, Tenth, D.C., and Federal Circuits in recognizing and adopting the doctrine of

pendent personal jurisdiction. *Action Embroidery*, 368 F.3d at 1180.[1]

"Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction" *Id.*

*Action Embroidery* was a suit brought under the federal Clayton Act, which contains special venue and nationwide service of process provisions: "We hold that the analyses of personal jurisdiction and venue under Section 12 of the Clayton Act are distinct. Specifically, we hold that the existence of personal jurisdiction under Section 12 does not depend on there being proper venue. We hold that Section 12's nationwide service of process provision authorizes personal jurisdiction over Wolcott in the Central District of California, and that the exercise of such jurisdiction complies with the requirements of the Due Process Clause of the Fifth Amendment. Further, we hold that the doctrine of pendent personal jurisdiction is the law of this circuit." 368 F.3d at 1181.

Plaintiffs recognize that this case is not brought under the Clayton Act. However, like the Clayton Act, RICO has special venue and service of process provisions. 18 U.S.C. § 1965. In fact, *Action Embroidery* expressly contemplated RICO cases as being proper for the exercise of pendent personal jurisdiction. *Action Embroidery*, 368 F.3d at 1179 (recognizing that RICO "contains special venue and nationwide service of process provisions").

---

[1] *See also Avocent Huntsville Corp. v. Aten. Int'l Co., Ltd.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008); *U.S. v. Botefuhr*, 309 F.3d 1263, 1272-75 (10th Cir. 2002); *Robinson Eng'g Co., Ltd. Pension Plan Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628-29 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2nd Cir. 1993); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3rd Cir. 1973).

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

### a. Overview of RICO venue and personal jurisdiction.

RICO, as federal law, may override the default rules of personal jurisdiction, Fed. R. Civ. P. 4(k)(1)(C), and venue, 28 U.S.C. § 1391(a). Through 18 U.S.C. § 1965, a section titled "Venue and process," Congress created this override, greatly expanding venue and personal jurisdiction in RICO cases. 18 U.S.C. § 1965; *Action Embroidery*, 368 F.3d at 1179.

Pertinent to this case, the provisions of § 1965(a) and (b) expand personal jurisdiction for RICO claims substantially beyond the default personal jurisdiction standard. While the Ninth Circuit has not directly addressed the question of whether § 1965(a) confers personal jurisdiction,[2] the majority of circuits to have addressed this question concluded that § 1965(a) confers personal jurisdiction: "First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based upon minimum contacts is established as to at least one defendant." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2nd Cir. 1998); *see also Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3rd Cir. 2020) (quoting and adopting *PT United*'s analysis and recognizing this as the "majority approach."); *FC Investment Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008) (quoting and adopting *PT United*'s analysis);[3] *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006) (considering *PT United*'s analysis and finding it "persuasive and consistent with congressional intent");[4] *Nutrimost, LLC v.*

---

[2] Cricket will likely argue that *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986) decided this, but Cricket would be incorrect. *Infra*, pp. 10-11.

[3] *FC Investment* was abrogated on other grounds. *See Erwin-Simpson v. AirAsia Berhad*, 375 F.Supp.3d 8, 20 (D.C. Cir. 2019), *appeal filed* (Apr. 24, 2019). Importantly, Plaintiffs do not argue that § 1965(a) is a grant of general jurisdiction.

[4] Plaintiffs recognize that, in approving of *PT United*, the Tenth Circuit characterized § 1965(a) as a venue statute. However, venue begs the question of personal jurisdiction, for a court cannot be the proper venue unless it has personal jurisdiction. Accordingly, even if this Court concludes that §

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

*Werfel*, Case No. 2:15CV531, 2016 WL 5107730, at *6 (W.D. Pa. Mar. 2, 2016) (citing to *FC Inv.*, *Cory*, and *PT United* for the proposition that, "The majority of circuit courts have concluded that a district court has jurisdiction to entertain a civil RICO claim only where personal jurisdiction based on minimum contacts are first established as to at least one defendant pursuant to 18 U.S.C. § 1965(a)."); *Barantsevich v. VTB Bank*, 954 F.Supp.2d 972, 989 (C.D. Cal. 2013) (quoting *PT United* for the proposition that § 1965(a) confers personal jurisdiction); *Hill v. Opus Corp.*, Case No. 10-04806 MMM (VBKx), 2011 WL 13272268 (C.D. Cal. Apr. 7, 2011) (same, and holding, "Thus, before the court can authorize nationwide service of process and bring all alleged participants in a RICO conspiracy before it, the threshold requirement of § 1965(a) must be satisfied as to at least one defendant")); *Brown v. Kerkhoff*, 504 F.Supp.2d 464, 492 (S.D. Iowa 2007) (quoting and adopting *PT United*, describing § 1965(a) as a "jurisdictional hook"); *Damiani v. Adams*, 657 F.Supp. 1409 (S.D. Cal. 1987) ("The initial requirement which must be met to confer personal jurisdiction in a RICO action is set out in 18 U.S.C. § 1965(a): [quotation of § 1965(a) omitted].").[5]

Any argument Cricket may make that *Butcher's Union* rejected this position is incorrect. ***First***, *Butcher's Union* did not even consider whether § 1965(a) confers personal jurisdiction. *See generally* 788 F.3d 535 (9th Cir. 1986). ***Second***, the reason *Butchers Union* found § 1965(b) inapplicable was because the plaintiffs had failed to stablish that Denver Lamb and Montfort had

---

1965(a) is nothing but a venue statute, by setting this Court as a proper venue for this case, § 1965(a) necessarily also confers personal jurisdiction.

[5] The Fourth and Eleventh Circuits, unlike the majority rule, held that § 1965(d) is the primary grant of personal jurisdiction. However, even if that is the correct decision, the result of this motion is the same. *Compare* § 1965(a) *with* § 1965(d); *see also ESAB Grp.*, 126 F.3d at 627 (finding personal jurisdiction existed pursuant to 18 U.S.C. § 1965(d) when defendants were served in the district in which they "reside, are found, or transact their affairs."); *Republic of Panama*, 119 F.3d at 942 ("Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found. When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."); *Action Embroidery*, (discussing, but not disagreeing with, *ESAB*'s finding of personal jurisdiction under 18 U.S.C. § 1965(d)).

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

specific knowledge of or participation in the conspiracies for which that court had personal jurisdiction. 788 F.2d at 539. In contrast, Plaintiff clearly pleads that Cricket and all of the dealers had specific knowledge of, and in fact participated in, the underlying conspiracy. FAC ¶¶ 201-18, 501-01, 522-23.[6] **Third**, the Second Circuit in *PT United* analyzed *Butcher's Union* and found that the result in *Butcher's Union* was consistent with its conclusion that § 1965(a) grants personal jurisdiction. 138 F.3d at 70-72.

Returning to § 1965(b), the plain language indicates that it is the secondary, catch-all, provision. That is, it provides a means of exercising personal jurisdiction over "other parties." This phrasing makes little sense if § 1965(b) were intended to be the primary means of expanding personal jurisdiction. To the contrary, this phrasing supports the conclusion that § 1965(a) grants personal jurisdiction. Accordingly, the first inquiry is whether Cricket, at the time of filing, resided in, could be found in, had an agent in, and/or transacted its affairs in this District.

> **b. Cricket, at the time of filing, could be found in and transacted its affairs in the Northern District of California. Accordingly, this Court has personal jurisdiction pursuant to 18 U.S.C. § 1965(a) and/or (d).**

A company "transacts his affairs" in a given judicial district when it "transacts business" in that district. *See Laurel Gardens*, 948 F.3d at 119 (analogizing §1965(a) to the Clayton Act's similar provision, which uses the phrase "transacts business."). Plaintiff pleads that Cricket does so. FAC ¶ 24, (Cricket "was, ***and is***, an entity doing business in California") (emphasis added); *see also id.* ¶¶ 490-91.[7] Cricket cannot in good faith deny that, as of the time of filing, it was transacting business in the Northern District of California. By way of example, Cricket's coverage maps, as of March 3, 2020, show *extensive* (alleged) coverage in the San Francisco Bay Area.[8] At the core of

---

[6] Knowledge may be pled generally. Fed. R. Civ. P. 9(b).

[7] To the extent the Court concludes that this pleading is not specific enough, the following evidence provides a reason why the proper remedy would be to give Plaintiff leave to amend, not to dismiss or transfer this case.

[8] https://www.cricketwireless.com/map.html (last visited March 3, 2020).

this case is an allegation (which Cricket has not controverted) that Cricket told investors that it would take too much time and money to develop the needed 4G/LTE infrastructure to provide the coverage it promised. *See* FAC ¶¶ 191. Thus, while Plaintiff recognizes that this coverage map is from over three months after this case was filed, Cricket's own admissions establish that it simply is not possible to develop that level of coverage in three months.

In the context of a company, to be "found" clearly means to maintain offices, have employees, sell products, and/or perform services. Cricket clearly does so in California. Doc. 17-2, ¶ 6 (stating that there are no "***management-level***" employees in California. This specificity gives at least an inference that there are *non-management* employees in this District). Also, Cricket's "store locator" map shows at least 50 storefronts in the San Francisco Bay Area alone.[9]

Further, Cricket's webpage also includes numerous other representations showing that it transact(ed) its affairs and could be found in the Northern District of California. For example, Cricket's homepage includes a representation that "Cricket has a great, big network that covers over 99% of Americans"[10] complete with a map with the majority of the country—including virtually all of the Northern District of California—shaded in green.[11] On November 20, 2019, Cricket issued a press release describing itself as having a "reliable nationwide network."[12] The same self-

---

[9] https://www.cricketwireless.com/stores/ (last visited March 3, 2020). Screenshot was taken on March 3, 2020.

[10] As of the 2010 census, the San Francisco Bay Area (only a portion of the Northern District of California generally) had over 7 million inhabitants. http://www.bayareacensus.ca.gov/ (last visited March 3, 2020). Meanwhile, the total population of the United States at that time was approximately 309 million. https://www.census.gov/programs-surveys/decennial-census/decade.html (last visited March 3, 2020). As a result, the Bay Area alone consisted of over 2% of the total U.S. Population. Thus, even if Cricket covered 100% of U.S. residents outside the Northern District of California, its representation of covering over 99% *requires* that it also cover *at least some* of the Bay Area. Put another way, Cricket's own representations show that it transacts business in this District.

[11] https://www.cricketwireless.com/ (last visited March 3, 2020).

[12] https://www.cricketwireless.com/newsroom/news-release/40-Dollar-BYOD.html (last visited March 3, 2020).

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

description was made in an October 11, 2019 press release.[13] As a reminder, Plaintiff need only make a *prima facie case* for personal jurisdiction. This is clearly the type of evidence that satisfies that burden.

The analysis therefore shifts to the Fifth Amendment and whether Cricket had sufficient "minimum contacts" to satisfy Due Process. *Burger King Corp. v. Rudzewicz*, 105 S.Ct. 2174, 2183 (1985).[14] Cricket was headquartered in California during the Class Period, FAC ¶ 26, 43, and the business and marketing decisions that were integral to the RICO Enterprise were made in California. FAC ¶ 251-53, 499. As a result, this Court's exercise of personal jurisdiction over the RICO claims pursuant to 18 U.S.C. § 1965(a) does not violate the Fifth Amendment.

### c. Alternatively, this Court has personal jurisdiction over Cricket pursuant to 18 U.S.C. § 1965(b).

18 U.S.C. § 1965(b) alternatively overrides the default personal jurisdiction rules, providing that: "In any action under section 1964 of this chapter … in which it is shown that the ends of justice require that *other parties* residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." (emphasis added). In short, if this Court would have default personal jurisdiction over *any* of the co-conspirators, then it has personal jurisdiction over *all* of the co-conspirators (of which Cricket is one). Clearly this is the case.

***First***, Cricket admits that this Court has personal jurisdiction over it when it asks for dismissal of only twelve of the thirteen Plaintiffs, conceding that this Court has personal jurisdiction over Sarah Waters' claims.

---

[13]  https://www.cricketwireless.com/newsroom/news-release/cricket-adds-lg-harmony-3.html  (last visited March 3, 2020).

[14]  In *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, the Ninth Circuit held that in RICO cases, the "minimum contacts" analysis focuses not on the contacts with the forum state, but on the defendant's "national contacts." 885 F.2d 1406, 1414-15 (1989). However, the Court need not decide that issue, for the end result is the same.

*Second*, Cricket and at least one of the 2,000+ co-conspirators operated storefronts in the Northern District of California, FAC ¶ 26 ("and sale of mobile cellular products and services in California"), ¶ 187 (Cricket could not provide coverage in San Francisco), ¶ 189 (Cricket 3G was offered in the continental 48 states plus the District of Columbia), meaning this Court would have personal jurisdiction over that co-conspirator even if it did not have personal jurisdiction over Cricket. 18 U.S.C. § 1965(b) then gives this Court personal jurisdiction over Cricket.

Cricket may argue that those Northern District of California co-conspirators were not part of the conspiracy *as to the named Plaintiffs* because the named Plaintiffs did not buy from those co-conspirators.[15] But this misses the point. Without those co-conspirators playing along, the RICO Enterprise would fail, for even Cricket acknowledged that they were integral to Cricket's business model. FAC ¶¶ 203-04. After all, this was a nationwide marketing scheme implemented from the top-down. FAC ¶¶ 142-44, 170, 205-07, 490-91, 494, 502. Put another way, if *any one* of the co-conspirators blew the whistle, the truth would get out that Cricket could not actually provide the promised coverage and the Enterprise would crumble. FAC ¶ 218, 501.

*Third*, no other court would have personal jurisdiction over *all* of the conspirators. Plaintiffs have alleged that there were over 2,000 co-conspirators with Cricket. FAC ¶ 514. Many of the co-conspirators were independent dealers (i.e., franchisees). *Id.* It requires only common sense to recognize that many, if not most or even all, of these co-conspirators would operate in different states (e.g., co-conspirator #1 operated only in Oregon, co-conspirator #2 operated only in New Mexico, etc.).[16] Importantly, different Plaintiffs purchased their phones in different states. *See* Doc. 17, pp. 14-16. For this reason, all of Cricket's arguments against personal jurisdiction are reasons

---

[15] To the extent jurisdiction under this Section hinges on a Plaintiff being located in this District, this can easily be corrected via amending or supplementing the Complaint.

[16] At this time, Plaintiffs do not know the domicile of each and every co-conspirator. Accordingly, to the extent this Court determines knowledge of each domicile is required, Plaintiff requests leave to conduct jurisdictional discovery.

why there is no one single district would have personal jurisdiction over all 2,000+ co-conspirators, for it is a virtual impossibility that *all 2,000+* independent dealers shared any one state in common.

### d. All of Plaintiffs' claims arise out of a common nucleus of operative facts.

Because this Court has personal jurisdiction over Defendant with respect to the RICO claims, it can exercise pendent personal jurisdiction over the other claims. All Plaintiffs need establish is that the non-RICO claims arise out of a "common nucleus of operative facts." *Action Embroidery*, 368 F.3d at 1180; *Ultratech Inc. v. Ensure Nanotech (Beijing), Inc.*, 108 F.Supp.3d 816, 823 (N.D. Cal. 2015). Such is clearly the case.

Cricket argues that Plaintiffs' claims relate back to "the sale of the 4G/LTE devise[s] and accompanying service plan[s]" and "the alleged absence of 4G/LTE service[s]," Doc. 17, p. 22.  But this is incorrect. The *marketing* is an integral part of the claim. It is axiomatic that claims sounding in fraud, such as all of the claims Plaintiffs make, require some sort of deceptive, false, unfair, etc. representation (or concealment of the truth). Tellingly, the primary predicate acts which form the basis of the RICO claim are Cricket's commission of mail and wire *fraud*. FAC ¶¶ 489-97, 502-03, 512. Cricket marketed its 4G/LTE coverage to consumers as nationwide and unlimited, FAC ¶¶ 9, 12, 178, 215, but at the same time told the SEC that it could not, and would not, be able to actually provide that coverage. FAC ¶ 10, 13, 191. This nucleus of facts is the core of each of Plaintiffs' claims. Accordingly, pendent jurisdiction is proper.

### e. *Bristol-Myers Squibb* does not change this analysis.

Cricket is likely to argue, on reply, that *Bristol-Myers Squibb* changes this analysis. This is incorrect for a few reasons. First, none of the claims in *Bristol-Myers Squibb* had a nationwide venue and service of process provision, like the RICO claim has here. *Second, Bristol-Myers Squibb*

did not create new law, it merely applied previously-settled principles.[17] Third, *Bristol-Myers Squibb* was a mass tort, while this is a class action.

### i. None of the claims in *Bristol-Myers Squibb* had nationwide venue or service of process provisions.

Of note, all of the claims brought in *Bristol-Myers Squibb* were brought under California state law. 137 S.Ct. at 1778. This case, then, stands in stark contrast. Not only have Plaintiffs asserted state common law and state statutory claims for states other than California, but Plaintiffs have also asserted a unified claim under federal law: RICO. The California state law claims in *Bristol-Myers Squibb*, obviously, did not have nationwide venue and service of process rights— RICO does. *See supra* and *infra*. Accordingly, even if the *Bristol-Myers Squibb* decision was broad and reached the conclusions Cricket asserts, it would still be distinguishable because the nationwide venue and service of process provision of RICO allow this Court to exercise pendent personal jurisdiction over the non-RICO claims.

### ii. *Bristol-Myers Squibb* did not create new law.

*Bristol-Myers Squibb* did not create new law. Rather, it applied "settled principles regarding specific jurisdiction." 137 S.Ct. at 1781. Its reasoning was the same as that of prior decisions: there "'must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 1781. Without such connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Importantly, Plaintiff does not advocate for the use of the "sliding scale approach" the Supreme Court took issue with in *Bristol-Myers Squibb*. *Id.*

Ultimately, *Bristol-Myers Squibb* found California's approach to personal jurisdiction

---

[17] Notably, *Bristol-Myers Squibb* contains no discussion of pendent personal jurisdiction. *See generally* 137 S.Ct. 1773.

incompatible with the constraints imposed by the Fourteenth Amendment's Due Process Clause, which "limits the personal jurisdiction of state courts." *Id.* at 1779. That was so not because of any "practical problems resulting from litigating in the forum" but because the due-process "interests" of the Fourteenth Amendment "encompass[] the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers*, 137 S. Ct. at 1780. In other words, the Fourteenth Amendment's "restrictions on personal jurisdiction" offer "more than a guarantee of immunity from inconvenient or distant litigation," they also "are a consequence of territorial limitations on the power of the respective States." *Id.*

In *Bristol-Myers Squibb*, this "federalism interest" proved "decisive." *Id.*; *see also id.* at 1788 (Sotomayor, J., dissenting) ("The majority's animating concern, in the end, appears to be federalism."). California's exercise of sovereign power over the claims of, say, Ohio plaintiffs, would have encroached on the interests of Ohio courts to hear their residents' cases and apply their own procedural rules. As a result, California's exercise of personal jurisdiction violated the Fourteenth Amendment's Due Process clause even if there were no inconvenience to the defendants and even if California was the most convenient location for litigation. *Id.* at 1780–81.

However, the Court's decision in *Bristol-Myers* was narrow—nothing more than a "straightforward application . . . of settled principles of personal jurisdiction." *Id.* at 1783; *see id.* at 1781 ("Our settled principles regarding specific jurisdiction control this case."). And the Court was careful to limit the scope of its decision. Because of how narrow the holding in *Bristol-Myers Squibb* was, the lack of any discussion of pendent personal jurisdiction is dispositive. *See generally* 137 S.Ct. at 1773.

### iii. *Bristol-Myers Squibb* was a mass tort, not a class action, and did not decide the issue of personal jurisdiction for federal courts

Contrary to Cricket's arguments, *Bristol-Myers Squibb* took pains to note that its decision concerned "the due process limits on the exercise of specific jurisdiction by a State" and that the

opinion did not touch "on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1783-84. Nor did it decide whether the same result would obtain in a class action under Rule 23. *See id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action.").

Despite this, Cricket is not the first defendant to try and stretch *Bristol-Myers Squibb* beyond its holding. As a result, a clear majority has already emerged, rejecting Cricket's exact argument (with multiple also doing so in the context of pendent personal jurisdiction). *E.g.*, *In re Takata Airbag Prods. Liability Litig.*, 396 F.Supp.3d 1101 (S.D. Fla. 2019) (rejecting argument that *Bristol-Myers Squibb* bars courts from exercising pendent personal jurisdiction of non-resident putative class members' claims); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034 (C.D. Cal. 2019) (holding that *Bristol-Myers Squibb* does not apply to class actions); *Gress v. Freedom Mortgage Corp.*, 386 F.Supp.3d 455 (M.D. Penn. 2019) (same); *Murphy v. Aaron's, Inc.*, Case No. 19-cv-00601-CMA-KLM, 2019 WL 5394050 (D. Colo. Oct. 22, 2019) (holding that *Bristol-Myers Squibb* does not apply to class actions); *Sloan v. General Motors, LLC*, 287 F.Supp.3d 840 (N.D. Cal. 2018) (holding *Bristol-Myers Squibb* did not change any law and rejecting argument that *Bristol-Myers Squibb* precludes exercise of pendent personal jurisdiction); *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298 (N.D. Ala. 2018) (holding that *Bristol-Myers Squibb* does not apply to class actions, citing essential differences between class actions and mass tort actions); *Allen v. ConAgra Foods, Inc.*, Case No. 3:13-cv-01279-WHO, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) (exercising pendent personal jurisdiction after rejecting argument that *Bristol-Myers Squibb* required dismissal of non-resident class members).

## V.      VENUE IS PROPER IN THIS DISTRICT.

As noted above, RICO has a special venue statute, which overrides the default venue rules. Specifically, 18 U.S.C. § 1965(a) provides that venue is proper in any district in which the defendant resides, is found, has an agent, or transacts his affairs. Plaintiffs have already outlined the

evidence showing that Cricket transact(ed) its affairs, and could be found, in the Northern District of California, making venue here proper. *See supra* (discussion of 18 U.S.C. § 1965(a)).

For the same reasons that pendent personal jurisdiction is proper, so to is pendent venue. *Saravia v.* Sessions, 280 F.Supp.3d 1168, 1191 (N.D. Cal. 2017); *ACLU of N. Cal. v. Burwell*, Case No. 16-cv-03539-LB, 2017 WL 4551492, at *4 (N.D. Cal. Oct. 11, 2017); *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F.Supp.3d 733, 753 (N.D. Cal. 2015). That is, all of Plaintiffs' claims are closely related, *see supra*, so the exercise of pendent venue preserves judicial economy. Assuming, *arguendo¸* that venue in this district were improper as to the non-RICO claims, this Court should nevertheless apply the doctrine of pendent venue, and retain this case, for the same reasons that it should exercise pendent personal jurisdiction over those claims.

Plaintiffs also note that, even if this Court concludes that it is not the proper venue, transfer—not dismissal—is the proper remedy. In *Hung V. Vu, D.D.S. v. I Credit, LLC*, this Court recognized that the Ninth Circuit has established criteria for dismissal, as opposed to transfer, essentially requiring that the claim be brought "in bad faith or with the intention to harass." Case No. C. 17-00790 WHA, 2017 WL 2686548, at *2 (N.D. Cal. June 22, 2017). Clearly this case is not brought in bad faith or with the intent to harass, so dismissal is not warranted.

## VI.   THIS COURT SHOULD NOT TRANSFER VENUE UNDER 28 U.S.C. § 1404.

While Cricket argues that the burden of proof on the motion to transfer lies with Plaintiffs, this is only if Cricket were correct that this Court is an improper venue. This is addressed above. Because this Court is the proper venue, Cricket's request seeks *permissive* transfer and therefore Cricket bears the burden of proof. *See Swamy v. Title Source, Inc.*, Case No. C. 17-01175 WHA, 2017 WL 2533252, at *2 (N.D. Cal. June 12, 2017) (referencing defendant's "heavy burden").

Transfer to an alternative venue requires consideration of (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); *Ferrantino v. Sacramento County Office of Educ.*, Case No. 2:18-cv-3063 JAM DB PS, 2020 WL

1030892, at *5 (E.D. Cal. Mar. 3, 2020). Cricket also posits a litany of other factors to be considered. However, those factors still do not collectively support transfer. Importantly, most of those factors, if accepted, would virtually always require transfer to the district in which a Defendant is located. To adopt the heavy-handed approach Cricket advocates would severely undermine both the principles behind § 1965(a) and the policy underlying specific jurisdiction.

**Convenience of the Parties**

This case is unlike many (if not all) of the previous cases to have considered a transfer of venue in that this Court, and importantly the Judge assigned to this case, are already familiar with many of the facts, issues, and allegations in this case.

This case is a putative class action. Thus, "the possibility of certification therefore lends importance to name plaintiff's convenience in the transfer analysis." *Swamy*, at *2. While it is true that the named Plaintiffs are geographically diverse, Cricket fails to articulate why the Northern District of Georgia is a more convenient venue *for the named Plaintiffs* than here (only one of which is located in Georgia, but none are in the Northern District of Georgia). As a result, Cricket's arguments "glide[] over the existence of the putative state-wide class. If a California class is certified, lead plaintiff would represent the interests of class members. To transfer this action to [Atlanta] would cause him financial hardship and compromise his ability to attend hearings." *Swamy*, at *2.

**Convenience of the Witnesses**

The convenience of the witnesses does not "strongly favor" transfer. Whether this case remains pending here or is transferred elsewhere, depositions will occur wherever the witnesses live. The cost involved will largely be the same, given that none of the attorneys in this case are based in the Northern District of Georgia (or Georgia at all, for that matter).  As a result, Cricket cannot prove that there would be a *significant* reduction in the burden placed upon its employees by remaining in this Court.

**Interests of Justice**

In deciding whether the interest of justice favors transfer, Courts consider "relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of law, and burdening citizens of an unrelated forum with a jury duty. *Daie v. Intel Corp.*, Case No. 1C 15-05255-WHA, 2016 WL 641646, at *3 (N.D. Cal. Feb. 18, 2016).

*Court congestion*

Court congestion weighs against transfer. The median time from filing to trial for the 12-month period ending September 30, 2019 in the Northern District of Georgia was 32 months.[18] In contrast, that same median time for the same data set for this District was 22.8 months.[19] Meanwhile, the Northern District of Georgia had a total of 604 civil cases pending per judgeship during that time period, while this District had 564 civil cases per judgeship.[20] Thus, the courts of this district appear less congested than those of the Northern District of Georgia, making this factor weigh against transfer.[21] *See Swamy*, 2017 WL 2533252, at *3 (using Federal Court Management Statistics as basis for evaluating court congestion, finding that 78 cases per judge difference did not favor transfer)

*Local interest and Conflicts of Law*

While these factors are largely neutral, Plaintiffs note that there are multiple counts brought pursuant to California law and the choice-of-law analysis favors the application of California law. FAC ¶¶ 251-53. Further, as this Court has previously noted, California has a substantial percentage of the nation's population, giving California a further local interest. *Swamy*, at 2017 WL 2533252, at *3. Accordingly, these factors weigh against transfer.

---

[18] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf
[19] *Id.*
[20] *Id.* Upon information and belief, this caseload includes civil and criminal.
[21] While the total number of pending cases is higher in this district, this district also has more judges, thereby reducing the per judge congestion.

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

*Burdening Citizens of an unrelated forum*

This factor clearly weighs against transfer. While Cricket may now be based in Atlanta, it was not based there at the time of the relevant conduct. Rather, Cricket was based in California at the time of such conduct, giving California residents a greater interest in deciding this case.

*Plaintiffs did not commit an obvious error*

Cricket argues that this factor weighs against Plaintiffs because the venue issue is an "obvious error." Doc. 17, p. 25. But as noted above, this is clearly not the case. Tellingly, Cricket's motion *does not address RICO at all*. There is no reference, direct or indirect, to § 1695. Even if this Court concludes that Plaintiffs' choice of venue was in error, it cannot be said that it was an "obvious error," for Plaintiffs have substantial good-faith arguments for venue in this Court.

**Location where the Agreements were Negotiated and Executed**.

While this factor might not favor this district, it certainly does not favor the Northern District of Georgia either. Again, at the time of the alleged conduct, Cricket/LEAP's headquarters were based in San Diego, California, not in Atlanta, Georgia.

**State most familiar with the Governing Law.**

As noted above, this factor is largely neutral, with a slight lean against transfer, given the issues of California law in play.

**Plaintiffs' Choice of Forum.**

While Cricket may not like it, Plaintiffs chose this forum. Thus, even if this factor should be given little weight, as Cricket argues, it still weighs against transfer.

**Parties' Contacts with the Forum.**

Again, Cricket tries to erase the fact that at the time of the alleged misconduct, Cricket/LEAP was headquartered in California. Indeed, the very decisions that led to the alleged misconduct were *made* here. As a result, this factor clearly weighs against transfer.

**Contacts Relating to the Cause of Action.**

This factor is either neutral or weighs against transfer. Despite seemingly insinuating that this factor favors transfer, Cricket cannot identify a single contact the state of Georgia (much less the Northern District of Georgia) has related to the claims in this case. In contrast, there are clear and substantial contacts with California, causing this factor to weigh against transfer.

**Differences in the Costs of Litigation, Availability of Compulsory Process, and Ease of Access to Sources of Proof.**

While Cricket contends that litigating in the Northern District of Georgia will be less expensive, it does not actually proffer evidence to support that conclusion. Even if Cricket's *current* managerial employees are based in Atlanta, those people are not necessarily witnesses. Tellingly, Cricket does not identify *who* the primary witnesses are or if they are even still employed with Cricket.[22] Further, Cricket fails to offer any evidence as to where those witnesses are located. Given that Cricket moved its headquarters after it was purchased by AT&T and after the alleged misconduct, there is simply nothing to substantiate Cricket's claim that its "current **and former** personnel" are concentrated in Atlanta. Doc. 17, p. 32 (emphasis added). Given that Cricket moved its headquarters to Atlanta after it was purchased by AT&T, and after the alleged misconduct ended, it is reasonably likely that many of the primary witnesses would still be living in California, where Cricket's prior headquarters was located.

Further, Cricket gives no statement about how and where documents are stored, which is obviously important when considering the costs in *obtaining* those documents in discovery. *Swamy v. Title Source, Inc.*, Case No. C 17-01175 WHA, 2017 WL 2533252, at *3 (N.D. Cal. June 12,

---

[22] By way of example, Cricket's current President assumed that role in November 2015—*after* the alleged misconduct. https://www.prnewswire.com/news-releases/john-dwyer-appointed-new-president-of-cricket-wireless-300186089.html (last visited March 4, 2020). Similarly, Cricket's current Chief Marketing Officer assumed her role in 2016, also after the alleged misconduct. https://www.prnewswire.com/news-releases/cricket-wireless-appoints-tiffany-baehman-as-its-new-vice-president-and-chief-marketing-officer-300247092.html (last visited March 4, 2020).

2017) ("relative ease of access to evidence in Detroit does not justify transfer because, as venue discovery revealed, defendant stores all the financial and administrative records that are relevant to this action electronically."). Because Cricket is the party seeking transfer, it has the burden of proving that the costs would be substantially lessened by transferring to the Northern District of California. But it fails to even come close.

In sum, the factors collectively weigh against transfer, so this Court should deny Cricket's motion for permissive transfer.

### a. If this Court does decide to transfer venue, this Court should not transfer to the Northern District of Georgia.

Obviously, Plaintiffs believe that transferring venue away from this Court is improper. However, in the event this Court determines that such a transfer is proper or necessary, the Northern District of Georgia should not be its destination. Rather this Court should transfer this case to the Southern District of California, where Cricket was headquartered at the time of the alleged conduct, or should transfer each respective Plaintiff to the district in which their non-RICO claims arose.

## VII.   CONCLUSION.

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss. To the extent this Court decides to transfer this case to an alternative venue, it should transfer to the Southern District of California, not to the Northern District of Georgia.

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE

1

/s/ Bryce B. Bell
Dated: March 5, 2020

2

**CONSUMER LAW PRACTICE**

3

Daniel T. LeBel
PO Box 720286

4

San Francisco, CA 94172
Tel: 415-513-1414

5

Fax: 877-563-7848

6

danlebel@consumerlawpractice.com

7

**WADDELL LAW FIRM LLC**
A. Scott Waddell

8

2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108

9

Tel: 816-914-5365
Fax:  816-817-8500

10

scott@aswlawfirm.com
(*pro hac vice* forthcoming)

11

**BELL LAW, LLC**

12

Bryce B. Bell (admitted *pro hac vice*)
Mark W. Schmitz (*pro hac vice* forthcoming)

13

Andrew R. Taylor (*pro hac vice* forthcoming)
2600 Grand Blvd., Suite 580

14

Kansas City, Missouri 6410
Tel: 816-886-8206

15

Fax:  816-817-8500
Bryce@BellLawKC.com

16

MS@BellLawKC.com
AT@BellLawKC.com

17

*Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO CRICKET WIRELESS, LLC'S MOTION TO DISMISS OR TRANSFER VENUE