UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE THOMAS, JERMAINE MILLER, JAMIE POSTPICHAL, RONALD ELLISON, SARAH WATERS, KAMILAH RIDDICK, FELICIA RIDDICK, TIARA CROMWELL, LYSHA ENCARNACION, LANI HALE, MELIZZA WEAVER, ALFREDO SANCHEZ, and CLARISSA KELLY, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRICKET WIRELESS LLC,<br><br>Defendant. | No. C 19-07270 WHA<br><br>**ORDER ON MOTION TO DISMISS OR TRANSFER** |

**INTRODUCTION**

In this putative class action, defendant moves to dismiss for lack of personal jurisdiction and improper venue, or to transfer venue. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

The claims in the first-amended complaint, our operative complaint, all stem from allegations that Defendant Cricket Wireless, LLC, engaged in a marketing scheme touting nationwide, unlimited 4G/LTE coverage, despite Cricket knowing that its service fell far short of providing 4G/LTE coverage nationwide. The alleged scheme ran from May 2012 until May 2014, when AT&T, Inc., acquired Cricket.

The parties agree that at all times, Cricket remained a Delaware limited liability company. Its sole member, according to the complaint, had been Leap Wireless International, Inc., up until the AT&T merger in 2014. Both sides agree (Cricket by sworn declaration) that Leap maintained its principal place of business, including its principal executive offices, in San Diego prior to the merger. Following its acquisition, the complaint alleges that Leap remained headquartered in California. Cricket, however, swears that Leap moved its principal place of business to Georgia. Plaintiffs provide no counter declarations or affidavits. Regardless, both sides agree that Leap no longer remained a member of Cricket following the merger and that AT&T Mobility II LLC, Leap's replacement, called Atlanta home. At bottom, the parties agree that Cricket maintained its principal place of business in California for the entire period during which the alleged wrongful conduct occurred (FAC ¶¶ 41–48; Decl. Begue ¶¶ 3–9).

As discussed, the complaint alleges that Cricket lured consumers into buying its phones and service with advertisements Cricket should have known to be false. Aided by Cricket's publicly-available SEC reports, the complaint alleges that Cricket maintained a network of retail stores, some owned by Cricket, others by franchisees, to sell its phones and service to consumers. The retail stores allegedly received "top-down" product and marketing directives, including "standardized marketing media" touting Cricket's 4G/LTE capabilities. The independent dealers also received group emails from a "Cricket corporate entity" regarding various aspects of the business, including marketing. "On information and belief," the complaint alleges that "Cricket's offices in California" made "all business and marketing decisions, including decisions to not expand 4G/LTE coverage [while] continu[ing] to market 'Unlimited 4G/LTE[.]'" The complaint further alleges that the "scheme [pled] was, logically, formulated at the senior executive levels given the top-down nature of the campaign, the cost of running a national ad campaign, and the strategic importance of such a campaign." Plaintiffs do not submit any affidavits in support of their unverified allegations. Still, Cricket's declarations do not controvert any of these allegations (FAC ¶¶ 200–09, 251, 252, 509).

As for our plaintiffs, one resided in California during the proposed class period but moved elsewhere by the time of filing (plaintiff Sarah Waters). Another two resided in

California at the time of filing, but purchased their phones and resided outside of the state between 2012 and 2014 (plaintiffs Jermaine Thomas and Melizza Weaver). Plaintiff Clarissa Kelly resided in Georgia at the time of filing. The other named plaintiffs all resided in states other than Georgia and California (FAC ¶¶ 28, 32, 38, 40, 57).

Plaintiffs filed this putative class action in November 2019. As both sides note in their briefs, our history with the underlying allegations, however, began in June 2015 with different plaintiffs. Cricket and Leap removed an earlier action by Flor Barraza against them from the Superior Court of California for the County of San Francisco, alleging federal jurisdiction under the Class Action Fairness Act. Another plaintiff joined Barraza's action, represented by one of the law firms now before us with new plaintiffs. The allegations in the *Barraza* complaints largely mirror those in the operative complaint here (Case No. 15-02471 WHA (*Barraza*), Dkt. Nos. 1, 55).

In removing the action, Cricket asserted its members resided in Delaware, Georgia, and Texas, while Leap called Delaware and Georgia home. Plaintiff Barraza both purchased her phone and resided in California. Plaintiff Henson purchased her phone in Kansas and resided in Missouri. Instead of challenging personal jurisdiction, Cricket sought to compel arbitration. An order denied the motion, finding a summary trial necessary to determine disputed facts as to the formation of the purported arbitration agreements (*Barazza*, Dkt. Nos. 46, 49, 64, 71). In spite of orders to the contrary, Cricket refused to comply with the initial disclosure requirements of Rule 26 and plaintiffs' discovery requests that went beyond what Cricket viewed as relevant to enforcement of the arbitration agreement.

Cricket appealed the arbitration order, but ultimately dismissed the appeal following plaintiffs' acceptance of a Rule 68 offer on an individual basis shortly before the summary trial commenced. The parties voluntarily dismissed the action with prejudice in December 2015. At a case management conference just before the dismissal, the undersigned asked each party, "is there any scenario under which the merits of the case could come back to life?" Both responded no and later represented that no side deal existed to allow re-filing of a similar case in some other court (*Barraza*, Dkt. No. 108).

Nevertheless, plaintiff's counsel resurfaced with these allegations in September 2016, this time at the United States District Court for the Western District of Missouri (W.D. Mo., Case No. 16-1065). Counsel brought the Missouri action on behalf of two current plaintiffs, Jermaine Thomas and Jamie Postpichal, both residents of Missouri during the class period. Again Cricket moved to compel arbitration. This time, however, the parties stipulated to a dismissal without prejudice before receiving a decision. Each side bore their own fees and costs. The parties dismissed the action, Cricket represents, subject to a tolling agreement that "allowed the parties to discuss an early resolution" (MTD at 2).

The parties' tolling agreement expired on November 4, 2019, the day our plaintiffs filed this putative class action. In February 2020, plaintiffs amended the complaint. This third iteration of the lawsuit notably added a federal claim under the Racketeering Influenced and Corrupt Organizations Act (RICO), in addition to a claim for "public injunctive relief" and several claims for violations of state advertising and consumer-protection laws.

Rather than try again for an order compelling arbitration, Cricket now moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3), or to transfer to the United States District Court for the Northern District of Georgia under Sections 1404(a) or 1406(a) of Title 28. Still, "Cricket intends to move to compel arbitration immediately after the case is transferred or re-filed in an appropriate venue" (MTD at 4).

Cricket submits two sworn declarations with its motion to dismiss, both from AT&T employees whom maintain and are familiar with Cricket's corporate records. Plaintiffs submit no affidavits or declarations.

An order vacated the hearing in light of the national health emergency and the motion's suitability for submission on the papers (Dkt. No. 25). This order follows full briefing.

## ANALYSIS

**1.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

As an initial matter, this order notes that plaintiffs' briefing largely addressed jurisdictional theories under RICO. Because personal jurisdiction is justified based on Cricket's minimum contacts with California, we need not wade through the RICO analysis.

4

Personal jurisdiction can be either general or specific. General jurisdiction refers to the authority of a court to exercise jurisdiction even where the claim for relief is unrelated to the defendant's contacts with the forum. Specific jurisdiction, by contrast, exists when a suit arises out of or is related to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). Plaintiffs do not expressly argue that the exercise of general jurisdiction over Cricket is appropriate. Satisfied that plaintiffs' claims arise out of Cricket's California contacts, this order does not reach general jurisdiction.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). The Supreme Court has emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). While a plaintiff "may not simply rest on the bare allegations of the complaint," "uncontroverted allegations must be taken as true, and 'conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Ibid.*

For a court to exercise specific jurisdiction over a nonresident defendant, three requirements must be met:

> (1) The defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;
>
> (2) The claim must be one which "arises out of or relates to" the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Ibid.* Once the plaintiff satisfies

5

that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 1068–69.

Cricket concedes specific personal jurisdiction as to plaintiff Waters, who formerly resided in Sacramento. Although Cricket does not clearly identify what conduct of Cricket's gives rise to her claims, Cricket suggests three bases for our exercise of personal jurisdiction: That plaintiff Waters "viewed" the challenged advertising, "purchased" her phone, or "suffered" the alleged injuries in California. This order pauses to note that each basis is founded, at least semantically, in plaintiff's activities. As Cricket explains in its motion, the Supreme Court has held that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). When viewed through the proper lens, these activities amount to Cricket directing advertising toward, selling phones in, and providing or promising 4G/LTE service in California. The complaint does not clearly allege where plaintiff Waters purchased her phone or where she saw the advertisements, but it clearly alleges that she paid for a monthly contract and experienced poor or non-existent 4G service in and around Sacramento (FAC ¶¶ 86–92). Given these facts and Cricket's concession to jurisdiction over these claims, this order finds that the exercise of specific personal jurisdiction over Cricket as to plaintiff Waters comports with due process.

As for the claims of our other twelve plaintiffs, Cricket argues that it is not subject to specific personal jurisdiction. Based on the following three-prong analysis, this order finds that Cricket's activities in California while headquartered in San Diego demonstrate a substantial connection between Cricket, the forum, and the remaining plaintiffs' claims at this stage in the litigation.

### A. Purposeful Availment.

Cricket frames its "purposeful availment" analysis as a "purposeful direction" inquiry. The "purposeful availment" requirement "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; *or by some combination thereof.*" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (emphasis added). Our court of appeals

does, indeed, "typically" engage in a "purposeful direction" inquiry when a claim sounds in tort. *Ibid.* Such an inquiry moves the geographical focus from the forum in which the non-resident defendant performed the action to the forum in which the defendant intended the actions to be felt. *See Calder v. Jones*, 465 U.S. 783 (1984). But we need not shift our focus to the plaintiffs' home states if the claims arose out of Cricket's conduct in California, so long as that specific conduct creates a substantial connection between Cricket in California. Where the conduct in question is not readily susceptible to a "purposeful direction" analysis, a traditional "purposeful availment" analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

In analyzing purposeful availment, we determine whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). This inquiry "is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir.1989).

Here, both sides agree that Cricket resided within this forum at the time of the underlying events giving rise to this action (Decl. Begue ¶ 9), and the complaint alleges that Cricket authorized from its now-former headquarters in California the acts giving rise to the claims of all of our plaintiffs — namely, "all business and marketing decisions, including decisions to not expand 4G/LTE coverage and [to] continue to market 'Unlimited 4G/LTE,' were made at LEAP/Cricket's offices in California" (FAC ¶ 252). This conduct is readily susceptible to a "purposeful availment" analysis and indeed satisfies the requirement. From California, Cricket authorized a nationwide marketing campaign based on allegedly false statements with the intent to profit from that campaign nationwide. Cricket's attempt to refocus our attention on the location of our plaintiffs when our plaintiffs felt the harm ignores the fact that the course of conduct leading to the alleged harm originated from the business Cricket conducted in California.

It is presumably reasonable for Cricket to be subject to litigation in California arising from the business it conducted in California. *Brainerd*, 873 F.2d at 1259. Specifically, Cricket should have anticipated being haled into California court to respond to claims stemming from the alleged false statements it authorized for national distribution from its California headquarters. As out court of appeals explained in *Steel v. United States*, 813 F.2d 1545, 1549–50 (9th Cir. 1987), "one cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place . . . the fair warning given [Cricket] by [its] contacts with California does not expire simply because of [its] lack of later contacts with the state." This order thus finds that Cricket purposefully availed itself of the privileges of conducting its business in California.

To be clear, this is not a finding that would permit the exercise of general jurisdiction over Cricket in California. In other words, it does not rely on the mere fact that Cricket's principal place of business at the time of the underlying events lay in California. Rather, this order finds that the alleged actions Cricket undertook at its former principle place of business in California established *suit-related* minimum contacts sufficient to satisfy the purposeful availment prong of our analysis.

### B. Connection to Forum-Related Activities.

For similar reasons discussed above, this order finds that plaintiffs' claims "arose out of" the business and marketing decisions allegedly made at Cricket's California offices. With respect to this prong of the jurisdictional test, the required causal analysis is met if "but for" the contacts between the defendant and the forum state, plaintiff's injury would not have occurred. *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051–52 (9th Cir. 1997). The question is therefore whether or not the alleged harm — namely, that Cricket lured plaintiffs into paying premium prices for false promises of unlimited, nationwide 4G/LTE coverage — would have occurred even absent Cricket's California-related activities.

As discussed above, Cricket authorized the market campaign and business decisions directly responsible for the alleged harm. At this stage in the proceedings, there is no evidence on the record controverting the complaint's allegation on "information and belief" that all

marketing and business decisions, including those concerning Cricket's 4G/LTE products, were made at Cricket's California offices (FAC ¶ 252). Cricket appended two declarations to its motion, but neither contradict the allegation. The only sworn statement that is relevant here is that Cricket maintained its principal place of business in San Diego prior to the 2014 merger. This fact, in light of plaintiffs' specific allegations detailing the rollout of the extensive, nationwide marketing campaign through a sophisticated top-down business model with over two-thousand retail stores, as well as the embattled journey of Cricket's 4G/LTE service, sufficiently supports the conclusion that "but for" decisions made at Cricket's California headquarters, plaintiffs' harm would not have occurred.

This order notes that the posture of our case is unlike that of more typical consumer class actions when facing early jurisdictional challenges. Typically, plaintiffs are tasked with demonstrating circumstances they participated in personally — proof that they purchased a product or formed an agreement or suffered an injury. Here, the relevant jurisdictional evidence remains in Cricket's control. Considering Cricket's stalwart refusal to provide any discovery not related to the arbitration issue since counsel filed the *Barraza* action in 2015, plaintiffs limited showing today is understandable (Dkt. No. 24 at 5). If evidence exists refuting jurisdiction, Cricket decided against deploying it. Rather than allow this action to stall any longer, this order finds that the uncontroverted allegations in the complaint and Cricket's own declarations satisfy the first two prongs of the specific jurisdiction analysis. This order is not a win for plaintiffs. Plaintiffs still bear the burden at trial of proving personal jurisdiction.

### C. Reasonableness and Other Arguments.

Cricket argues it is not subject to specific personal jurisdiction here for two reasons. *First*, Cricket argues that under *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017), there is not an adequate link between California and the claims of our twelve non-resident plaintiffs because those plaintiffs purchased their phones and suffered their alleged injuries outside of California. In *Bristol-Myers*, a products-liability mass action in California state court arising out of the false marketing of a blood-thinner drug, the Supreme Court found that the defendant's contacts with the forum had to be analyzed on a plaintiff-by-

9

plaintiff basis. In other words, while jurisdiction existed over some plaintiffs because they "were prescribed, obtained, [or] ingested [the drug] in California[,]" those contacts could not also support the non-resident claims. Importantly, no other suit-related contacts existed. The Supreme Court noted that Bristol-Myers did not develop the drug in California or create its marketing strategy there. Nor did Bristol-Myers manufacture, label, package, or work on the regulatory approval of the drug in California. Instead, all of that work occurred in New York or New Jersey. *Id.* at 1778. Thus, the only contacts in question consisted of those directed at California. Unlike *Bristol-Myers*, this order's finding of specific jurisdiction is based on Cricket's minimum contacts with California independent of our plaintiffs.

*Second*, Cricket takes issue with the fact that plaintiffs alleged that Cricket made all relevant business and marketing decisions from its California headquarters on "information and belief." In support, Cricket relies on two district court decisions, one that relies exclusively on the other, for the proposition that "allegations based upon information and belief are insufficient to demonstrate personal jurisdiction." *Transducer Sys. v. STFO Trading LLC*, 2009 WL 10700319 at *4 (C.D. Cal. Oct. 15, 2009) (Judge John Walter) (citing *Silverstein v. Experienced Internet.com, Inc.*, 2005 WL 1629935 at *3 (N.D. Cal. July 11, 2005) (Magistrate Judge Patricia Trumbull)). Both decisions emphasized the importance of the fact that those plaintiffs failed to submit affidavits or evidence in the face of the defendants' declarations contradicting the plaintiffs' "information and belief" allegations. Here, Cricket's declarations do not contradict this one allegation, nor does Cricket elsewhere deny its veracity. Instead, Cricket chose only to object to its form. As discussed, if evidence existed to the contrary, Cricket remained in the best position to disclose it. It chose not to. At this stage, this order will accept the allegation as true (subject to proof at trial).

Cricket's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### 2. MOTION TO DISMISS FOR IMPROPER VENUE.

Cricket moves to dismiss the action for improper venue under Rule 12(b)(3) and Section 1406(a) of Title 28 of the United States Code. Although Cricket insists dismissal is the proper

10

remedy, Cricket seeks in the alternative a transfer to a federal court in Georgia under Section 1406(a) or Section 1404(a).

If venue is improper, "the case must be dismissed or transferred under" Section 1406(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). When evaluating a motion to dismiss for improper venue, a court may consider facts outside the pleadings. *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Pursuant to the general venue statute, Section 1391(b) of Title 28 of the United States Code, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In their opposition brief, plaintiffs do not address Section 1391(b). Instead, plaintiffs argue that venue as to the RICO claim is proper under RICO's special venue statute, Section 1965(a) of Title 18, and that finding supports pendent venue for the remaining claims. Section 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

Cricket concedes that if the exercise of personal jurisdiction over the RICO claim is proper, "it would follow that venue is available under 18 U.S.C. § 1965(a) because Cricket 'transacts [its] affairs' in the Northern District" (Reply at 10). This order agrees. Plaintiffs' RICO claim rests on the same factual nexus as their remaining claims. It follows that this order's finding of suit-related minimum contacts supports the exercise of specific personal jurisdiction over the RICO claim. And, along with Cricket's concession, plaintiffs sufficiently demonstrate that Cricket transacts its affairs in our district (Opp. at 12). Cricket's website

11

provides a map showing dozens of Cricket retailers in our district and Cricket's promise of 4G/LTE coverage, the central issue in this action, included extensive coverage throughout our district. Section 1965(a) is cut and dry. An action may be instituted in any district court in which a RICO defendant transacts its affairs.

Cricket does not contest plaintiffs' assertion that venue as to the RICO claim may support venue as to the remaining claims, other than asserting that "should the RICO claim fail, plaintiffs' asserted basis for pendent jurisdiction and venue evaporates as well" (Reply at 11). To that end, Cricket notes "the inherent implausibility of an alleged enterprise consisting of 'over 2,000 co-conspirators' [including Cricket's independent retailers] operating for a common purpose" (*ibid.*). But Cricket decided against moving to dismiss the complaint for failing to state a RICO claim.

In conceding venue would be proper under Section 1965(a), Cricket also abandons its argument that dismissal is the appropriate remedy. This order agrees. Transfer will normally be in the interest of justice "because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Market Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (citations omitted). Cricket has persuaded plaintiffs' counsel to dismiss these allegations twice: Once by settling the individual claims in the *Barraza* matter, and the second time, involving our plaintiffs' claims, by agreeing to a dismissal without prejudice and a tolling agreement with the hopes of reaching an early resolution. The alleged misconduct occurred between 2012 and 2014. No justice will be served by further delay.

### 3.  TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The parties do not dispute that this action may have been brought in the Northern District of Georgia. Thus, the only remaining question is whether the convenience of parties and witnesses and the interest of justice favor transfer.

12

The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, district courts consider convenience and fairness factors on an individualized, case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The district court must weigh both private factors, which go to the convenience of parties and witnesses, and public factors, which go to the interest of justice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). This order considers these factors in turn.

### A. Convenience and Fairness.

The private convenience and fairness factors include the plaintiff's choice of forum, the convenience of parties and witnesses, the ease of access to sources of proof, and the availability of compulsory process for unwilling witnesses.

*Plaintiffs' choice of forum and convenience*: Ordinarily, the defendant carries a heavy burden to overcome the plaintiff's chosen forum; however where, as here, "an individual ... represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). As discussed below, defendant nevertheless fails to meet this lighter burden.

Our plaintiffs are located throughout the country, but two are California residents. Cricket argues that the burden on these two plaintiffs should not be considered because their claims are subject to dismissal for lack of personal jurisdiction, should this action remain here. As found above, Cricket's contacts with California independent of Cricket's relationship with our plaintiffs justifies the exercise of personal jurisdiction here. As such, there is no reason to discount the convenience of these two plaintiffs. While the other ten plaintiffs may be somewhat closer, they chose to file here and thus the inconvenience for these plaintiffs in proceeding in Georgia will be given little weight. At some point, there may be a nationwide class or some state-wide classes certified, demanding attention to their choice of forum here.

*Convenience to Cricket*: On the other hand, Cricket is now headquartered in Georgia and swears both that: *(1)* the majority of *current* management-level employees with direct

13

knowledge of or involvement in the marketing and sale of 4G/LTE devices and service between 2012 and 2014 are located in Atlanta, and *(2)* no *current* management-level Cricket employees located in California have direct knowledge of or involvement in the marketing and sale of 4G/LTE devices and service between 2012 and 2014 (Decl. Horn ¶¶ 5, 6) (emphasis added).

As plaintiffs point out, Cricket's declaration does not actually address where potential *witnesses* are located. Rather it identifies where some of its involved *employees* are located. Cricket's principal place of business moved to Georgia only after AT&T purchased it. Plaintiffs argue that given that AT&T is headquartered in Georgia and that Cricket's current president and chief marketing officer both assumed their roles following AT&T's purchase (Opp. 23), this unaddressed deficiency in Cricket's declaration is telling. In response, Cricket ignores this point, only reasserting that those "Cricket's managerial employees" that do have direct knowledge of or involvement in the marketing of 4G/LTE devices or service during 2012 and 2014 are located in Atlanta. This begs the question how many fall into this category. Cricket notes that the convenience of witnesses is often the most important factor, but fails to recognize that it is the *non-party* witnesses whose convenience is most importantly considered. Cricket had an opportunity to address this point and failed to meet its burden.

*Ease of access to sources of proof*: For this factor, Cricket claims the most significant sources of proof "will be Cricket witnesses who (along with documents in their possession) are predominantly located in Atlanta" (MTD at 23–24). To the extent Cricket argues that Cricket documents are located in Atlanta, their declarations do not say as much. Given that five years have passed and Cricket has since undergone an acquisition and relocation, it is much more likely that any still-existing proof in Cricket's possession is maintained electronically. In any event, Cricket bore the burden on this issue and has not met it.

**B.  Interest of Justice.**

A district court deciding a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding localized controversies, and familiarity with governing law.

14

*Court congestion*: Both sides argue that the available court-congestion data for the district courts in Atlanta and San Francisco favors their position on transferring. On average, cases move at similar speeds through both districts, but our judges oversee more cases at a time. Still, given that the undersigned judge is already familiar with both this action and the issues involved in the impending arbitration motion, having ruled on the arbitration motion in the *Barraza* action in 2015, maintenance of this lawsuit here will cause our district relatively less heartburn than it will for a judge seeing it for the first time in Atlanta.

*Local interest in deciding localized controversies*: This factor is neutral at best. While Cricket is now headquartered in Georgia, it maintained its principal place of business in San Diego at all relevant times. San Diego, of course, is not within our district, nor is it within either of Cricket's proposed districts: The District of Delaware or the Northern District of Georgia. From San Diego, Cricket allegedly directed a nationwide marketing campaign that promised nationwide 4G/LTE service. Plaintiffs and putative class members purchased their devices and experienced the allegedly deficient service all over the country, including in this district. Thus, this order affords little weight to this factor, at least to the degree it supports venue in Georgia or Delaware.

*Familiarity with governing law*: The proposed district courts in Georgia and Delaware, as well as our district, are familiar with the law governing these claims. While the complaint alleges a putative Georgia class, it also alleges putative nationwide class and putative state classes in California, Missouri, and several other states. Significantly, "Cricket intends to move to compel arbitration immediately after the case is transferred or re-filed in an appropriate venue" (MTD at 4). That motion will likely be governed by the Federal Arbitration Act, as it was in *Barraza*, as well as relevant state contract law. While none of the proposed districts is any more capable of adjudicating issues under these various laws, *this Court* has already adjudicated this issue, at least as to the plaintiffs in the *Barraza* action. In other words, Cricket has already tested its arbitration agreement against these allegations here and now seeks to transfer this action before trying the issue again elsewhere. Justice will not

be furthered by allowing Cricket again to prolong decision on its arbitration agreements or otherwise delay resolution of these claims.

Cricket has failed to bear its burden of showing that transfer of this action to Georgia will be more convenient to the parties and witnesses, or in the interest of justice. Accordingly, the motion to transfer is **DENIED**.

## CONCLUSION

For the reasons stated above, Cricket's motion to dismiss for lack of personal jurisdiction and improper venue or to transfer is **DENIED**. The finding of personal jurisdiction is made **WITHOUT PREJUDICE**. Plaintiff will need to stand and deliver on this issue at trial or sooner. Cricket shall please promptly bring its motion to compel arbitration or it will be deemed waived.

**IT IS SO ORDERED.**

Dated: March 31, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE