| | |
|---|---|
| **Wagstaff & Cartmell LLP** | **MAYER BROWN LLP** |
| Tyler Hudson | Kevin S. Ranlett |
| 4740 Grand Ave | 1221 Avenue of the Americas |
| Kansas City, MO 64112 | New York, NY 10020-1001 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

November 20, 2020

BY ECF

The Honorable Alex G. Tse
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    Discovery dispute in *Thomas v. Cricket Wireless, LLC,* Case No.: 3:19-cv-07270

Dear Magistrate Judge Tse:

      The parties submit this jointly signed letter pursuant to the Court's November 16, 2020 order (Dkt. 117) and the Court's standing order. Both before and after the November 16, 2020 hearing, the parties have met and conferred regarding the discovery disputes discussed in the parties' joint status report (Dkt. 107) and have resolved the disputes raised in all but two of the discovery letter briefs (Dkts. 97-98). The parties believe they have a compromise solution to Dkt. 98 and are awaiting confirmation from Cricket as to whether it can be accomplished logistically. If the parties require the Court's assistance after hearing back from Cricket on Monday, they will raise any remaining dispute in a separate letter at that time. This joint letter pertains to plaintiffs' discovery letter brief at Dkt. 97, as narrowed by agreement of the parties.

## I.    Joint Factual Statement

      In this putative class action, plaintiffs allege that between May 1, 2012 and October 1, 2014, defendant Cricket Wireless LLC ("Cricket") sold 4G/LTE devices and service plans to customers nationwide by falsely advertising its 4G/LTE coverage. Dkt. 16.

      In this discovery dispute, the parties disagree about Plaintiffs' First Set of Request for Production of Documents No. 57, which seeks: "All documents concerning the preservation of documents and information relevant to the allegations in the First Amended Class Action Complaint, including, but not limited to, litigation holds and non-privileged communications regarding preservation. This Request extends up to the present."

      After meeting and conferring by phone and videoconference, plaintiffs narrowed Request No. 57 to seek the litigation hold notices and correspondence related to the release of those hold notices that relate to Cricket's 4G/LTE advertising, sales, or network from 2012 through 2014 or were made in connection with four cases: (1) this case; (2) *Thomas v. Cricket Wireless, LLC*, No. 4:16-cv-1065-FJG (W.D. Mo.); (3) *Barazza v. Cricket Wireless, LLC*, No. 3:19-cv-2471-WHA (N.D. Cal.); and (4) *Bond v. Cricket Communications, LLC*, No. 1:15-cv-923-GLR (D. Md.). Cricket has refused to produce these documents, asserting that they are irrelevant and privileged.

## II. Plaintiffs' Position

Defendant Cricket Wireless, LLC engaged in an alleged fraudulent scheme to market and sell 4G devices nationwide when it knew that it would not provide 4G service to the majority of its customers. Defendant admittedly failed to preserve key evidence that would substantiate these allegations. Defendant deleted the custodial accounts of key decisionmakers who participated in, directed, or approved the alleged fraud, including the CEO, COO, CFO, Chief of Strategy, Senior VPs of Product and Marketing, Devices, and Business Development, and Chief Marketing Officer. Defendant did not preserve a single custodial account from a single member of the Sales & Operations Planning Committee, a central decision-making body responsible for "more than 150 critical operating decisions" during the class period. Defendant did not preserve critical sales data related to its 4G phone sales, including the price customers paid for their devices. Defendant did not even take steps to preserve the 4G advertisements it used during the class period.

Given this unfortunate evidence of spoliation, Plaintiffs seek discovery about Defendant's document retention practices. Defendant has refused to produce its litigation hold letters and related correspondence. Defendant claims it was not under a duty to preserve that information at the time it was destroyed (although the timing of the destruction has not been fully disclosed) and that the hold letters and releases are privileged. Neither argument has merit.

First, litigation hold letters from in-house counsel receive unique treatment when assessing privilege.[1] Unlike other attorney-client communications, any privilege that attaches to a litigation hold can be overcome by a "preliminary showing of spoliation." *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, *2 (C.D. Cal. Nov. 22, 2011); *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, *2 (S.D. Cal. July 31, 2020). "Even if particular litigation hold communications are privileged, the [C]ourt has an inherent power to order their production in connection with a spoliation claim." *City of Colton*, 2011 WL 13223880 at *2. The requesting party need not establish "'actual spoliation.'" *Id.* at *5. Production of these letters is "an initial step that allows a party to investigate and possibly prove spoliation, so that the court may determine whether sanctions are warranted." *Id.* at *5. Courts have held unequivocally that the details surrounding a litigation hold are not privileged. *Cohen v. Trump*, 2015 WL 3617124, *7 (S.D. Cal. June 9, 2015).

Second, the threshold question for the Court is not whether Defendant had an absolute duty to preserve documents or whether Plaintiffs are prejudiced by Defendant's preservation failures. *Al Otro Lado,* 2020 WL 4432026, at *2. Those inquiries will be addressed at the time spoliation sanctions are sought. *Id.* "[T]he question is whether plaintiffs should be allowed to take the 'initial step' of discovering the content of the litigation hold notice … so that they can 'investigate and possibly prove spoliation.'" *Id.* Where a defendant has destroyed relevant evidence that "might have been useful to plaintiffs," there is sufficient evidence of spoliation to warrant the production of correspondence related to litigation holds. *Id.* Here, Defendant undoubtedly destroyed relevant information that might have been useful to Plaintiffs. This preliminary evidence of spoliation

---

[1] As an initial matter, Defendant has failed to substantiate its claim of privilege regarding these documents. This Court requires that "[p]rivilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. Dkt. 3-3, ¶ 24. "Failure to furnish this information **at the time of the assertion** will likely be deemed a waiver of the privilege." *Id*. Defendant has not produced a privilege log identifying its preservation letters or related correspondence. Furthermore, it is well-settled that "'[t]he party asserting the privilege bears the burden of proving each essential element' of the attorney-client privilege test." *Sidibe v. Sutter Health*, 2018 WL 783808, *1 (N.D. Cal. 2018) (quoting *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009)). Defendant has waived or otherwise failed to substantiate its privilege claim. The Court can grant Plaintiffs' request on this basis alone.

warrants the production of Defendant's litigation hold letters and related correspondence as an initial step to allow Plaintiffs to further "investigate and possibly prove spoliation." *Id.*

Defendant devotes much of its submission to a discussion of the *Barazza v. Cricket Wireless* litigation. Again, the scope of Defendant's duty is not a threshold inquiry here as discovery to prove "actual spoliation" is ongoing. However, Defendant cannot extinguish its duty to the entire class by settling with two class members, as it suggests. A party's duty is based on an objective standard[2] which can be triggered by a "variety of events" including past litigation.[3] Here:

- Two plaintiffs brought a putative class action against Defendant in May 2015 based largely on the same underlying conduct at issue here.
- Defendant paid the two individual plaintiffs the full value of their claims, including maximum punitive damages, as well as attorney's fees and costs. *See* Dkt. 97-4 at 5.
- When *Barazza* was resolved in December 2015, the statute of limitations had not run on the other putative class members' claims against Defendant.
- Defendant subsequently entered multiple tolling agreements tolling the claims of the entire putative class. Those agreements ended on November 19, 2019, when this case was filed.[4]

These facts leave no doubt that a reasonable company in Defendant's position would have understood that the allegations of Cricket's wrongdoing had merit, that a million similarly situated customers had the same claims against Defendant, and that future litigation was reasonably foreseeable.[5] Defendant's reliance on *Shenwick v. Twitter, Inc.* is misplaced as that case "relates to raw data deletion that occurred pursuant to automated document retention policies" before any litigation was filed. *In re Twitter Inc. Sec. Litig.*, 3:16-cv-05314-JST, Doc. No. 134, p. 10 (N.D. Cal. February 2, 2018). Here, Cricket has represented that its document destruction was *not* performed by automated means and occurred, in whole or in part, after *Barazza* was filed.

Plaintiffs have made the "minimal showing" necessary to overcome Defendant's claim of privilege. The Court should compel Defendant to produce its litigation hold letters and related correspondence where such letters relate to this litigation, *Barazza*, *Thomas I*,[6] or *Bond*, or otherwise relate to Cricket's 4G/LTE advertising, sales, and network from 2012 through 2014.

---

[2] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012).

[3] Fed. R. Civ. P. 37 Advisory Committee Notes; *see also Stinson v. City of New York*, 2016 WL 54684, at *4 (S.D.N.Y. Jan. 5, 2016) (holding that the duty to preserve arose when a complaint was filed in an earlier action containing similar allegations); additional citations available upon request.

[4] Cricket had an independent duty to preserve documents as a result of a different class action filed in March 2015 and resolved in 2018. While Cricket is correct that the theory of liability in that case differs from Plaintiffs' theory, both cases involved false advertising during an overlapping period. The sales of CDMA devices at issue in *Bond* could have included CDMA devices sold as 4G. Thus, while not parallel cases, the sources of information and custodial files at issue there should have resulted in the preservation of some of the same evidence Plaintiffs seek here. *See Bond v. Cricket Commc'ns, LLC*, 2017 WL 4838754, *1 (D. Md. Oct. 26, 2017) (*"Bond"*), aff'd sub nom. *Scott v. Bond*, 734 F. App'x 188 (4th Cir. 2018).

[5] In hopes of refuting this clear evidence of spoliation, Defendant mischaracterizes statements made by plaintiffs' counsel in the *Barazza* litigation (who is not involved in this case). The prior plaintiffs' counsel merely confirmed that the two plaintiffs' individual claims were not coming back to life, so it made sense to cancel the trial in that matter. *See* Dkt. 100 at 5-7.

[6] *Thomas et al. v. Cricket Wireless, LLC et al.*, No. 4:16-cv-01065-FJG (W.D. Mo. Filed September 30, 2016).

### III.  Cricket's Position

Plaintiffs have sought since the beginning of this case to distract from the substance of their false-advertising case by turning it into one about spoliation. Even after Cricket has produced nearly a million pages of documents, plaintiffs seek to leverage the unavailability of some legacy databases and documents of questionable relevance from the 2012-2014 time period. But they fail to show: (1) that Cricket was legally obligated to retain missing information; or (2) that the missing information is necessary to prosecute this case.

Plaintiffs falsely assume that Cricket had to save all data from this period. The FCC approved AT&T's merger of Cricket in March 2014—and the first case that plaintiffs think obligated Cricket to retain data (*Barraza*) was not filed until over 14 months later. After the merger, superseded Cricket data was mothballed because there was no business reason to keep it. And Cricket also was entitled to stop preserving documents after *Barraza* was resolved because some of plaintiffs' counsel here confirmed in *Barraza* that no similar litigation was anticipated:

> The Court: . . . Now, do you have any kind of side deal that allows you to go off and re-file a similar case in some other court?
>
> [Plaintiffs' counsel]: There are no—no side deals of any kind, Your Honor.

Dkt. 97-4, at 5:19-20. Judge Alsup also asked if the case could be revived:

> The Court: So what is there left to—I've now read what you handed up to me. First, is there any scenario under which the merits of the case could come back to life?
>
> [Plaintiffs' counsel]: No, Your Honor.

*Id.* at 3:2-4. Cricket—and the Court—had every right to take plaintiffs' counsel at their word, releasing Cricket from any further duty to preserve documents.

In any event, Cricket has been transparent about what documents were not retained. Cricket has produced documents sufficient to show which databases were sunset (and when) and agreed to provide a Rule 30(b)(6) deposition about the retention of legacy Cricket data. Cricket also has agreed to say when it stopped retaining the custodial documents of particular legacy Cricket officers and employees that plaintiffs have identified. Accordingly, plaintiffs' demand that Cricket produce litigation-hold notices and related correspondence in connection with this and three other cases is improper.

*Privilege.* To begin with, it is settled that when, as here, litigation-hold notices are prepared by counsel, those notices and the correspondence to implement counsel's directives are protected by the attorney-client privilege and the attorney work product doctrine. *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) ("preservation notices, if prepared by counsel and directed to the client, are protected by the attorney-client privilege"); *PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014) ("[T]he Court agrees . . . that the litigation hold notice itself is protected as attorney-client communications and/or work product[.]"); *see also, e.g.*, *Open Text Inc. v. Northwell Health, Inc.*, 2020 WL 6655922, at

\*9 (C.D. Cal. Oct. 23, 2020) ("Defendant has appropriately objected . . . because litigation hold notices and related documents are generally privileged.").

Moreover, courts reject plaintiffs' theory here that the "threat of spoliation" and Cricket's acknowledgment that some data was not retained "destroys that attorney-client privilege." *Shenwick*, 2018 WL 833085, at \*4. That is because "[a]ny concerns . . . about spoliation can be addressed through means other than forcing Defendants to reveal . . . privileged documents," such as a "deposition of the person most knowledgeable" about document retention. *Id.*; *see also*, *e.g.*, *eBay Seller Antitrust Litig.*, 2007 WL 2852364, at \*1-2 (N.D. Cal. Oct. 2, 2007) (same). Here, Cricket has agreed to provide such a corporate-representative deposition.

The cases that plaintiffs cite apply the same rule. In each case, the "preliminary showing of spoliation to overcome the attorney-client privilege" for the hold notices was made based on the "Rule 30(b)(6)" deposition—the step that plaintiffs seek to skip here. *Al Otro Lado, Inc. v. Wolf*, 2020 WL 44332026, at \*1-2 (S.D. Cal. July 31, 2020); *see also City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at \*1, 6 (C.D. Cal. Nov. 22, 2011) ("preliminary showing of spoliation" based on "deposition testimony . . . regarding . . . document retention.").

***Relevance.*** The hold notices from the *Barazza* and *Bond* cases also are irrelevant.

*Barraza:* As noted, in *Barraza* in 2015, plaintiffs' counsel confirmed that similar cases were not anticipated. Plaintiffs waited until September 2016 to file a copycat of *Barraza* (*Thomas I*), which they soon after dismissed, and until November 2019 to file this case. Cricket had no obligation to retain documents between the resolution of *Barraza* and filing of *Thomas I*.

*Bond:* Document-preservation efforts for the *Bond* case in Maryland are equally irrelevant here. That case involved very different allegations than plaintiffs' theory here that Cricket engaged in false advertising of its 4G/LTE coverage. Rather, the *Bond* plaintiffs sought to have Cricket customers be given free replacement phones compatible with AT&T's network after the merger. *Bond v. Cricket Commc'ns, LLC*, 2016 WL 153036, at \*2 (D. Md. Jan. 12, 2016). The litigation hold notices for that very different lawsuit have no bearing here.

In sum, plaintiffs' demand for hold notices and related correspondence should be denied.

Respectfully submitted,

| | |
|---|---|
| s/ *Tyler W. Hudson* | s/ *Kevin S. Ranlett* |
| Tyler W. Hudson | Matthew D. Ingber |
| Eric D. Barton | John Nadolenco |
| Melody R. Dickson | Archis A. Parasharami |
| Austin Brane | Kevin Ranlett |
| WAGSTAFF & CARTMELL LLP | Daniel E. Jones |
| | Jarman D. Russell |
| Attorneys for Plaintiffs | MAYER BROWN LLP |
| | |
| | Attorneys for Cricket Wireless, LLC |