**Wagstaff & Cartmell, LLP**
Tyler Hudson
4740 Grand Ave
Kansas City, MO 64112
*Attorneys for Plaintiffs*

**MAYER BROWN LLP**
Matthew D. Ingber
1221 Avenue of the Americas
New York, NY 10020-1001
*Attorneys for Defendant*

---

January 29, 2021

BY ECF

The Honorable Alex G. Tse
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:    Discovery dispute in *Thomas v. Cricket Wireless, LLC,* Case No.: 3:19-cv-07270

Dear Magistrate Judge Tse:

    This joint discovery letter relates to the parties' November 20, 2020 joint discovery letter (Dkt. 119), which the Court addressed in its December 14, 2020 order (Dkt. 135). The Court denied plaintiffs' motion to compel discovery "without prejudice to renewal, if warranted, after completion of the upcoming deposition of Cricket's Rule 30(b)(6) representative on document retention." *Id.*, at 1. Plaintiffs now renew their motion to compel. Cricket opposes the request. The parties dispute two issues: (1) whether Cricket refused to provide the non-privileged "basic details" about the litigation holds in this case, *Barraza,* and *Bond* (*id.* at 4); and (2) whether Cricket must produce the litigation hold notices and related correspondence from *Mobile Telecommunications Technologies, LLC v. Leap Wireless*, No. 2:13-cv-885 (E.D. Tex.), and *Intellectual Ventures I LLC v. Cricket Communications*, No. 1:13-cv-1669 (D. Del.).

**I.    Plaintiffs' Position**

    Defendant Cricket Wireless, LLC engaged in an alleged fraudulent scheme to market and sell 4G devices nationwide when it knew that it would not provide 4G service to the majority of its customers. Defendant discarded key evidence that would further substantiate these allegations.[1] Given evidence of potential spoliation, Plaintiffs sought further discovery, including the production of Defendant's litigation hold letters and related correspondence.

    On December 14, 2020, this Court held that the letters were directly "relevant to plaintiffs' examination of Cricket's document preservation practices and efforts and whether Cricket spoliated relevant evidence." Dkt. 135 at 2. However, it declined to immediately compel

---

[1] *See e.g.* Dkt. No. 119, p. 2, outlining several categories of documents discarded by Defendant, including all of the custodial files of the Executive Leadership Team, some of which were not destroyed until 2018 (after the *Barazza* litigation was filed).

production adopting a "deposition-first approach."[2] *Id.* But, in doing so, the Court was clear that plaintiffs' case for compelling production would be much stronger if the 30(b)(6) witnesses could not (or would not) provide the requested information. *See* 12/4/2020 Hearing Tr. at 27, attached as Exhibit 1 ("I can understand why you want the entire [litigation hold] document; and I'm not saying that I might not order that. But, you know, what I'm trying to focus on is you – you can still ask all of these questions and get a 30(b)(6) witness to answer them. Now, if the witness doesn't answer them, then I think that builds a stronger case for you; that the only way you are going to get this information is contained in this letter. And, therefore, that is a stronger case for you to go and hand the letter over because the representative won't give it to you.").

Thus, while plaintiffs were not permitted to "inquire specifically into how the [litigation hold notices] were worded" or "how they described the legal issues in this [or any other] action," this Court explicitly authorized the plaintiffs to ask "questions about the 'basic details surrounding the litigation hold[s].'" Dkt. 135 at 3-4. And it went further, identifying three specific categories of "basic details" which were "fair game"—including **(1) when and to whom the litigation hold notices were given, (2) what kinds of categories of information and data Cricket employees were instructed to preserve and collect, and (3) what specific actions they were instructed to take to that end.** *Id.* It also held open the possibility of compelling production "after the upcoming Rule 30(b)(6) deposition[s]" in the event that Cricket witnesses failed to meaningfully testify about these basic details. *Id.* at 4.

That is exactly what happened. The plaintiffs took the 30(b)(6) depositions of two witnesses—Gwen Sikora and Paula Phillips—and, in both, the witnesses and defendants' counsel repeatedly prevented the plaintiffs from obtaining *any* relevant answers regarding the above topics even though the witness agreed that they were designated to testify on the topics.

To be specific, when asked questions about category 1 above—basic details concerning "when and to whom the litigation hold notices were given"—neither witness provided relevant answers beyond the basic information on the privilege log. For instance, when asked whether there were "any legal holds in place at the time of the merger that involved Cricket Wireless, LLC LTE network," Ms. Phillips answered, "I don't know." Phillips Dep. Tr. 51: 7-13, attached as Exhibit 2. And similarly, for post-merger activities, neither witness could answer basic questions concerning the "when" and "to whom" of the litigation hold letters. *See, e.g.*, Sikora Dep. Tr. 122: 22-24, attached as Exhibit 3. ("Q. Do you know when that legal hold was issued. A. I do not. Q. Do you know whether that legal hold has ever been released? A. I do not. Q. Do you know in conjunction with what litigation that legal hold was issued? A. I do not."). Ms. Phillips confirmed that the privilege log did not identify who was instructed to preserve information on particular dates, yet she was unable to answer basic questions or was instructed by counsel not to answer questions on privilege grounds. *See, e.g.,* Phillips Dep. Tr. at 323-327, 331-35, 340-42, 360-82.

The same was true of category 2. Both witnesses either did not know, or were counseled not to answer, questions about the basic topics or categories covered by the litigation hold letters. *See, e.g.*, Phillips Dep. 325: 5-13 (instructing the witness "not to answer with respect to the content of the litigation hold letter"). When asked whether she could identify "what documents were subject to" any of the litigation holds, Sikora answered "No." Sikora Dep. Tr. 239:12-19. Ms.

---

[2] In its argument against Plaintiffs' motion, Cricket told the Court that ordering production was "premature" given that several 30(b)(6) depositions were scheduled that would allow the plaintiffs to "get answers about Cricket's document preservation efforts." *Id.* at 2-3.

Phillips, too, either could not answer, or refused to answer, basic questions asking simply what documents were subject to the holds. *See* Phillips Dep. Tr. 51 (professing not to know whether litigation holds covered Cricket's LTE network or devices); *id*. at 331-35 (refusing to answer what documents were subject to a hold); *id.* at 366-67 (same, for whether Cricket's advertising was subject to a hold); *id.* at 369-70 (same, for whether minutes or presentations were subject to a hold); *id.* at 371-72 (same for whether data related to device price was subject to a hold); *id.* at 372 (same, for whether Cricket's document retention policies were subject to a hold). The list goes on. *See id.* at 374-81 (same for Cricket's website, text messages, billing statements, and more).

And questions regarding category 3 fared no better. For instance, when specifically asked whether she could "identify any specific actions that any Cricket employees were instructed to take with regard to any litigation hold that has been issued related to Legacy Cricket data from May 1, 2012, to the present" Sikora answered "No." Sikora Dep. 240: 13-21; *see also* Phillips Dep. Tr. 52, 56-57, 323-327, 340-42, 360-82 (professing not to know whether employees were given instructions regarding certain categories of documents or being instructed not to answer those questions).

The Defendant's obstruction here, however, goes further. The current privilege log provided by Defendant reveals that there are 77 communications—all summarily described as "litigation hold notice for [insert case]." Defendant's Privilege Log Excerpts, attached as Ex. 4. But we now know that this log is incomplete. There are at least two additional cases related to 4G/LTE device sales that existed—*Mobile Telecommunications Technologies, LLC v. Leap Wireless, et al.* and *Intellectual Ventures v. Cricket Communications, et al.*—but no reference to any litigation hold notices from these cases are found in the log. And, although we have asked that Cricket update its privilege log (or produce responsive documents) related to these cases, it has categorically refused even though any holds would be squarely responsive to plaintiffs' document requests. At a minimum, these litigation holds should have been logged along with the others.

Cricket, for its part, concedes that this Court explicitly instructed Cricket and its witnesses to provide information regarding the three categories above. Far from "honoring the line that the Court drew," Cricket's witnesses refused to provide any answers to any of the questions specifically seeking the exact information this Court instructed Cricket to provide. Nor can Cricket try to unilaterally limit the scope of what would be included in the privilege log. As this Court recognized, at issue were all "litigation hold notices and correspondence related to the release of those hold notices that relate to Cricket's 4G/LTE advertising, sales, or network from 2012 to 2014." Dkt. 135 at 2. That plainly includes *any* litigation holds and related correspondence that cover the relevant information.

After serving written discovery requests, taking two depositions, reviewing Defendant's privilege log, and the Court's order requiring a witness to be ready to answer questions, Cricket has provided no information about what kinds and categories of information and data Cricket employees were instructed to preserve and collect, and what specific actions they were instructed to take to that end. There is now only one way the plaintiffs can obtain this information: through an order compelling Cricket to produce the litigation hold letters. Given the impending class certification deadlines—the plaintiffs' class certification motion is due on March 4, 2021—and the potential relevance that the defendants' spoliation may have on those issues, plaintiffs respectfully request that this Court act on this request as quickly as possible. Otherwise, the defendant's repeated attempts to block any effort to uncover even the most basic information about its document preservation issues will succeed.

## II. Cricket's Position

Cricket has produced over 2.5 million pages of documents. Plaintiffs have more than enough discovery to litigate this case. Yet they are dissatisfied that Cricket cannot produce every scrap of paper that legacy Cricket created in 2012-2014—data there was no reason to keep. And Cricket *never* had at least one category of documents (the exact purchase prices for all 4G phone purchases). Plaintiffs appear more focused on cobbling together allegations of spoliation than they are on the merits of the case. Yet they have never shown: (1) that Cricket was obligated to retain the information they say is missing; or (2) that anything missing is needed to prosecute this case.[3]

Cricket had every right to dispose of the disputed documents and databases. Plaintiffs have never contended that Cricket failed to preserve any documents after this case was filed in 2019. Instead, they seek to piggyback on the preservation obligations of earlier lawsuits. But the earliest such case that is remotely similar to this one is *Barraza*, which was served on Cricket in May 2015. Dkts. 1, *Barraza*, *supra*.[4] That was 14 months *after* the FCC approved AT&T's merger with Cricket in March 2014. After the merger, there was no reason to keep superseded legacy Cricket databases or the custodial files from former employees that plaintiffs now demand.

Nonetheless, Cricket has answered plaintiffs' questions about document retention. Cricket has produced spreadsheets showing which databases were sunset (and when) and provided two Rule 30(b)(6) depositions about retention: one about application data and one about custodial data. Cricket identified when it stopped retaining the custodial files of particular officers and employees who plaintiffs have identified. And it has provided a privilege log detailing the timing and recipients of litigation-hold correspondence and confirmed that such holds remain in place. There is nothing further to produce without eviscerating the privilege altogether.

In its prior ruling, the "Court agree[d]" that Cricket's "'litigation holds and related correspondence'" are "'privileged.'" Dkt. 135, at 3-4 (citation omitted). The Court then instructed plaintiffs how to proceed: during the "Rule 30(b)(6) depositions, "questions about the 'basic details surrounding the litigation hold[s]' are fair game" because "plaintiffs are entitled to inquire into 'the *facts* of what [Cricket's] document retention and collection policies are,' including 'what [Cricket] employees [were] *doing* with respect to collecting and preserving.'" *Id.* at 4 (citation omitted). But "plaintiffs 'should not inquire specifically into how [the litigation hold notices] were worded or how they describe the legal issues in this [or any other] action.'" *Id.* (citation omitted).

Plaintiffs failed to follow the Court's instructions. Instead of asking Cricket's corporate representatives about what Cricket and its employees *did,* plaintiffs asked over and over again—

---

[3] Plaintiffs also exaggerate the types of information that are not currently available. For example, during the January 21, 2021 hearing, plaintiffs' counsel told Judge Alsup that Cricket failed to preserve account records for the named plaintiffs who withdrew from the case. That is false. In fact, Cricket produced those records whenever an account could be linked to a named plaintiff by (1) sharing the same or similar name as the account holder; or (2) corresponding to a Cricket account or mobile number that plaintiffs' counsel provided after Cricket gave them multiple opportunities to do so. Cricket produced records for seven such individuals; those records confirmed that they were not members of the putative class. The remaining five withdrawing plaintiffs could not provide information that could be linked to a Cricket account in anyone's name, much less their own.

[4] Cricket received service of process in the *Bond* case in June 2015 (Dkt. 7, *Bond*, *supra*), and in the *Thomas I* case in October 2016 (Dkt. 8, *Thomas I*, *supra*). Although Cricket continues to maintain that any document retention for *Barraza* and *Bond* are irrelevant to this case, we acknowledge that Your Honor rejected that position, at least with respect to this discovery dispute. Dkt. 135, at 2 n.3.

at least 30 times—what the litigation hold notices *said*.[5] That is impermissible. As the Court held (*id.*), the content of the notices is privileged; they reflect what Cricket's lawyers advised Cricket to do and those lawyers' views of the potential legal issues and what information might be relevant to the litigation. Accordingly, during the Rule 30(b)(6) depositions, Cricket properly invoked the privilege whenever plaintiffs asked what the litigation holds "instructed" or indicated regarding which documents were "subject to" the hold or "identified" in it.

By contrast, whenever plaintiffs asked for the underlying facts of *what* information was or was not preserved, by *whom*, and *when*, Cricket did not invoke the privilege and the witness answered the question to the best of Cricket's knowledge. *See* Phillips Dep. Tr. 322:2-325:4, 328:22-331:5, 342:17-354:21; Sikora Dep. Tr. 327:21-378:2. In other words, Cricket honored the line that the Court drew in its December 14 order; plaintiffs ignored it.

Plaintiffs are mistaken in arguing that Ms. Sikora was unprepared to testify about litigation holds. It was Ms. Phillips, not Ms. Sikora, who was designated for that topic. Sikora Dep. Tr. 379. And although Ms. Sikora could not answer certain questions about the retention of particular data off the top of her head, Cricket had produced spreadsheets explaining exactly which databases and applications were preserved and Ms. Sikora answered questions about them. *Id.* 274-322. In sum, there is no basis to compel production of the litigation-hold correspondence.

Nor is there any basis to expand plaintiffs' request to encompass litigation hold notices issued in connection with *Mobile Telecommunications Technologies, LLC v. Leap Wireless* ("*MTel*"), No. 2:13-cv-885 (E.D. Tex.), and *Intellectual Ventures Co. v. Cricket Communications*, No. 1:13-cv-1669 (D. Del.). Those two cases are irrelevant—they are patent-infringement cases filed by notorious patent trolls alleging that they owned patents on technologies underlying the industry standards for 4G and/or Wi-Fi networking. Dkt. 1, ¶¶ 6-43, *MTel*, *supra*; Dkt. 1, ¶¶ 12-80, *Intellectual Ventures*, *supra*. Those disputes over patent construction and validity have nothing to do with the allegations here that Cricket falsely advertised its 4G coverage. Accordingly, plaintiffs' demand for the litigation hold notices from those cases should be denied for two reasons.

First, the notices are not responsive to Request No. 57, which seeks documents about preservation only of "information relevant to the allegations in the . . . Complaint." "[A] court cannot compel discovery that is beyond the scope of the request for production." *Allianz Sigorta, S.A. v. Ameritech Indus., Inc.*, 2017 WL 4620667, at *3 (E.D. Cal. Oct. 16, 2017).

Second, even if plaintiffs had requested these litigation hold notices, they are irrelevant because they do not involve the same issue as this case. A plaintiff cannot argue that an earlier case with "substantially different claims and parties" gave rise to a "duty to preserve" evidence for a later case. *Ad Astra Recovery Servs., Inc. v. Heath*, 2020 WL 969762, at *4 (D. Kan. Feb. 28, 2020); *see also King Tuna, Inc. v. Luen Thai Fishing Ventures, Ltd.*, 2009 WL 10670974, at *4 (C.D. Cal. Dec. 10, 2009) (rejecting spoliation because "[a]lthough there were other lawsuits involving tuna processors and distributors, Plaintiff has not articulated how these related lawsuits would have led Defendants to conclude that they needed to preserve" the missing evidence).

---

[5] See Phillips Dep. Tr. 325:5-8, 326:21-24, 331:6-9, 334:7-14, 337:15-17, 338:11-13, 339:5-7, 339:23-340:2, 340:22-341:3, 341:20-342:1, 360:18-20, 366:15-18, 367:10-14, 368:5-9, 369:6-10, 370:2-6, 370:21-24, 371:15-19, 372:10-14, 373:8-11, 374:3-5, 374:21-23, 375:15-22, 376:14-18, 377:10-13, 378:5-8, 378:24-379:6, 380:11-14, 381:9-16; Sikora Dep. Tr. 123:11-14.

Respectfully submitted,

<table>
<tr><td>

s/ Tyler W. Hudson
Tyler W. Hudson
Eric D. Barton
Melody R. Dickson
Austin Brane
Wagstaff & Cartmell

Attorneys for Plaintiffs

</td><td>

s/ Matthew D. Ingber
Matthew D. Ingber
John Nadolenco
Archis A. Parasharami
Kevin Ranlett
Daniel E. Jones
Jarman D. Russell
MAYER BROWN LLP

Attorneys for Cricket Wireless, LLC

</td></tr>
</table>