UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE THOMAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CRICKET WIRELESS, LLC,<br><br>Defendant. | Case No. 19-cv-07270-WHA   (AGT)<br><br>**DISCOVERY ORDER REGARDING PLAINTIFFS' RENEWED MOTION TO COMPEL**<br><br>Re: ECF No. 161 |

This matter is back before the undersigned on plaintiffs' renewed request to compel defendant Cricket Wireless, LLC to produce its litigation hold letters and related correspondence. ECF No. 161. The Court denied plaintiffs' previous request (ECF No. 119) without prejudice, leaving open the possibility of a renewed motion following the deposition of Cricket's Rule 30(b)(6) representative on document retention. ECF No. 135. Plaintiffs, who have now deposed two Cricket witnesses on retention, argue in their renewed motion that neither witness provided relevant answers about the basic details surrounding the hold letters at issue. Having reviewed the parties' joint letter brief, including the nearly 800 pages of attached deposition testimony, the Court grants plaintiffs' renewed motion in part, as set forth below.

\* \* \*

Plaintiffs filed this putative class action in November 2019, alleging that Cricket engaged in a fraudulent scheme to market and sell 4G/LTE devices and service plans to customers nationwide by falsely advertising its 4G/LTE coverage. The alleged scheme ran from May 2012 until May 2014 ("putative class period"), when Cricket was acquired by AT&T, Inc.

Importantly, this is not Cricket's first (or second) time defending itself against these putative class allegations. In May 2015, different plaintiffs brought almost identical allegations

against Cricket in *Barraza v. Cricket Wireless, LLC*, No. 3:15-cv-02471-WHA (N.D. Cal.), another putative class action before Judge Alsup. *Barraza* was resolved on an individual basis in December 2015, before any putative class had been certified, when both named plaintiffs accepted Cricket's offer of judgement for the full value of their claims and voluntarily dismissed the case with prejudice. At a hearing just before the dismissal, Judge Alsup asked the parties if there was "any scenario under which the merits of the case could come back to life," and plaintiffs' counsel said no. *See* ECF No. 97-4 at 3. Judge Alsup also asked counsel whether there was "any kind of side deal that allows you to go off and re-file a similar case in some other court," and plaintiffs' counsel also said no. *See id.* at 5. At the time of *Barraza's* dismissal, the statute of limitations had not run on the hundreds of thousands of other putative class members' claims against Cricket.

Then, in September 2016, two of the named plaintiffs here filed suit against Cricket in Missouri federal court based on the same alleged misconduct during the same time period. *See Thomas v. Cricket Wireless, LLC*, No. 16-cv-1065 (W.D. Mo.) ("*Thomas I*"). *Thomas I*, which Cricket describes as "a copycat of *Barraza*," was voluntarily dismissed without prejudice subject to a tolling agreement that allowed the parties to discuss early resolution. ECF No. 119 at 5. That tolling agreement expired on November 4, 2019, when this case was filed. *Id.* at 3.

During discovery in this case, plaintiffs learned that after *Barraza* was resolved in December 2015, Cricket discarded certain documents and data from the putative class period that plaintiffs believe would help substantiate their class allegations. *Id.* at 2. Cricket claims that it "was entitled to stop preserving documents after *Barraza*" and that "[i]n any event, [it] has been transparent about what documents were not retained." *Id.* at 4. According to plaintiffs, Cricket admittedly:

- deleted the custodial accounts of key decisionmakers who participated in, directed, or approved the alleged fraud, including the CEO, COO, CFO, Chief of Strategy, Senior VPs of Product and Marketing, Devices, and Business Development, and Chief Marketing Officer;

- did not preserve a single custodial account from a single member of the Sales & Operations Planning Committee, a central decision-making body responsible for "more than 150 critical operating decisions" during the class period;

2

- did not preserve critical sales data related to its 4G phone sales, including the price customers paid for their devices; and
- did not even take steps to preserve the 4G advertisements it used during the class period.

*Id.* at 2.[1] Plaintiffs assert that "Cricket has represented that its document destruction was *not* performed by automated means and occurred, in whole or in part, after *Barazza* [sic] was filed." *Id.* at 3. Cricket does not dispute this.

Based on these concerning revelations about Cricket's post-*Barraza* document destruction—which, in plaintiffs' view, constitute "preliminary evidence of spoliation"—plaintiffs sought further discovery about Cricket's document retention practices in an effort to further investigate a potential spoliation claim. *Id.* at 2. Cricket, while denying that any spoliation occurred, agreed to produce "documents sufficient to show which databases were sunset (and when)" and to "say when it stopped retaining the custodial documents of particular legacy Cricket officers and employees that plaintiffs have identified." *Id.* at 4. Cricket also agreed to provide a Rule 30(b)(6) deposition about document retention. *Id.* But Cricket refused to produce its litigation hold letters and related correspondence as requested in plaintiffs' RFP No. 57,[2] objecting that those documents are irrelevant and privileged. *Id.* at 4–5.

On November 20, 2020, shortly before plaintiffs were scheduled to depose Cricket's Rule 30(b)(6) witness on retention, they moved to compel production of the requested hold letters. Plaintiffs argued that any privilege attached to Cricket's letters had been overcome by their "preliminary showing of spoliation"—i.e., Cricket's admissions that it destroyed information from

---

[1] At the December 4, 2020 hearing on plaintiffs' initial motion to compel, plaintiffs' counsel stated that the parties "are all in agreement" that Cricket's "customer database and information related to the price the individual customers paid for their phones [] no longer exists." ECF No. 160 at 30:9–12. Cricket's counsel did not refute this assertion at the hearing, but Cricket has since claimed that it "never had" documents reflecting "the exact purchase prices for all 4G phone purchases." ECF No. 161 at 4. Cricket otherwise maintains that it "had every right to dispose of the disputed documents and databases." *Id.*

[2] Plaintiffs' RFP No. 57, as narrowed, requests Cricket's "litigation hold notices and correspondence related to the release of those hold notices that relate to Cricket's 4G/LTE advertising, sales, or network from 2012 through 2014 or were made in connection with four cases: (1) this case; (2) *Thomas [I]*; (3) *Barazza* [sic]; and (4) *Bond v. Cricket Communications, LLC*, No. 1:15-cv-923-GLR (D. Md.)." ECF No. 119 at 1.

3

the putative class period that plaintiffs claim was relevant and "might have been useful" to them. *Id.* at 2 (quoting *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020)). Cricket, in addition to claiming it had no duty to preserve the missing information, argued that compelling production prior to the upcoming Rule 30(b)(6) deposition was premature. *Id.* at 4–5. At oral argument, Cricket's counsel reiterated that other courts in this Circuit have consistently followed a "deposition first" approach in similar situations, and urged this Court to do the same:

> First, you do the 30(b)(6) -- because as Your Honor pointed out -- the who, what, when, where, all of that stuff, that is not privileged. Those are facts. And they could be obtained through the same tools of discovery as any other non-privileged fact.
>
> * * *
>
> Plaintiffs should make their -- you know, take advantage of the traditional tools of discovery including the 30(b)(6) deposition that is going to happen later this month. They can ask all of their questions about the underlying non-privileged facts about document retention and when particular things that they think they need were no longer retained. And if they think that they have a basis for a preliminary showing of spoliation, they can come back and get the litigation hold letters to the extent that, you know, it's appropriate at that time.

ECF No. 160 at 31:17–24, 32:12–22. The Court agreed, and previewed its forthcoming written order:

> I can understand why [plaintiffs] want the entire [litigation hold] document; and I'm not saying that I might not order that. But, you know, what I'm trying to focus on is you -- you can still ask all of these [who, what, when, where, why] questions and get a 30(b)(6) witness to answer them. Now, if the witness doesn't answer them, then I think that builds a stronger case for you; that the only way you are going to get this information is contained in this letter. And, therefore, that is a stronger case for you to go and hand the letter over because the representative won't give it to you.

*Id.* at 27:7–22.

Cricket also argued, much less persuasively, that the *Barraza* hold letters "are no longer relevant" because "there is no way that Cricket could have been under a continuing duty to preserve documents" after *Barraza* given that the named plaintiffs' lawyers told Judge Alsup in open court that no "side deal" existed to allow them to file a similar case in another court. *See* ECF No. 160 at 13–14. Yet Cricket's counsel ultimately conceded that Cricket's offer of judgment in *Barraza* was binding only as to the two individual settling plaintiffs—who were paid

4

the full value of their claims, including maximum punitive damages, as well as attorneys' fees and costs—and not the hundreds of thousands of other putative class members whose identical claims against Cricket were still viable at the time *Barraza* was resolved. *See id.* at 3–16. And as plaintiffs' counsel also noted, because no putative class had been certified in *Barraza*, "any representations that were made by the [named plaintiffs' lawyers] at that time would have been, in fact, limited to the two individual plaintiffs that they were representing." *Id.* at 6:15–20.

Following the hearing, on December 14, 2020, the Court overruled Cricket's relevance objections and held that the requested hold letters are relevant to plaintiffs' examination of Cricket's document preservation practices and whether Cricket spoliated relevant evidence.[3] ECF No. 135 at 2 & n.3. But as foreshadowed at the hearing, the Court declined to immediately compel production of the hold letters and denied plaintiffs' motion "without prejudice to renewal, if warranted, after completion of the upcoming deposition of Cricket's Rule 30(b)(6) representative on document retention." *Id.* at 1. The Court then provided specific guidance regarding permissible categories of inquiry at the upcoming deposition:

> Plaintiffs will have the opportunity to get answers about Cricket's document preservation efforts at the upcoming Rule 30(b)(6) deposition. And while plaintiffs should not inquire specifically into how the litigation hold notices were worded or to how they described the legal issues in this or any other action, questions about the "basic details surrounding the litigation holds" are fair game. These "basic details" include (1) when and to whom the litigation hold notices were given, (2) what kinds and categories of information and data Cricket employees were instructed to preserve and collect, and (3) what specific actions they were instructed to take to that end.

*Id.* at 4 (simplified).

Plaintiffs went on to depose two Cricket representatives on retention, Paula Phillips

---

[3] After the December 14, 2020 discovery hearing, at Cricket's request, the Court reviewed *in camera* a "confidential agreement" related to the resolution of *Barraza* that Cricket claimed "further underscores why Cricket had no expectation that there would be another class action" after *Barraza*. *See* ECF No. 160 at 19:7–20:1; ECF Nos. 127, 128. The Court disagrees that the confidential agreement supports Cricket's position that future litigation was not reasonably foreseeable after the stipulated dismissal of *Barraza*. Indeed, nothing in the confidential agreement foreclosed the possibility that any of the hundreds of thousands of other similarly-situated Cricket customers would pursue further litigation against Cricket based on the same claims that Cricket had just settled at full value with the two *Barraza* plaintiffs.

5

(custodial data and litigation holds) and Gwen Sikora (application data), and have since renewed their motion to compel. ECF No. 161. In their pending renewed request, plaintiffs argue that despite the Court's instructions above, Cricket's Rule 30(b)(6) witnesses either did not know, or were counseled not to answer, basic questions about what kinds and categories of information and documents were covered by the subject hold letters (category 2 above) and what specific actions Cricket employees were instructed to take regarding collection and preservation (category 3 above). *Id.* at 2–3. Plaintiffs argue that they have now attempted to obtain that information from Cricket through written discovery, two Rule 30(b)(6) depositions, and review of Cricket's Court-ordered privilege log—all without success—and the only remaining way that they can get the information is through an order compelling production of Cricket's hold letters. *Id.*

In opposing plaintiffs' renewed request, Cricket doubles down on its position that it "had every right to dispose of the disputed documents and databases" and argues that there is no basis to compel production of its privileged hold letters because it has sufficiently answered plaintiffs' questions about document retention. *Id.* at 4–5. Cricket emphasizes that to date, it has produced spreadsheets showing which databases it deleted and when, identified when certain executive custodial files were deleted, provided two depositions about retention, and produced a privilege log "detailing the timing and recipients of litigation-hold correspondence and confirm[ing] that such holds remain in place." *Id.* at 4.

Cricket further argues that it followed the Court's deposition instructions set forth in the December 14 order and "whenever plaintiffs asked for the underlying facts of what information was or was not preserved, by whom, and when, Cricket did not invoke the privilege and the witness answered the question to the best of Cricket's knowledge." *Id.* at 5. But plaintiffs cite to numerous places in both depositions where Cricket's witnesses could not or would not answer questions specifically seeking information about the "basic details" surrounding the hold letters that the Court outlined in its prior order. For instance, focusing on Ms. Phillips' testimony,[4] when asked whether any of Cricket's hold letters involved Cricket's LTE network or devices, she

---

[4] The Court focuses on Ms. Phillips' deposition because she was designated to testify about Cricket's litigation hold letters, not Ms. Sikora. *See* ECF No. 161 at 5.

1  answered "I don't know."  Phillips Dep., ECF No. 161-2, at 52:7–22.  Ms. Phillips also refused to
2  answer questions about what documents and data were subject to the hold letters:
3      Q:  Is Legacy Cricket's advertising subject to a litigation hold?
4      MR. RUSSELL:  Object to the form.  Stop.  I'm going to -- Ms. Phillips, you may -- I'm going to instruct the witness not to answer this question based on the attorney/client privilege and attorney work product protection.
5
6
7      MS. DICKSON:  Ms. Phillips, do you understand the instruction that was provided to you by your counsel?
8      A:  I do.
9      MS. DICKSON:  And are you following his instruction and refusing to answer?
10
11      A:  Yes.
12  *Id.* at 367:17–368:9.  And same thing for the next question:
13      Q:  Ms. Phillips, . . . [w]ere the Legacy Cricket customer records subject to a litigation hold?
14
15      MR. RUSSELL:  Object to the form.  I will instruct the witness not to answer based on the attorney/client privilege and attorney work product protection.
16
17      MS. DICKSON:  Ms. Phillips, do you understand the instruction provided to you by your counsel?
18      A:  Yes.
19      Q:  Are you following his instruction?
20      A:  Yes.
21  *Id.* at 368:10–369:4.  This question-objection-refusal to answer exchange repeated itself
22  throughout Ms. Phillips' deposition.  *See, e.g.*, *id.* at 370–72 (refusing to answer, at counsel's
23  instruction, whether minutes or presentations from the putative class period were subject to a hold
24  letter); *id.* at 372–73 (same, for whether "data related to the price a customer paid for a device"
25  was subject to a hold letter); *id.* at 373–74 (same, for whether Cricket's document retention
26  policies were subject to a hold letter); *id.* at 375–79 (same, for Cricket's website, marketing
27  packages, text messages to customers, billing statements to customers, and more).  Similarly,
28  when asked what Cricket's employees were instructed to do with the documents and data

identified in the hold letters, Ms. Phillips was counseled not to answer. *See, e.g.*, *id.* at 327–28, 342–43.

Based on these examples, the Court disagrees with Cricket that it "honored the line the Court drew in its December 14 order," ECF No. 161 at 5, and agrees with plaintiffs that at this point, compelling production of Cricket's hold letters in this case, *Barraza*, and *Bond*, is appropriate and the only way plaintiffs will get the information they need to further investigate and possibly prove spoliation. In reaching this conclusion, the Court returns to the undisputed fact that Cricket *admittedly* destroyed information and documents from the putative class period after the resolution of *Barraza*.[5] Those admissions raise enough questions about Cricket's document retention and preservation efforts—questions that Cricket has refused to answer through written discovery and now two Rule 30(b)(6) depositions—to allow plaintiffs "to take the 'initial step' of discovering the content of [Cricket's] litigation hold notice[s] . . . so that they can 'investigate and possibly prove spoliation.'" *Al Otro Lado*, 2020 WL 4432026, at *2 (quoting *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *5 (C.D. Cal. Nov. 22, 2011).

Plaintiffs also seek to compel production of Cricket's hold letters issued in connection with two peripheral patent infringement cases, *Mobile Telecommunications Technologies, LLC v. Leap Wireless*, No. 2:13-cv-885 (E.D. Tex.), and *Intellectual Ventures I LLC v. Cricket Communications*, No. 1:13-cv-1669 (D. Del.), which were not mentioned or discussed in plaintiffs' initial motion or at the hearing on that motion. *See* ECF No. 161 at 1, 3. Aside from their cursory claim that both cases "relate[] to 4G/LTE device sales that existed," plaintiffs offer no explanation whatsoever as to how or why the hold letters issued in either case relate to the issues here. Plaintiffs' request to compel these hold letters is therefore denied.

\* \* \*

---

[5] Cricket's contentions that plaintiffs "have more than enough discovery to litigate this case" and that "they have never shown . . . that anything missing is needed to prosecute this case" miss the mark. ECF No. 161 at 4; *see also* ECF No. 119 at 4 (arguing previously that plaintiffs "fail to show" that "the missing information is necessary to prosecute this case"). Whether the "missing information"—i.e., the information that Cricket admittedly discarded—is "necessary" to plaintiffs' proof of their substantive claims here will be addressed at a later date, if and when plaintiffs seek spoliation sanctions. It is simply irrelevant to the issue now before the Court, which is whether Cricket's hold letters should be produced in discovery.

For the reasons discussed above, the Court grants plaintiffs' renewed request to compel production of Cricket's litigation hold letters issued in connection with this case, *Barraza*, and *Bond*. Cricket must produce all portions of those letters that address litigation hold and/or preservation issues. To the extent any of the letters contain statements that clearly deviate from these issues, the Court is amenable to reviewing those statements *in camera* to evaluate whether they are protected by the attorney-client privilege and/or work product doctrine such that Cricket may redact them. Cricket is ordered to submit any hold letters qualifying for *in camera* review to the Court via email, at agtsettlement@cand.uscourts.gov, by **March 24, 2021**. Cricket shall produce all other letters (i.e., those addressing only litigation hold and/or preservation issues) to plaintiffs by **March 24, 2021**.

Plaintiffs' request to compel production of Cricket's hold letters from *Leap Wireless* and *Intellectual Ventures* is denied.

**IT IS SO ORDERED.**

Dated: March 16, 2021

ALEX G. TSE
United States Magistrate Judge