# Exhibit B

March 2, 2021

<u>BY EMAIL</u>

Matthew Ingber
Mayer Brown LLP
<u>mingber@mayerbrown.com</u>

 Re: *Jermaine Thomas et al., v. Cricket Wireless, LLC*, No. 3:19-cv-07270 (N.D. Cal.)

Dear. Mr. Ingber:

 We have reviewed the letter that your colleague emailed to us this past Friday night concerning Cricket's concealment of potentially critical evidence from its top executives. We are shocked that something like this could have occurred by accident, given that we directly raised this very concern with you more than seven months ago. In response to our concerns about Cricket's anticipated discovery practices, you made the following representations:

- "Cricket will not agree that either party should supervise the other parties' discovery conduct. . .. Cricket will comply with its discovery obligations under the Rules and expects that plaintiffs will do the same."  *See* Exhibit 1.

- "Cricket's proposed process is both transparent and cooperative" and "Cricket will 'search all places within a reasonable chance of having responsive documents. . ...'" *See* Exhibit 2.

- "Regarding Cricket's production, we continue to be baffled by your suggestion that Cricket has not complied with the requirements of Judge Alsup's standing order." *See* Exhibit 3.

 You also refused to provide us with the custodians from whom you were planning to gather documents, assuring us instead that you would search in all locations that could have responsive documents and telling us that we had no right to ask for custodian information until documents were produced. *See id*. Only after we filed numerous discovery letters with the court, were you willing to provide us with some custodian information.

 What you told us then was clear. After performing what you described as a complete search, you and your colleagues repeatedly told us that Cricket's high-level executive custodial files had all been discarded long ago.  And later, you and Cricket confirmed these representations—by providing sworn interrogatory answers and producing a chart purporting to show the specific time periods when, you said, particular custodian files had been discarded. *See* Exhibit 4 (interrogatory answers) and Exhibit 5 (chart). On top of that, you also produced a corporate representative who swore, again under oath, that these documents had been destroyed. *See* Exhibit 6 (Phillips' Deposition). Based on your most recent disclosure, we now know that these representations and statements were false.

We also now know that your representations to the Court were also false. In October 2020, you explicitly represented to Judge Alsup that Cricket's document production was substantially complete. Dkt. 94. It was not. As we now know, at the time you made this representation to us and Judge Alsup your production totaled roughly 390,000 pages of documents. Since then, you have produced in excess of 2 *million* additional pages of documents—more than five times what you had produced at the time you claimed to have substantially completed your production. And many of these more recently produced documents are not new—we now know that you had *intentionally* held them back from earlier production.

It is also impossible to ignore the timing of Friday's remarkable admission. Your recent discovery of both electronic documents and physical hard drives of potentially key files—files that you previously insisted had been destroyed—comes less than a month after our January 21, 2021 hearing during which Judge Alsup explicitly warned you of the consequences that could follow from spoliation:

> Number two, I hope I don't find out that Cricket has not retained all the records. Plaintiffs' lawyer says you have thrown away records. Well, if that's true, and those records are material to the case, that's almost the plaintiffs' lawyer goes to the pay window on a class-action basis. So I hope you didn't do what plaintiffs' lawyer is accusing you of. So both of you've got something to worry about, if even half of what I'm hearing is true.

Exhibit 7 (1/21/2021 Hearing Tr. at 16-17).

Plaintiffs have been actively litigating this case for over a year. We have exchanged over 200 discovery communications, attended more than 20 meet-and-confer calls, and have taken 7 depositions in a tireless effort to obtain basic discovery disclosures from you and you client Cricket. To say the least, you and your client's eleventh-hour disclosure is both (a) highly prejudicial given that the documents referenced in your letter apparently include the custodial files of the top executives who were at Cricket at the exact time that plaintiffs allege the company was engaged in its fraudulent scheme and because Cricket's disclosure comes more than eight months after plaintiffs started asking questions and demanding that Cricket produce these documents, and (b) evidence of, at a minimum, sanctionable discovery abuse. These facts could further suggest a coordinated effort, implicating both individuals at Cricket and your firm as Cricket's outside counsel, to perpetrate a fraud on the court and plaintiffs by knowingly or intentionally concealing the existence of documents.

At a minimum, you and your client's recent disclosure only invites more questions.

- Who (at Mayer Brown and Cricket) was involved in the document collection efforts related to these accounts – both prior to the recent discovery and in connection with the recent surprise discovery?
- Who was responsible for, or involved in, making the representation that the documents were destroyed, and why was that representation made?

- What, if anything, did Mayer Brown do to confirm that the representations it was transmitting to plaintiffs were true?
- Who was responsible for, or involved in, the recent decision to "redouble your efforts" to search for the documents referenced in your letter and what, specifically, triggered the decision to do that now?
- What prevented Cricket from discovering these documents earlier, if your client actually searched for responsive documents, as you repeatedly told us that you had?
- You claim Cricket used "standard methods" to search for these documents. What were those, specifically? What did Cricket do differently now?  What role did Mayer Brown have in those processes?
- And, when we asked for a meet-and-confer many months ago to talk about your collection process, did your client instruct you to refuse to engage in those discussions with us?

As a result of Cricket's prejudicial disclosure, we will be seeking leave to amend the scheduling order to reset the deadlines in this case, and also for a timetable and process to fully address the nature and impact of you and your client's discovery abuses. We will also be filing a motion for the appointment of a special master and the imposition of sanctions. More specifically, we will be seeking the appointment of a special master to oversee a full inquiry into the circumstances surrounding both Cricket's most recent disclosure and also Cricket and Mayer Brown's earlier discovery conduct and representations. We will ask Judge Alsup to authorize the special master to, among other things, consider (1) whether to waive the attorney-client privilege between your firm and Cricket under the crime-fraud exception; (2) whether to permit discovery into the circumstances relating to your disclosure, including whether, and when, relevant individuals at both Cricket and Mayer Brown knew about the existence of these documents before January 21, 2021, and whether representations made by you to the court and the parties was knowingly false or misleading; (3) whether Cricket and/or Mayer Brown abused the discovery process in failing to produce these documents for months or misrepresenting their existence; and (4) whether to impose sanctions for Cricket and Mayer Brown's conduct and the prejudice it caused.

By 5:00pm on Wednesday, March 3, 2021, please advise whether you will:

- Agree to a full and completely transparent inquiry into the circumstances surrounding the eleventh-hour disclosure of these Cricket executives' documents and agree to the appointment of a special master to oversee and manage that inquiry.
- Immediately provide us with the following:
  - An agreement to waive any attorney-client privilege for any documents, communications, discussions, or other relevant materials between Cricket and Mayer Brown concerning these custodial files and hard drives and related disclosure.
  - A complete chain of custody listing every individual, both at Mayer Brown and at Cricket, who was involved in any effort to search for these documents (both pre- and post-January 21, 2021) and who was involved in the recovery of these documents. This includes both the electronic and physical documents.

- o An explicit and sworn representation that the integrity of the custodial files and physical documents have not been compromised, and no individual, either at Cricket or Mayer Brown, has viewed or reviewed any of the files or documents referenced in your letter.
- o An explicit and sworn representation of whether, prior to January 21, 2021, any individual, either at Cricket or Mayer Brown, knew of or was aware that any of the documents referenced in your letter had not been destroyed.
- o A full accounting of (1) Cricket's attempts to search for, collect, and produce responsive documents in this case, including supporting documentation to show Cricket's initial process including what locations were searched, who was involved, and whether outside counsel was overseeing AT&T's in-house counsel; (2) any and all search efforts made by you and your clients after January 21, 2021, during your "redoubled efforts" to search for the documents referenced in your letter, including supporting documentation.
- o A list of all individuals, at both Cricket and Mayer Brown, who were involved in any discussions relating to the search for these documents, either before January 21, 2021 or after.
- o A statement whether you retained or consulted with any third parties relating to your or your client's search of the documents referenced in your letter.
- Agree to a stipulation seeking leave to amend the scheduling order to reset dispositive briefing deadlines and to set an immediate timetable for discovery into, and review of, the relevant individuals, communications, and circumstances relating to this disclosure.
- Withdraw your motion to dismiss and stipulate to the filing of an amended complaint after these issues are resolved.
- Agree to reopen the Phillips' deposition and make any in-house counsel involved in the litigation hold process and/or document collection process related to this case available for a deposition.
- Immediately produce all documents referenced in your letter
- Reimburse Plaintiffs and their counsel for all time spent reviewing the 2.5 million pages of documents you produced, instead of producing the high-level executive custodial files plaintiffs sought in discovery
- Reimburse Plaintiffs and their counsel for the expert expenses incurred piecing together the evidence with only lower level employee files

Very truly yours,

*/s/ Tyler W. Hudson*

*/s/ Matthew Wessler*

Cc: Jennifer Bennett
    Melody Dickson
    Jon Taylor