# Exhibit C

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Matthew D. Ingber**
Partner
T: +1 212 506 2373
mingber@mayerbrown.com

**MAYER | BROWN**

March 24, 2021

<u>BY EMAIL</u>

Tyler Hudson
Wagstaff & Cartmell LLP
4740 Grand Avenue - Suite 300
Kansas City, Missouri 64112

Re:   *Jermaine Thomas et al., v. Cricket Wireless, LLC*
      Case No. 3:19-cv-07270

Dear Mr. Hudson:

At your request, we have refrained from processing the 11 custodial files that we had believed had been purged before this litigation began, as well as the 15 recently located hard drives of non-custodial data received from legacy Cricket. We believe, however, that we have an obligation to review and produce responsive documents, and cannot continue to do nothing with these data sources.

To that end, we intend to recommence processing and reviewing these materials. Indeed, we must allow our vendor to continue to work in order to provide you with the hit reports on the search terms that you requested in your March 13, 2021 email. (As we had explained during the March 12 and March 22 meet-and-confer telephone calls, we had received only incomplete, preliminary hit reports before, at your request, we instructed the vendor to stop all work on the documents.) We will provide you with hit reports on the search terms you have proposed so that we can reach agreement on search terms as soon as possible.

In addition, we have provided you with Excel spreadsheets showing the file paths for the 15 hard drives. Given the enormous volume of data on the drives—initial estimates suggest the volume may exceed 10 terabytes—we have been informed that it would cost approximately $1 million to process and load all 15 hard drives. We accordingly propose to limit the search to particular parts of the drives that, based on the file paths, are likely to contain relevant information. Please let us know which particular portions of the drives you propose that we process in order to search for responsive information. We then can obtain a cost estimate and can discus allocation of costs, as may be appropriate.

As my colleagues explained during the March 22 meet-and-confer call, we recently have learned of the existence of an additional source of data that we believe may contain marketing materials from the class period. We have not yet reviewed the data to determine if it in fact does

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Tyson Hudson
March 24, 2021
Page 2

constitute marketing materials from the class period and, if so, whether they merely duplicate the marketing materials that Cricket already has produced. We intend to review and produce any responsive materials from the drives. The drives apparently had been saved in connection with *Mobile Telecommunications Technologies, LLC v. Leap Wireless*, which is one of the two patent infringement cases referenced in Magistrate Tse's recent discovery order (Dkt. 185). Cricket will be informing Magistrate Tse and has produced records reflecting the litigation hold correspondence from those two patent cases.

Although you have rejected our repeated prior offers to postpone the briefing schedule on class certification, in our view, the appropriate course here is to request a 90-day extension of all deadlines in the case. During this time period, Cricket can complete the supplemental production and plaintiffs can review the documents, reopen depositions (and in particular, Cricket agrees that plaintiffs may depose Chris Read and reopen Ms. Phillips's deposition), and file an amended motion for class certification, which then could be briefed in the orderly course. Without an extension, the parties likely would have to engage in an inefficient supplemental-briefing process to address the impact (if any) of the supplemental production on class certification. Although plaintiffs themselves initially proposed an amendment to the scheduling order in your March 2 letter (along with a demand for the immediate production of the recently identified documents), during the March 22 call, you told my colleagues that plaintiffs would oppose this requested extension. We request that you reconsider.

If plaintiffs do not agree to an extension or continue to demand that Cricket not review or produce the recently found data sources, Cricket will seek relief from the Court. In the meantime, in case an extension is not granted, Cricket will use a separate team to review and produce the supplemental production than the lawyers who are working on Cricket's opposition to class certification, and Cricket will not use the newly discovered materials in its opposition to class certification if that opposition must be filed on the current deadline of April 5, 2021. Cricket, however, reserves the right to use those materials to oppose class certification in a surreply or other filing if the plaintiffs use the materials.

Finally, Cricket declines plaintiffs' demands that Cricket waive the attorney-client privilege, consent to appointment of a special master, or pay plaintiffs' attorneys' and expert witness fees for reviewing the discovery produced so far in this case. The fact that a party must supplement its document production well before the close of fact discovery is not "discovery abuse," as you put it in your March 2 letter.

                                                                  Very truly yours,

                                                                  */s/ Matthew D. Ingber*