# Exhibit A

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4

5    JERMAINE THOMAS, et al.,       )  Case No.:

                                    )  3:19-cv-07270-WHA

6                  Plaintiffs,      )

                                    )

7    vs.                            )

                                    )

8    CRICKET WIRELESS, LLC,         )

                                    )

9                  Defendants.      )

     _____)

10

11

12

13       VIDEOTAPED DEPOSITION OF PMK - MICHAEL MOSES

14                     Volume I

15              APPEARING REMOTELY FROM

16                  ATLANTA, GEORGIA

17            TUESDAY, FEBRUARY 2ND, 2021

18

19

20

21   REPORTED BY:

     MONICA LEPE-GEORG

22   CSR No. 11976

23

24   PAGES 1 - 100

25

1

2

3          REMOTE VIDEOTAPED DEPOSITION OF PMK –

4    MICHAEL MOSES, VOLUME NO. I, taken on behalf of

5    Plaintiffs, at Atlanta, Georgia, beginning at

6    10:01 a.m. Central Time and ending at 12:38 p.m.

7    Central Time, on Tuesday, February 2nd, 2021, before

8    Monica Lepe-Georg, Certified Shorthand Reporter No.

9    11976.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REMOTE APPEARANCES

 2

 3    FOR PLAINTIFFS:

 4         WAGSTAFF & CARTMELL, LLP

 5         BY:  TYLER W. HUDSON, ESQ.

 6         4740 Grand Avenue

 7         Suite 300

 8         Kansas City, Missouri 64112

 9         Telephone:  816.701.1177

10         Fax:  816.531..2372

11         E-mail:  thudson@wcllp.com

12

13    FOR DEFENDANTS:

14         MAYER BROWN

15         BY:  MATTHEW D. INGBER, ESQ.

16         1221 Avenue of the Americas

17         New York, New York 10020-1001

18         Telephone:  212.506.2373

19         Fax:  212.849.5528

20         E-mail:  mingber@mayerbrown.com

21

22

23

24

25
```

3

```
 1    REMOTE APPEARANCES (Continued):

 2

 3    CO-COUNSEL FOR DEFENDANTS:

 4         MAYER BROWN

 5         BY:  VICTORIA D. WHITNEY, ESQ.

 6         1221 Avenue of the Americas

 7         New York, New York 10020-1001

 8         Telephone:  212.506.2315

 9         Fax:  212.849.5528

10         E-mail:  vwhitney@mayerbrown.com

11

12    Also Present:

13         Brian Bobbitt, Videographer

14         Caitlin O'Toole

15         Kate Hwang, In-House Counsel for Cricket

16

17

18

19

20

21

22

23

24

25
```

4

```
 1                    INDEX OF EXAMINATIONS

 2

 3                                                  PAGE

 4      EXAMINATION BY MR. HUDSON                      9

 5      EXAMINATION BY MR. INGBER                     81

 6      EXAMINATION BY MR. HUDSON                     87

 7

 8

 9

10

11

12                    INDEX OF EXHIBITS

13              (Electronically transmitted)

14

15      EXHIBIT NO.           DESCRIPTION          PAGE

16      Exhibit 89    Fourth Amended Notice of       11

17                    Deposition of Cricket

18                    Wireless, LLC Pursuant to Fed.

19                    R. Civ. D. P 30(b)(6),

20                    30(b)(2), and 34

21      Exhibit 90    2H 2013 Refresh Planogram,      17

22                    Elements Up, June 3, 2013, 62

23                    pages

24      Exhibit 91    Cricket Retail Emersion Deck,   23

25                    169 pages
```

```
 1              INDEX OF EXHIBITS (Continued)

 2               (Electronically transmitted)

 3

 4    Exhibit 92    Time Tax Planogram, Bates-Nos.      40

 5                  CRICKET00774650 to

 6                  CRICKET00774687

 7    Exhibit 93    Document titled, Exhibit 3,         40

 8                  two pages

 9    Exhibit 94    Document titled Exhibit 4, two      41

10                  pages

11    Exhibit 95    Document titled, Exhibit 5,         46

12                  Quick Start Guide

13    Exhibit 96    Declaration of Paula Phillips       51

14                  in Support of Cricket

15                  Wireless, LLC's Motion to

16                  Compel Arbitration

17    Exhibit 97    Cricket Sale Invoice No.            58

18                  79222IN95256, Bates-Nos.

19                  CRICKET02508444 to CRICKET

20                  02508445

21    Exhibit 98    Activation terms and               66

22                  conditions & signature,

23                  Bates-Nos. CRICKET02508446 to

24                  CRICKET02508449

25
```

6

Michael Moses

```
 1                INDEX OF EXHIBITS (Continued)

 2                (Electronically transmitted)

 3

 4     Exhibit 99    Online Purchase/Activation         68

 5                   Process, Bates-Nos.

 6                   CRICKET02508450 to CRICKET

 7                   02508453

 8     Exhibit 100   External Design Documentation,     70

 9                   Bates-Nos. CRICKET02508454 to

10                   CRICKET02508467

11     Exhibit 101   Chart and metadata, Bates-No.      72

12                   CRICKET02508468

13

14

15                   UNANSWERED QUESTIONS

16

17     And about the answers that you've        50      12

18     been giving and the questions that

19     have been asked of you?

20

21

22

23

24

25
```

7

Michael Moses

```
 1    BY MR. HUDSON:
 2        Q.   And -- and how does Cricket contend that a
 3    contract is formed?
 4             MR. INGBER:  Objection.  That calls for a
 5    legal conclusion.
 6             MR. HUDSON:  Are you instructing him not to
 7    answer?
 8             MR. INGBER:  No.
 9    BY MR. HUDSON:
10        Q.   Mr. Moses, do you understand the question?
11        A.   I do.  So I can -- I cannot speak to the
12    definition of a legal contract.
13        Q.   Is there anything you can point to, in
14    terms of evidence from 2012 to 2014, that would
15    indicate that any customer understood that Cricket
16    was wanting to form a contract?
17             MR. INGBER:  Objection.  Asked and
18    answered.
19             You can answer.
20             THE WITNESS:  I'm sorry.  Can you repeat
21    that question?
22    BY MR. HUDSON:
23        Q.   Sure.  Is there any evidence, from 2012 to
24    2014, that would indicate that a customer understood
25    that Cricket was wanting to form a contract?
```

8

Michael Moses

```
 1              MR. INGBER:  Same objection.
 2              THE WITNESS:  I can't say -- you know, I
 3     can't say that Cricket was looking to -- to form any
 4     sort of a contract.
 5              MR. HUDSON:  And let's, if we could,
 6     Caitlin, go to -- pull up 48, please.
 7     BY MR. HUDSON:
 8         Q.   And as she's doing that, Mr. Moses, in 2012
 9     and 2013, what was your role at Cricket Wireless?
10         A.   In 2012, I was a company-owned store
11     manager in 20- -- early 2013, I took on a -- a
12     different role as a quality manager.
13         Q.   And Mr. Moses, as a store manager, are you
14     familiar with what we've -- what we've pulled up on
15     the screen?  It's a planogram.  Are you familiar
16     with that?
17         A.   Yes, that looks familiar.
18              MR. HUDSON:  Okay.  We'll -- we'll mark
19     this exhibit as exhibit -- excuse me, Exhibit 90.
20              (Exhibit 90 was marked for identification.)
21              MR. HUDSON:  And if we could, Caitlin,
22     scroll to page 14, please, of the PowerPoint.  And
23     if you could, just zoom in on that middle -- yeah,
24     just maybe one more on the B1, B2, B3, please.
25     Thank you.
```

9

```
 1    BY MR. HUDSON:

 2        Q.   Mr. Moses, from your time as a Cricket

 3    store manager, do you rep- -- did you recognize this

 4    poster that's got the B1, B2, and B3 next to it?

 5        A.   I do, yes.

 6        Q.   And this -- this was part of the -- the

 7    Cricket "Half is More" advertising, right?

 8        A.   I don't recall the specific advertising

 9    from that time.

10        Q.   Okay.  But the poster itself indicates,

11    right, Cricket "Half is More"; do you see that?

12        A.   Correct.

13        Q.   And -- and you remember that campaign, I'm

14    assuming, right?

15        A.   I'm sorry.  What was that?  What was the

16    last question?

17        Q.   Do you remember that campaign, sir?

18        A.   I don't recall the particular details of

19    the campaign, no.

20        Q.   Okay.  But one -- one of the things that

21    Cricket regularly indicated to its customers is that

22    it was willing to provide service with no contract,

23    right?

24        A.   That is correct.

25        Q.   And that's what's reflected here on this
```

Michael Moses

```
 1              MR. INGBER:  Objection.  Asked and
 2      answered.
 3              THE WITNESS:  I would say that's -- I would
 4      say that's fair, yes.
 5      BY MR. HUDSON:
 6         Q.   And -- and here, what Cricket has decided
 7      to convey to its customers, is half is more,
 8      unlimited plans, half the price of the AT&T and
 9      Verizon, all with no contract, right?
10         A.   Correct.
11         Q.   So, sir, this would be another example of
12      Cricket, in stores, indicating to customers that its
13      plans involved no contract, right?
14              MR. INGBER:  Objection.  Vague.
15              THE WITNESS:  It specifically states the
16      words "no contract," yes, but what we were trying to
17      convey to the customers, you know, exactly, I can't
18      speak to that.
19      BY MR. HUDSON:
20         Q.   But the words that Cricket chose to use are
21      "no contract."  That's fair, right?
22              MR. INGBER:  Objection.  Asked and
23      answered.
24              THE WITNESS:  That's fair, yes.
25              MR. HUDSON:  Caitlin, let's go to Tab 2, if
```

Michael Moses

```
 1        "presented."

 2               THE WITNESS:  Again, we -- we had no

 3    control over what the customer chose or chose not

 4    to -- not to read either in the store or outside of

 5    the store.

 6    BY MR. HUDSON:

 7        Q.   You did, though, have the ability to

 8    control what information you put in front of the

 9    customer, right?

10               MR. INGBER:  Objection.  Vague.

11               THE WITNESS:  Yes, we controlled -- we

12    controlled the marketing materials and the messaging

13    that was in place inside of our stores.

14    BY MR. HUDSON:

15        Q.   And one of the constant themes in your

16    marketing between, really, 1999 and 2014, when

17    Cricket was acquired by AT&T, was the message of

18    no-contract service, right?

19               MR. INGBER:  Objection.  Outside the scope.

20    Vague as to con- -- the term "constant theme."

21               THE WITNESS:  That's correct.  No contract

22    was part -- was part of our advertising.

23               MR. HUDSON:  Let's, if we could, go to --

24    have -- 7D, please.

25               THE STENOGRAPHER:  Was that last document
```

Michael Moses

1    deposition here today.

2         MR. HUDSON:  And if you could just scroll

3    through, Caitlin, through that, down to the last

4    one.  We'll look at the metadata on this one again.

5    BY MR. HUDSON:

6      Q.   And here, again, this indicates that it's a

7    document that was created on January 25th of 2021,

8    and Mr. Moses, you're the custodian.  I just have

9    the same question for you about this document.  Why

10   was this document created?

11     A.   This document was created to show our

12   process of how a customer accepts terms and

13   conditions as of May 2017 forward, to current date.

14     Q.   And Mr. Moses, are you aware of any Cricket

15   customer who purchased a 4G LTE device or service

16   plan between 2012 and 2014 and then later signed a

17   terms and conditions document under this, you know,

18   signature capture device?

19        MR. INGBER:  Objection.  Scope.

20        THE WITNESS:  Am I aware of a specific

21   customer by name, no, I am not.

22   BY MR. HUDSON:

23     Q.   And just -- and I guess just -- are you --

24   do you have any reason to believe that any customer,

25   who bought a device between 2012 and 2014, then

13