# Exhibit B

# In the Matter Of:

*Thomas vs*

*Cricket Wireless, LLC*

# SARAH WATERS

*November 03, 2020*



```
                                                              1
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2            Civil Action No. 3:19-cv-07270-WHA

 3

 4   JERMAINE THOMAS, JERMAINE MILLER,
     JAMIE POSTPICHAL, RONALD ELLISON,
 5   SARAH WATERS, KAMILAH RIDDICK,
     FELICIA REDDICK, TIARA CROMWELL,
 6   LYSHA ENCARNACION, LANI HALE,
     MELIZZA WEAVER, ALFREDO SANCHEZ,
 7   and CLARISSA KELLY, on behalf of
     themselves and others similarly
 8   situated,

 9              Plaintiffs,

10   -vs-

11   CRICKET WIRELESS, LLC,

12              Defendant.
     _____/
13

14

15

16            VIDEOTAPED REALTIME DEPOSITION OF
                        SARAH WATERS
17

18            Tuesday, November 3, 2020
                10:31 a.m. - 4:09 p.m.
19              Central Standard Time

20
                    Remote Location
21            Via Zoom Videoconference
                 All Parties Remote
22

23

24
              Stenographically Reported By:
25                 Erica Field, FPR
```

```
                                                              2
 1   APPEARANCES:

 2


 3   On behalf of the Plaintiffs:
          WAGSTAFF & CARTMELL
 4        4740 Grand Avenue
          Suite 300
 5        Kansas City, Missouri 64112
          (816) 701-1100
 6        BY: MELODY DICKSON, ESQUIRE VIA VIDEOCONFERENCE
          mdickson@wcllp.com
 7

 8   On behalf of the Defendant:
          MAYER BROWN
 9        1221 Avenue of the Americas
          New York, New York 10020
10        (212) 506-2500
          BY: JOHN NADOLENCO, ESQUIRE VIA VIDEOCONFERENCE
11        BY: ANJANIQUE WATT, ESQUIRE VIA VIDEOCONFERENCE
          BY: VICTORIA WHITNEY, ESQUIRE VIA VIDEOCONFERENCE
12        jnadolenco@mayerbrown.com

13

14   VIDEOGRAPHER:   Kelly Woronicz

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                            3
 1                    INDEX OF PROCEEDINGS

 2    WITNESS                                            PAGE
      SARAH WATERS                                          5
 3    DIRECT EXAMINATION BY MR. NADOLENCO                   5
      CROSS-EXAMINATION BY MS. DICKSON                    175
 4    REDIRECT EXAMINATION  BY MR. NADOLENCO             192
      CERTIFICATE OF OATH                                 199
 5    CERTIFICATE OF REPORTER                             200
      ERRATA SHEET                                        201
 6

 7

 8

 9

10                          EXHIBITS
      EXHIBIT              DESCRIPTION                   PAGE
11    Exhibit 30   Verification                            39
      Exhibit 31   Declaration of Counsel                   46
12    Exhibit 32   4G Coverage Map                         165
      Exhibit 33   3G Coverage Map                         167
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    15
 1   what that means?
 2          A.     That means I would be representing a
 3   demographic area of people.
 4          Q.     What demographic area of people?
 5          A.     The people of California and the nation.
 6          Q.     And what are you required to do as a class
 7   representative?
 8          A.     Tell the truth, be honest and keep in
 9   contact with my lawyers.
10          Q.     Anything else?
11          A.     No, sir.
12          Q.     Do you believe you have any duties as a
13   class representative?
14          A.     I'm sorry.  Any duties?
15          Q.     Duties, yeah, obligations.
16          A.     The only thing I believe I need to do is
17   tell the truth about what had happened.
18          Q.     Okay.  Anything else you can think of?
19          A.     No, sir.
20          Q.     Did you buy a Cricket 4G device at some
21   point between 2012 to 2014?
22          A.     Yes, sir.
23          Q.     Do you know anyone else who purchased the
24   Cricket 4G device between 2012 and 2014?
25          A.     I believe so.
```

```
                                                             16
 1          Q.    Who?
 2          A.    My best friend, Isaac Prado.
 3          Q.    Can you spell Isaac's last name?
 4          A.    P-R-A-D-O.
 5          Q.    When did Mr. Prado buy his phone?
 6          A.    I believe it was January 2015.
 7          Q.    That was 2015 you said?
 8          A.    Yes, sir.
 9          Q.    When did you buy your Cricket 4G device?
10          A.    January -- November 1, 2013.
11          Q.    Is that the only device you purchased from
12   Cricket?
13          A.    No, sir.  I bought two -- two devices.
14          Q.    A total of two or two additional?
15          A.    A total of two.
16          Q.    So tell me about the other one.
17          A.    It was -- both phones were a Samsung Galaxy
18   S4.
19          Q.    And when did you buy the other Cricket
20   Samsung Galaxy S4?
21          A.    November 1st, 2013.
22          Q.    Okay.  And what about the other one?
23          A.    It was the same day.
24          Q.    Okay.  So you bought two phones that day?
25          A.    Yes, sir.
```

17

1    Q.   Why did you buy two?
2    A.   It was for me and my newly -- my new -- my
3  new wife at the time.
4    Q.   And what was your wife's name?
5    A.   Kimberly -- at the time it was Kimberly
6  Parson.
7    Q.   Can you spell the last name, please?
8    A.   P-A-R-S-O-N.
9    Q.   What is Kimberly's name now?
10   A.   Kimberly Hill.
11        (Reporter clarification.)
12        THE WITNESS:  Hill, H-I-L-L.
13  BY MR. NADOLENCO:
14   Q.   I'm sorry.  Can you spell it one more time
15  for me, Ms. Waters?
16   A.   H-I-L-L.
17   Q.   Is Kimberly still your wife?
18   A.   No, sir.
19   Q.   When -- what years was she your wife?
20   A.   She was my wife from 2013 to 2016.
21   Q.   Are you married now?
22   A.   Yes, sir.
23   Q.   When did you get remarried?
24   A.   I got remarried January 19th of 2019.
25   Q.   And what is the name of your -- the spouse

18

1   that you got married to on 20 -- January 19th, 2019?
2       A.   Melissa Waters.
3       Q.   What was your name before you got married
4   to Melissa Waters, your last name?
5       A.   Waters.
6       Q.   Is that your maiden name?
7       A.   Yes, sir.
8       Q.   And by coincidence you also married someone
9   with the last name Waters?
10      A.   No, sir.  She took my last name.
11      Q.   Gotcha.  Okay.  Now I'm with you.
12           What was Melissa's name prior to the
13  marriage?
14      A.   Coe, C-O-E.
15      Q.   Okay.  Where does Kimberly Parson live?
16      A.   Sacramento, California.
17      Q.   And what about Melissa Waters?
18      A.   She lives with me in Joplin, Missouri.
19      Q.   Okay.  You guys are still married?
20      A.   Yes, sir.
21      Q.   Okay.  When you bought those Cricket phones
22  back in November of 2013, did you also purchase a Cricket
23  4G data plan?
24      A.   Yes, sir.
25      Q.   Do you recall the name or type of plan more

19

1  specifically?
2       A.    It was the $55 unlimited plan.
3       Q.    For both phones?
4       A.    Yes, sir.
5       Q.    Why did you buy the unlimited plan?
6       A.    At the time it was cheaper on my wallet to
7  buy both of those plans because I didn't want overages
8  for my phone.
9       Q.    What do you mean by "overages"?
10      A.    Going over my data or my phone calls.
11      Q.    Talk time you mean?
12      A.    I'm sorry?
13      Q.    Talk time.  When you said "phone calls,"
14 did you mean going over your allotted amount of talk
15 time?
16      A.    Yes, sir.
17      Q.    So you bought the unlimited plans because
18 you didn't want to be restricted in either data, talk
19 time, or text; is that fair?
20      A.    That's correct.
21      Q.    Did you understand that that's what
22 "unlimited" meant, meaning you wouldn't be limited in the
23 amount of data, talk time, or texts you could send or
24 receive?
25            MS. DICKSON:  Object to the form.

30

1        Q.   Can you describe for me what your claims
2   are against Cricket?
3        A.   I purchased a 4G/LTE plan with a Samsung
4   wire -- or Samsung Galaxy S4 phone.  And I never received
5   4G/LTE while I was living in California at that time.
6        Q.   At all?
7        A.   At all.
8        Q.   Anything else?
9        A.   No, sir.
10       Q.   Since -- and that was the plan that you
11  purchased on November 1st, 2013, correct?
12       A.   Yes, sir.
13       Q.   And the account that is in Ms. Parson's
14  name, correct?
15       A.   Correct.
16       Q.   Can you explain to me why you are suing and
17  not Ms. Parson if the account is in her name?
18            MS. DICKSON:  Objection to form.
19       A.   The account was our -- both mine and hers
20  account, and Cricket would not allow both of our names to
21  be on the account.  It had to be one person as the
22  primary account holder.
23  BY MR. NADOLENCO:
24       Q.   And so she -- sorry.  Go ahead.
25       A.   I was the one that was paying -- paid for

```
                                                              31
 1   the phones, paid for the service, taking care of the
 2   account to make sure that it never got disconnected.
 3           Q.    But she is the primary account holder,
 4   correct?
 5           A.    I believe so.
 6           Q.    So why isn't she suing?
 7                 MS. DICKSON:  Object to the form.
 8           A.    I don't know.
 9   BY MR. NADOLENCO:
10           Q.    Since it's in her name, don't you think she
11   should be the one to be bringing the lawsuit?
12                 MS. DICKSON:  Object to the form.
13           A.    I believe she should be involved, yes.
14   BY MR. NADOLENCO:
15           Q.    Do you know why she's not?
16           A.    No, sir.
17           Q.    And so as far as you know, though, Kimberly
18   Parson is the account holder?
19                 MS. DICKSON:  Object to the form.
20           A.    I believe so.
21   BY MR. NADOLENCO:
22           Q.    Is it -- but do you have any doubt that she
23   actually is?
24                 MS. DICKSON:  Object to the form.
25           A.    No, sir.
```

60

1  A.   No, sir.
2  Q.   What was the first communication you got
3  from -- from Andrew?  Was it a call?  E-mail?  Letter?
4  A.   It was an e-mail.
5  Q.   Did you decide at some point that you
6  were -- wanted to sue Cricket?
7  A.   After talking via e-mail with Andrew and
8  talking with my wife, we -- I decided to get involved.
9  Q.   When did you make that decision?
10 A.   The end of January.  I believe it was 30th
11 of January of 2020.
12 Q.   Why?  Why did you decide to get involved?
13 A.   Because I felt that I was being taken
14 advantage of at that time when I purchased my phone for
15 me and my partner, or my wife at the time.
16 Q.   When you say you felt you were taken --
17 taken advantage of at the time, did there come a time
18 when you no longer felt like you were being taken
19 advantage of?
20 A.   No, sir.
21 Q.   What -- how do you feel you were taken
22 advantage of?
23 A.   I was paying for 4G/LTE and was not
24 receiving it.
25 Q.   And that was when you were in Sacramento?

```
                                                           180
1             If you had known on November 30th, 2013 --
2    gosh, I did it wrong again.  Let me start over again.
3             If you had known on November 1st, 2013,
4    that Cricket was never going to provide you with 4G on
5    your Samsung Galaxy S4, would you have bought it?
6             MR. NADOLENCO:  Calls for -- calls for
7         speculation.
8             THE STENOGRAPHER:  I didn't hear an answer.
9         I'm sorry.
10        A.   No.
11   BY MS. DICKSON:
12        Q.   Is it your testimony here today that you
13   had an account with Cricket from 2012 to 2014?
14        A.   Yes, ma'am.
15             MR. NADOLENCO:  Asked and answered.
16   BY MS. DICKSON:
17        Q.   Do you have any recollection of whether or
18   not your name appears on that Cricket account?
19        A.   No, I don't.
20             MR. NADOLENCO:  Asked and answered.
21   BY MS. DICKSON:
22        Q.   Was it your expectation that your name
23   would be on your Cricket account?
24        A.   Yes, ma'am.
25        Q.   Was it your expectation that you would be
```

```
                                                          181
 1   responsible for paying the bills associated with that
 2   Cricket account?
 3         A.    Yes, ma'am.
 4         Q.    Were you primarily responsible for paying
 5   the bills on that Cricket account?
 6         A.    Yes, ma'am.
 7               MR. NADOLENCO:  Asked and answered and
 8         vague.
 9   BY MS. DICKSON:
10         Q.    Did you personally purchase the two Samsung
11   Galaxy S4 devices?
12               MR. NADOLENCO:  Object to form.
13         A.    Yes, ma'am.
14   BY MS. DICKSON:
15         Q.    The money that you used to pay for the two
16   Samsung Galaxy S4 devices on November 1st, 2013, was your
17   money?
18         A.    Yes, ma'am.
19               MR. NADOLENCO:  Asked and answered.
20   BY MS. DICKSON:
21         Q.    You testified earlier about your ex-wife's
22   potential involvement in this case.
23               Do you recall that?
24         A.    Yes, ma'am.
25         Q.    You mentioned that you thought that she
```

```
                                                         182
1    should be involved in this case.
2              Do you recall that?
3         A.   Yes, ma'am.
4         Q.   Why did you say that?
5         A.   She was also using the phone.
6         Q.   But she wasn't responsible for paying the
7    bills, correct?
8         A.   That's correct.
9              MR. NADOLENCO:  Leading.
10   BY MS. DICKSON:
11        Q.   And she -- and was your ex-wife -- did your
12   ex-wife contribute to buying the phones?
13        A.   No, ma'am.
14        Q.   Whenever you decided to get involved in
15   this lawsuit, did you have any documents related to your
16   2012 to 2014 Cricket service?
17        A.   As far as receipts or --
18        Q.   Correct.
19        A.   No, ma'am, I did not.
20        Q.   And if you had any documentation like that
21   at the time that you signed up for this case, you would
22   have preserved it, right?
23        A.   That's correct.
24        Q.   And if you still had those devices, you
25   would a preserved those, too, right?
```