MAYER BROWN LLP
Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
Kevin S. Ranlett (*pro hac vice*)
kranlett@mayerbrown.com
Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

MAYER BROWN LLP
Matthew D. Ingber (*pro hac vice*)
mingber@mayerbrown.com
Jarman D. Russell (*pro hac vice*)
jrussell@mayerbrown.com
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Attorneys for Defendant*
*Cricket Wireless, LLC*

CROWELL & MORING LLP
Kristin J. Madigan (SBN 233436)
KMadigan@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

CROWELL & MORING LLP
Christopher A. Cole (*pro hac vice*)
CCole@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| URSULA FREITAS, individual, on behalf of herself and others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>CRICKET WIRELESS LLC,<br><br>               Defendant. | Case No. 3:19-cv-07270-WHA<br><br>**CRICKET WIRELESS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        TBD<br>Time:       TBD<br>Location:  Courtroom 12, 19th Floor<br>Judge:    Hon. William H. Alsup<br><br>Complaint Filed: November 4, 2019 |

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 1

I. Plaintiffs' claim fails as a matter of law on the "enterprise" element because Cricket and its dealers could not form an association-in-fact enterprise. ........................ 1

    A. As a matter of law, Cricket could not have entered into an association-in-fact enterprise with its exclusive dealers, because they are not sufficiently distinct from Cricket. ........................................................................................ 2

        1. The existence of a formal legal distinction between two entities is insufficient, standing alone, for them to form an association-in-fact enterprise. ............................................................................................. 3

        2. Cricket's relationship to the exclusive dealers is too close for them to form an association-in-fact enterprise. .................................................. 4

    B. Cricket and the national retailers could not have entered into an association-in-fact enterprise because they did not share a common purpose. ...................................................................................................... 6

        1. Where a complaint alleges a fraudulent common purpose, the plaintiff must show that the enterprise members shared that purpose. ......................................................................................................... 7

        2. As a matter of law, Cricket and the national retailers are in a run-of-the-mill commercial relationship where each is pursuing its own economic goals and therefore do not share a common purpose. .............. 7

II. Plaintiffs' claim fails as matter of law on the "causation" element. .................................. 9

    A. The expert reports should be excluded because they violate the rule that damages models must control for unrelated factors when calculating the price premium attributable to unlawful conduct. .................................................. 10

    B. Plaintiffs cannot recover for the entire class on a theory that only *some* class members were harmed. ................................................................................ 10

        1. This is not an upcharge case affecting all customers: Customers did not pay a discrete extra charge for 4G capabilities. .................................. 11

        2. The Court did not relieve plaintiffs of the burden to prove that a critical mass of consumers relied on the challenged advertising. ............. 12

        3. Plaintiffs cannot rely on the critical-mass theory both because they lack evidence that a critical mass of consumers relied on the challenged advertising and because the theory fails as a matter of law. ....................................................................................................... 12

**TABLE OF CONTENTS**
(continued)

**Page**

III.   Plaintiffs' damages claim for alleged service-plan overcharges fails because there
       were no overpayments under plaintiffs' theory of damages. .......................................... 14

       A.   Plaintiffs concede that Freitas did not overpay for her 4G service plan. ............. 14

       B.   The pre-September 15, 2013, class claims for service-plan overpayments
            fail because there were no overpayments during that period. .............................. 15

CONCLUSION .................................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abbott Labs. v. Adelphia Supply USA*,

5

    2017 WL 57802 (E.D.N.Y. Jan., 4, 2017) ...............................................................8

6

*Anza v. Ideal Steel Supply Corp.*,

7

    547 U.S. 451 (2006)...............................................................................................13

8

*Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*,

    965 F.2d 879 (10th Cir. 1992) ...............................................................................2

9

*Bias v. Wells Fargo & Co.*,

10

    942 F. Supp. 2d 915 (N.D. Cal. 2013) ...................................................................8

11

*Bible v. United Student Aid Funds, Inc.*,

    799 F.3d 633 (7th Cir. 2015) .................................................................................7

12

*Bridge v. Phoenix Bond & Indem. Co.*,

13

    553 U.S. 639 (2008)...............................................................................................12

14

*Cedric Kushner Promotions, Ltd. v. King*,

15

    533 U.S. 158 (2001)........................................................................................3, 4, 6

16

*Chagby v. Target Corp.*,

    358 F. App'x 805 (9th Cir. 2009) ..........................................................................4

17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,

18

    295 F. Supp. 3d 927 (N.D. Cal. 2018) ...........................................................11, 12

19

*Cisneros v. Petland, Inc.*,

20

    972 F.3d 1204 (11th Cir. 2020) .............................................................................7

21

*In re ClassicStar Mare Lease Litig.*,

    727 F.3d 473 (6th Cir. 2013) .................................................................................2

22

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,

23

    200 F.3d 1223 (9th Cir. 2000) ...............................................................................7

24

*Cruz v. FXDirectDealer, LLC*,

25

    720 F.3d 115 (2d Cir. 2013).............................................................................2, 7

26

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,

    2013 WL 12114069 (C.D. Cal. Mar. 12, 2013)....................................................8

27

*Fitzgerald v. Chrysler Corp.*,

28

    116 F.3d 225 (7th Cir. 1997) ...........................................................................5, 6

iii

*Fogie v. THORN Americas, Inc.*,
190 F.3d 889 (8th Cir. 1999) ................................................................................................2

*Friedman v. 24 Hour Fitness USA, Inc.*,
580 F. Supp. 2d 985 (C.D. Cal. 2008) ...................................................................................9

*Gaines v. Home Loan Ctr., Inc.*,
2010 WL 11506442 (C.D. Cal. May 24, 2010) .....................................................................4

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) .............................................................................................7

*Harmoni Int'l Spice, Inc. v. Hume*,
914 F.3d 648 (9th Cir. 2019) ...............................................................................................13

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010)...........................................................................................................10, 13

*Holmes v. Secs. Inv. Prot. Corp.*,
503 U.S. 258 (1992)..............................................................................................................13

*Humana Inc. v. Mallinckrodt ARD LLC*,
2020 WL 3041309 (C.D. Cal. Mar. 9, 2020)..........................................................................8

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
46 F.3d 258 (3d Cir. 1995)......................................................................................................2

*In re JUUL Labs, Inc. Mktg., Sales Practices & Prod. Liab. Litig.*,
497 F. Supp. 3d 552, 599-603 (N.D. Cal. 2020)....................................................................9

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) ............................................................................................2, 4

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .............................................................................................1, 8

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) .........................................................................................13, 14

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*,
943 F.3d 1243 (9th Cir. 2019) .......................................................................................13, 14

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ...............................................................................................11

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) ....................................................................................2, 3, 6

iv

*Stitt v. Citibank, N.A.*,
  2015 WL 75237 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 F. App'x 99 (2018) ...........................7, 9

*In re: Takata Airbag Prod. Liab. Litig.*,
  2015 WL 9987659 (S.D. Fla. Dec. 2, 2015) ...............................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
  Prods. Liab. Litig.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................................4

*U1it4less, Inc. v. Fedex Corp.*,
  871 F.3d 199 (2d Cir. 2017).................................................................................4

*United States v. Benny*,
  786 F.2d 1410 (9th Cir. 1986) ..............................................................................3

*United States v. Feldman*,
  853 F2.d 648, 658-60 (9th Cir. 1988) ......................................................................8

*United States v. Turkette*,
  452 U.S. 576 (1981).........................................................................................2

*VanDenBroeck v. CommonPoint Mortg. Co.*,
  210 F.3d 696 (6th Cir. 2000) ...............................................................................7

*In re Wells Fargo Ins. Mktg. & Sales Pracs. Litig.*,
  2018 WL 4945541 (C.D. Cal. June 18, 2018) ............................................................8

*Yagman v. Kelly*,
  2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ............................................................4

*Young v. Wells Fargo & Co.*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...................................................................9

**Statutes**

18 U.S.C. § 1961................................................................................1, 3, 10

1    Plaintiffs claim that Cricket extracted a fraudulent price premium from customers who
2  bought its 4G-capable products in markets without 4G coverage by deceiving some of those
3  customers into believing there *was* 4G coverage in those areas. Dkt. 322 at 2-9. The record does
4  not support that narrative. But even if it did, as a matter of law, that narrative cannot satisfy the
5  elements of their RICO cause of action.

6    Cricket is entitled to summary judgment for two principal reasons. First, plaintiffs do not
7  satisfy the "enterprise" element of RICO. Cricket could not have entered into an association-in-
8  fact enterprise with its exclusive dealers because they are Cricket's agents. Nor could Cricket
9  have entered into an enterprise with the national retailers that sold its phones, because plaintiffs
10  do not allege that those companies shared the common fraudulent purpose alleged in the
11  complaint.

12    Second, plaintiffs' causation theory contravenes binding Supreme Court and Ninth
13  Circuit RICO precedents, which do not permit a RICO plaintiff to recover for injuries caused by
14  harm to another party who could sue on his or her own behalf. Here, any customers who actually
15  were deceived could bring claims; accordingly, undeceived class members cannot recover on the
16  basis of plaintiffs' strained price-premium theory of RICO causation.

17    In addition, plaintiffs' claim has a number of other fatal flaws: For example, plaintiffs
18  could not prove causation, even under their theory, because their two supporting experts' reports
19  and testimony are inadmissible—leaving no evidence at all to support this element of their claim.
20  For all of these reasons, the Court should grant summary judgment to Cricket.

21                                    **ARGUMENT**

22  **I.    Plaintiffs' claim fails as a matter of law on the "enterprise" element because Cricket
23          and its dealers could not form an association-in-fact enterprise.**

24    For plaintiffs to make out their RICO claim, they must show that Cricket is a "person"
25  that associated with a separate "enterprise" to conduct the enterprise's affairs "through a pattern
26  of racketeering activity." 18 U.S.C. § 1962(c). Plaintiffs contend that RICO and its dealers
27  formed an "association-in-fact enterprise," which is "a group of persons associated together for a
28  common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541,

1

552 (9th Cir. 2007) (en banc) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Plaintiffs allege that the enterprise consists of (1) Cricket; (2) Cricket's exclusive dealers that acted as franchisees; and (3) independent national retailers like Wal-Mart and Best Buy that sold Cricket phones. Dkt. 332 at 11; Dkt. 184 ¶¶ 265-272. As a matter of law, neither Cricket's dealers nor the national retailers had the type of relationship with Cricket that could form an association-in-fact enterprise.[1]

> **A.    As a matter of law, Cricket could not have entered into an association-in-fact enterprise with its exclusive dealers, because they are not sufficiently distinct from Cricket.**

Every appellate court that has addressed the question agrees that a corporate defendant and its employees or agents are too close to form an association-in-fact enterprise under RICO because they are not "formally or practically separable" from the corporate defendant. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361-62 (9th Cir. 2005); *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1356-57 (11th Cir. 2016); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013); *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 897 (8th Cir. 1999); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995); *Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 886 (10th Cir. 1992). That is because a corporation "*cannot* act except through its officers, agents, and employees." *Ray*, 836 F.3d at 1357 (emphasis added).

As Cricket explained in its opening brief (at 10-13), this rule means that Cricket and its exclusive dealers cannot form an association-in-fact enterprise. That enterprise is not "practically separable" from Cricket itself, *Living Designs*, 431 F.3d at 362, as the exclusive Cricket dealers perform the exact role that Cricket employees would perform if Cricket sold all of its phones and

---

[1] Contrary to plaintiffs' suggestion, Dkt. 332 at 1, the Court's motion-to-dismiss order (Dkt. 277) did not hold that Cricket and its dealers formed an association-in-fact enterprise. The order explained that plaintiffs had alleged a common purpose between Cricket and its exclusive dealers, Dkt. 277 at 9, but it did not opine on whether that franchisor-franchisee relation is sufficiently distinct to form an association-in-fact enterprise. That makes sense, because Cricket's motion to dismiss the operative complaint did not make a distinctiveness argument. Cricket first made that argument on summary judgment.

1  plans through Cricket-owned stores. Plaintiffs offer several responses; all are meritless.

2  **1.      The existence of a formal legal distinction between two entities is insufficient, standing alone, for them to form an association-in-fact enterprise.**

3

4         Plaintiffs assert that the "formal legal distinction" between Cricket and its exclusive

5  dealers is sufficient to allow Cricket and the dealers to form an enterprise distinct from Cricket

6  itself. Dkt. 332 at 15. In support of this argument, plaintiffs rely primarily on *Cedric Kushner*

7  *Promotions, Ltd. v. King*, 533 U.S. 158 (2001), which held that the sole owner of a corporation

8  was a "person" who could be held liable for engaging in a pattern of racketeering with his

9  corporation; the combination of the owner and the corporation served as the "enterprise." *Id.* at

10  160. But the defendant in *Cedric Kushner* was a natural person who was distinct for RICO

11  purposes from his closely-held corporation, which was the enterprise. *Id.* at 163 (discussing 18

12  U.S.C. § 1961(3), (4)). Here, by contrast, the defendant *is* a corporation, and the alleged

13  enterprise is the "associat[ion] in fact" of the corporation and some of its dealers. 18 U.S.C.

14  § 1961(4). While a natural person can choose to act through a corporation, a corporation can act

15  *only* through its employees, agents, and other affiliates. RICO's distinctiveness requirement

16  would be meaningless in corporate-defendant cases if a corporation and an alleged enterprise

17  consisting of the corporation and its employees and agents were treated as distinct. *Ray*, 836 F.3d

18  at 1356; *see also Cedric Kushner*, 533 U.S. at 161 (a corporation's employees or agents are

19  "simply the same 'person' referred to by a different name").

20         The Supreme Court recognized that critical difference in *Cedric Kushner*. It described

21  natural-person-defendant RICO cases as "quite different" from corporate-defendant RICO cases.

22  533 U.S. at 164. Although the Court expressly declined to consider the question here (whether a

23  corporate defendant can form an association-in-fact enterprise "together with all its employees

24  and agents"), it cast doubt on plaintiffs' position. *Id.* (noting that it is "less natural to speak of a

25  corporation as . . . 'associated with'" such an "oddly constructed entity").[2]

26

27  ---
  [2] The only other case that plaintiffs cite on this point, *United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986), addressed the same scenario as in *Cedric Kushner*.

28

3

1    After *Cedric Kushner*, numerous courts (including the Ninth Circuit) have continued to

2 hold that RICO's "distinctness requirement" means that when the defendant is a corporation, the

3 alleged enterprise cannot consist of either (1) "its employees, subsidiaries, or agents," even if

4 they are "separately incorporated legal entities"; or (2) the "corporate defendant associated with

5 its own employees or agents carrying on the regular affairs of the defendant." *U1it4less, Inc. v.*

6 *Fedex Corp.*, 871 F.3d 199, 205-06, 208 (2d Cir. 2017) (internal quotation marks omitted)

7 (collecting cases); *see Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009) (alleged

8 enterprise between Target and subsidiaries "fail[ed] to meet the distinctiveness requirement of

9 civil RICO claims"); *Yagman v. Kelly*, 2018 WL 2138461, at *14 (C.D. Cal. Mar. 20, 2018)

10 (RICO enterprise cannot consist of a "corporate defendant" and its "agents"); *In re Toyota Motor*

11 *Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d

12 1180, 1202-03 (C.D. Cal. 2011) (same for corporate defendant and its affiliates); *Gaines v. Home*

13 *Loan Ctr., Inc.*, 2010 WL 11506442, at *13 (C.D. Cal. May 24, 2010) ("[W]hen a manufacturer

14 deals with its dealers and agents in the ordinary way . . . differing not at all from what it would

15 be if the agents were the employees of a totally integrated enterprise, plaintiffs cannot establish a

16 RICO enterprise.") (internal citation and quotation marks omitted).

17    By contrast, when the Ninth Circuit held that corporate defendant DuPont could form an

18 association-in-fact enterprise with its independent law firms and expert witnesses, the court did

19 not simply ask whether the entities were legally separate. *Living Designs*, 431 F.3d at 362.

20 Instead, the court inquired also into whether the enterprise was "practically separable" from

21 DuPont itself, holding that it was because the "law firms" are "distinct entities" that are ethically

22 required "to maintain their professional independence." *Id.* Plaintiffs here point to no such

23 independence or practical separation between Cricket and its exclusive dealers.

### 2. Cricket's relationship to the exclusive dealers is too close for them to form an association-in-fact enterprise.

25    As this Court has recognized, Cricket's relationship with the exclusive dealers is

26 comparable to one type of corporate-agent relationship, the "franchisor-franchisee structure."

27 Dkt. 277 at 9. As a matter of law, this type of relationship is too close to form an association-in-

28

4

fact enterprise. The Seventh Circuit made just that point in *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997), when it held that an automaker and its exclusive but independently-owned car dealerships cannot form a RICO enterprise. The *Fitzgerald* Court explained that a franchisor-franchisee relationship is not sufficiently distinct to form an association-in-fact enterprise, because it does not matter "from the standpoint of preventing the type of abuse for which RICO was designed" whether a corporation owns every store or instead operates through agents that exclusively market and sell the corporation's products. *Id.* at 227. Cricket's relationship with its exclusive dealers is closely analogous to the relationship at issue in *Fitzgerald*; like automobile dealerships, exclusive Cricket dealers partner with Cricket, and only with Cricket, to sell Cricket's products and services. Cricket could have sold these products and services solely in its own stores rather than through exclusive dealers, but it was not required to do so; the mere fact that Cricket sells its products and wireless service through "dealers or other agents or affiliates" cannot trigger RICO penalties. *Id.* at 228.

Plaintiffs argue that Cricket's contracts with the exclusive dealers disclaim a franchisor-franchisee relationship. Dkt. 332 at 11-12. That argument misses the point: *Fitzgerald*'s holding was not premised on, or limited to, a specific type of relationship; it was premised on the fact that the dealers were not sufficiently distinct from the corporation *in practice*. 116 F.3d at 227-28. The same is true here with respect to Cricket's exclusive dealers. Like the auto dealers, the Cricket dealers performed the exact role that Cricket's own employees would have had to undertake if it sold phones and service through its own stores. In fact, the Cricket relationship is even closer than the one in *Fitzgerald*, because the undisputed evidence shows that exclusive dealers' stores were indistinguishable from Cricket-owned stores, using the same "marketing materials" and "store layouts," and with employees "receiv[ing] the same training" and using the same "protocols for customer interaction[s]." Dkt. 312-19 ¶ 7. Moreover, the *Fitzgerald* court noted that Chrysler's use of independent dealers did not track the typical RICO case, where a defendant "gains additional power to do evil by taking over a seemingly legitimate enterprise," because "Chrysler has a *greater* appearance of probity than any automobile dealer." 116 F.3d at

227-28. The same is true of Cricket, which is more reputable than standalone wireless dealer stores (such as the K Wireless Stereo World, Inc. dealer from which Freitas bought her phone), regardless of whether those dealers technically are franchisees.

Plaintiffs assert that *Fitzgerald* was wrongly decided. Dkt. 332 at 11-12. But every court of appeals to consider the question has agreed with *Fitzgerald*, *see Ray*, 836 F.3d at 1356 (collecting cases). And *Cedric Kushner*, the only Supreme Court decision to consider the matter, noted that it is not "natural" to say that a corporate defendant is "associated with" an enterprise comprised of the corporation and its own agents and employees, 533 U.S. at 164. Further, *Fitzgerald*'s logic is sound; *Fitzgerald* explained that it would make no sense for RICO to punish a corporation's choice to sell through third-party dealerships rather than ones it directly owns, because that conduct does not differ at all "from what it would be if" the franchisees "were the employees of a totally integrated enterprise." 116 F.3d at 228. Recent decisions have continued to follow *Fitzgerald*. *See*, *e.g.*, *Ray*, 836 F.3d at 1356; *see also* Dkt. 312 at 12-13. The Court should do the same in this case. And under *Fitzgerald*, Cricket and the exclusive dealers cannot form a RICO enterprise.

### B. Cricket and the national retailers could not have entered into an association-in-fact enterprise because they did not share a common purpose.

Plaintiffs make the alternative argument that an enterprise could consist of Cricket and national retailers (instead of consisting of Cricket and the exclusive dealers). But that argument likewise fails. Cricket and the national retailers could not have formed an enterprise because they did not share the common purpose alleged in the complaint—specifically, a "common scheme" to sell phones that Cricket and the retailers both knew "could not deliver on the 4G promise." Dkt. 277 at 9. But plaintiffs' brief conspicuously does not assert that there is evidence that any national retailer participated in that alleged scheme. *See* Dkt. 332 at 13-14.[3] Instead, plaintiffs argue that they need only show that Cricket and the retailers shared the common purpose of

---

[3] Plaintiffs also say there is no evidence at all that national retailers sold Cricket 4G phones and plans. Dkt. 332 at 13. Plaintiffs are incorrect; national retailers did not sell Cricket service plans, but they did sell Cricket phones. *See* Dkt. 312-19 ¶ 8.

"selling Cricket phones" generally. Dkt. 332 at 13. That is incorrect for two independent reasons.

### 1. Where a complaint alleges a fraudulent common purpose, the plaintiff must show that the enterprise members shared that purpose.

The complaint alleges that Cricket and the national retailers shared the common purpose of "perpetuat[ing] the illusion of expanding 4G/LTE network coverage and service on a nationwide basis." Dkt. 184 ¶ 273; *see id.* ¶ 294; *id.* ¶ 297. Where, as here, a complaint alleges a fraudulent common purpose, the plaintiff must show that each of the enterprise members "actually knew of," and in fact "shared," that "common fraudulent purpose." *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *4-5 (N.D. Cal. Jan. 6, 2015), *aff'd*, 748 F. App'x 99 (2018). Here, plaintiffs have offered no evidence that the national retailers shared the alleged fraudulent common purpose. And plaintiffs cannot meet their burden on summary judgment by disclaiming the common fraudulent purpose alleged in the complaint. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) (holding that plaintiffs may not "contradict their earlier allegations in an effort to survive summary judgment."); *see GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012).

### 2. As a matter of law, Cricket and the national retailers are in a run-of-the-mill commercial relationship where each is pursuing its own economic goals and therefore do not share a common purpose.

More fundamentally, plaintiffs' new "common purpose" theory fails as a matter of law. As all appellate courts to address the question have held, "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest" does not satisfy RICO's common-purpose requirement. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655-56 (7th Cir. 2015); *see Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *Stitt*, 748 F. App'x at 101; *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013); *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699-700 (6th Cir. 2000); *see also* Dkt. 312 at 13-15 (discussing cases). Plaintiffs do not engage with that case law. If plaintiffs were correct that the simple goal of a profit could be a "common purpose" under RICO, then practically every business relationship would be an association-in-fact enterprise. Further, plaintiffs' theory is especially inapt here, because the members of the alleged enterprise—

7

1   national retailers and Cricket's exclusive dealers—were competing to sell phones. Two

2   businesses cannot have a "common" purpose of selling a product when they are *competing* to sell

3   it. *See Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *6 (E.D.N.Y. Jan., 4, 2017).

4         Plaintiffs cite no cases to the contrary. Dkt. 332 at 13-14. They rely primarily on two

5   Ninth Circuit decisions, but the main RICO holding in both cases addressed enterprise structure,

6   not common purpose. *Odom*, 486 F.3d at 551; *United States v. Feldman*, 853 F2.d 648, 658-60

7   (9th Cir. 1988). The problem with the alleged enterprise here has nothing to do with structure; it

8   is that the enterprise lacks a common *purpose* under RICO. For the same reason, plaintiffs' other

9   cases about enterprise structure, Dkt. 332 at 17-18, fail to support their theory that the retailers

10  and Cricket shared a sufficient common purpose to form an enterprise with Cricket.

11        Nor does anything that *Odom* or *Feldman* have to say about common purpose support

12  plaintiffs' theory that selling phones is a sufficient common purpose. In *Odom*, the court held

13  that Best Buy and Microsoft "had the common purpose of increasing the number of people using

14  Microsoft's Internet Service, *and doing so by fraudulent means*," 486 F.3d at 552 (emphasis

15  added). So *Odom* says nothing about whether the *non-fraudulent* intent to sell a product for

16  private gain is sufficient common purpose to unite the members of an alleged enterprise.[4] And

17  although *Feldman* did say that a common purpose "does not require intentional or 'purposeful'

18  behavior," the court was rejecting the argument that all members of an enterprise must "benefit

19  from the racketeering." 853 F.2d at 657. That ruling is irrelevant here. And the court was

20  confronting very different facts: the enterprise was a natural-person defendant, his brother, and

21  corporations they jointly owned. *Id. Feldman* had no occasion to, and did not, consider whether

22  unaffiliated, competing corporations conducting their own businesses for their own ends share a

23  common purpose under RICO.

24

---

25  [4] Most of the district court cases that plaintiffs cite also involved fraudulent common purposes.
    *See Humana Inc. v. Mallinckrodt ARD LLC*, 2020 WL 3041309, at *7 (C.D. Cal. Mar. 9, 2020);
26  *In re Wells Fargo Ins. Mktg. & Sales Pracs. Litig.*, 2018 WL 4945541, at *4 (C.D. Cal. June 18,
    2018); *In re: Takata Airbag Prod. Liab. Litig.*, 2015 WL 9987659, at *1 (S.D. Fla. Dec. 2,
27  2015); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013); *Downey Surgical
    Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *11 (C.D. Cal. Mar. 12, 2013).

28

In fact, the only case that plaintiffs cite that actually addresses allegations of a common purpose comparable to selling phones undercuts plaintiffs' position. In *In re JUUL Labs, Inc. Marketing, Sales Practices & Product Liability Litigation*, the court *rejected* the proposed common purpose of "expand[ing] sales of JUUL products" because each member of the alleged association-in-fact enterprise acted "for its own economic interests, and not to join an already existing Enterprise." 497 F. Supp. 3d 552, 599-603 (N.D. Cal. 2020). The same is true here of Cricket and the national retailers that happened to sell Cricket phones.

To be sure, in one district-court decision that plaintiffs cite, *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009), the court simply assumed that a mortgage lender and the separate company it used to conduct property inspections shared a sufficiently common purpose to be an enterprise. *Id.* at 1028.[5] But the Ninth Circuit has held that this exact relationship (between a mortgage lender and its separate property inspector) lacks a "common purpose under RICO." *Stitt*, 748 F. App'x at 101. As the Ninth Circuit explained, parties with a "servicing contract" do not share a "common purpose" because each acts for its own purposes. *Id.*[6] So too here: Cricket and each of the national retailers may have sold Cricket phones, but they did so for their own private ends (and indeed, the retailers competed with one another). Merely transacting business for private profit is too threadbare a common purpose to use as a yardstick to tell when businesses that interact have formed an ongoing discrete enterprise.

## II.   Plaintiffs' claim fails as matter of law on the "causation" element.

To recover, plaintiffs must show that each class member suffered injury "by reason of"

---

[5] The *Young* court did not consider the common-purpose issue because the defendant in that case did not challenge the existence of the RICO enterprise, but merely contested whether the enterprise had the "necessary connection" to the disputed fees and whether a "private cause of action for aiding and abetting a RICO violation" exists. 671 F. Supp. 2d at 1026.

[6] *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008), also is inconsistent with *Stitt*. The *Friedman* court accepted an alleged enterprise between a fitness chain and its payment processors that were unaware of the fraud on the theory that they still shared the common purpose of "effectuat[ing] . . . payments" from customers. *Id.* at 991. But *Stitt* makes clear that the mere fact that a corporate defendant enters into a "servicing contract" for some function relevant to its business does not mean that the defendant and the service provider share "common purpose" identifying them as members of an enterprise, 748 F. App'x at 101.

the RICO violation. 18 U.S.C. § 1964(c). This means that the violation must be both the "but for" and the "proximate" cause of the alleged injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Here, the alleged RICO violation was advertising 4G-capable smartphones and plans in markets without 4G, and the alleged injury was damages for overpaying for those products. Dkt. 277 at 12. To establish causation, therefore, plaintiffs must show that the challenged advertising was the reason for their overpayment.

Plaintiffs cannot do that for two reasons: First, their only evidence to support the theory is two experts' testimony and reports that are inadmissible because they rely on a flawed method for determining whether a customer overpaid; and second, their novel theory of causation fails as a matter of law.

## A. The expert reports should be excluded because they violate the rule that damages models must control for unrelated factors when calculating the price premium attributable to unlawful conduct.

The only evidence plaintiffs offer to show that the challenged advertising caused the claimed injury is Keith Mallinson's and Steve Browne's expert reports and testimony. Cricket filed a *Daubert* motion to exclude them (Dkts. 311, 333). If the Court grants the *Daubert* motion (and it should), plaintiffs would have no admissible evidence of the existence or amount that they alleged overcharge for 4G, and therefore plaintiffs would not be able to prove causation. *See* Dkt. 312 at 16-18.[7]

## B. Plaintiffs cannot recover for the entire class on a theory that only *some* class members were harmed.

Plaintiffs cannot prove that the challenged advertising is the reason for their injury. They have not presented any evidence that any individual plaintiff, much less the entire class, relied on that advertising when purchasing a Cricket phone or plan. That evidence of reliance is necessary to prove causation here. It is undisputed that many consumers purchased the 4G phones because they offered other attractive features, or with full knowledge of where Cricket did or did not have

---

[7]  Plaintiffs' experts purport to derive alleged overcharges by comparing the prices that Cricket charged for 4G-capable smartphones and service plans to the prices of benchmark 3G phones and competitor 4G plans. Without these experts' testimony, plaintiffs cannot establish that any customer paid a price premium.

4G coverage. Dkt. 312 at 21. In an attempt to get around that problem, plaintiffs make two erroneous arguments. And although the Court held that causation could be resolved on a classwide basis if a "critical mass of consumers relied on" the challenged advertising, Dkt. 298 at 11, plaintiffs have not made (and cannot make) that showing either.

> **1.** **This is not an upcharge case affecting all customers: Customers did not pay a discrete extra charge for 4G capabilities.**

Plaintiffs assert, incorrectly, that this is an "upcharge" case. Dkt. 332 at 15. Under plaintiffs' theory, no individual plaintiff needs to prove causation. Rather, they assert that the challenged advertising allowed Cricket to uniformly raise the prices of all of its 4G phones and plans, so it is irrelevant "what any particular class member believed." *Id.* But in an upcharge case, a consumer pays a discrete surcharge for *nothing*. Cricket's customers paid flat prices for *something*—smartphones and plans with numerous features (such as unlimited calling and texting), only one of which was 4G capabilities. Dkt. 312 at 4-5. The Court already has recognized that "consumers vary in their reasons for buying [Cricket] phones and plans[.]" Dkt. 298 at 13. Whether a consumer actually was misled by the challenged advertising about 4G coverage depends on the person's particular circumstances, including whether the person bought Cricket products for 4G or for other reasons, whether the person even saw the challenged 4G advertising, and whether the person understood the limits of 4G coverage based on Cricket's coverage maps. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004).

Plaintiffs' reliance on *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Product Liability Litigation*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) is misplaced: that decision demonstrates exactly why this is *not* an upcharge case. In *In re Chrysler*, truck buyers made an extra itemized payment for an add-on feature that their trucks did not have. 295 F. Supp. 3d at 961, 967. Causation was presumed because no reasonable person would knowingly pay extra for nothing. *Id.* Here, each purchaser received a 4G-capable Cricket smartphone and service plan, and unlike in *In re Chrysler*, there was no missing add-on feature. Whether any consumer actually was misled about the extent of Cricket's 4G coverage depends on whether the person relied on the challenged advertising, not on whether the person bought an extra feature that the

11

product did not have. In fact, Cricket did not charge extra for 4G plans at all; they cost the same as its 3G plans. Dkt. 203 ¶¶ 28-30. And Cricket did not charge extra for 4G capabilities in smartphones. *Id.* Whereas liability in *In re Chrysler* turned on whether consumers paid for an add-on feature that the product did not actually have, liability in this case turns only on whether consumers relied on allegedly misleading advertising.

**2.    The Court did not relieve plaintiffs of the burden to prove that a critical mass of consumers relied on the challenged advertising.**

Plaintiffs next contend that the Court already relieved them of the burden of proving reliance entirely. Dkt. 332 at 17. But this argument rests on a misreading of the Court's order.

When it certified the class, the Court held that plaintiffs could prove proximate causation on a classwide basis even if "not everyone relied on" the challenged advertising, so long as "a *critical mass* of consumers relied on" it "so as to artificially support a higher price for both phones and plans." Dkt. 298 at 11 (emphasis added). Plaintiffs contend that the Court's "critical mass" theory of causation was just "a statement about basic economics," not a requirement that they prove reliance by a critical mass of consumers. Dkt. 332 at 17. But plaintiffs misread the Court's order. The Court first stated that a RICO plaintiff must "prove proximate cause," and in the very next sentence explained that "[i]n this case it would be acceptable for plaintiffs to try to *prove that* while not everyone relied on Cricket's representations, . . . *a critical mass* of consumers *relied* on Cricket's representations about 4G." Dkt. 298 at 11 (emphasis added). The Court could not have been more clear. The Court was emphatic that it was not adopting an entirely reliance-free standard of causation of the sort plaintiffs now advance, explaining that "[t]he Supreme Court has said" in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), that "reliance by *someone*" is required. Dkt. 298 at 11.

**3.    Plaintiffs cannot rely on the critical-mass theory both because they lack evidence that a critical mass of consumers relied on the challenged advertising and because the theory fails as a matter of law.**

Plaintiffs have not presented *any* evidence from which a reasonable jury could find that a "critical mass" of consumers relied on the challenged advertising. That omission is reason alone to enter summary judgment for Cricket.

12

1        Moreover, Cricket respectfully submits that the "critical mass" theory is foreclosed by

2   Supreme Court precedent. When the "immediate victims of an alleged RICO violation can be

3   expected to vindicate the laws by pursuing their own claims," indirect victims—those who claim

4   that the harm to the direct victim led to their injury—cannot recover. *Anza v. Ideal Steel Supply*

5   *Corp.*, 547 U.S. 451, 459-60 (2006); *see Hemi*, 559 U.S. at 9; *Holmes v. Secs. Investor*

6   *Protection Corp.*, 503 U.S. 258, 268 (1992). The "critical mass" theory lets those not directly

7   harmed recover based on deception suffered by some critical mass of class members. But Cricket

8   customers who actually were deceived are the "immediate victims" of the alleged fraud, and they

9   are able to "pursu[e] their own claims." *Anza*, 547 U.S. at 459-60; *see also Harmoni Int'l Spice,*

10  *Inc. v. Hume*, 914 F.3d 648, 652 (9th Cir. 2019) (proximate cause absent unless "no more direct

11  victim . . . is better positioned to sue"). Thus, there is no basis to engage in "intricate, uncertain

12  inquiries" into whether others were indirectly harmed, as plaintiffs seek here. *Anza*, 547 U.S. at

13  459-60; *see Holmes*, 503 U.S. at 269-70; *Harmoni*, 914 F.3d at 652 (no proximate cause if

14  "difficulty will arise ascertaining what portion of the claimed damages is attributable to the

15  defendants' unlawful conduct").

16       Plaintiffs rely, Dkt. 332 at 16-17, on *Painters & Allied Trades District Council 82 Health*

17  *Care Fund v. Takeda Pharmaceuticals Co.*, 943 F.3d 1243 (9th Cir. 2019). *Takeda* does not

18  support the critical-mass theory. Causation was satisfied there because patients and third-party

19  payers alleged that they "would not have paid for" a drug if they had been warned about

20  increased cancer risk from a drug. *Id.* at 1246, 1251. There were no allegations that the drug

21  maker obtained an illegal price premium from patients and third-party payers who were not

22  deceived, as plaintiffs allege here.

23       *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185

24  F.3d 957 (9th Cir. 1999), forecloses the argument that injuries to a subset of deceived customers

25  can serve as the basis for claimed injuries to class members who were not deceived. There, the

26  Ninth Circuit rejected the plaintiff health plans' claim that tobacco companies had injured them;

27  smokers were the "direct victims" of the challenged conduct and could themselves bring RICO

28

13

claims against the companies. *Id.* at 964; *see Takeda*, 943 F.3d at 1252 n.9. Plaintiffs argue *Oregon Laborers* is distinguishable because in this case there is a "direct link" between the challenged advertising and their alleged injury. Dkt. 332 at 16. But plaintiffs present no evidence that any customer relied on the disputed advertising, so they have not shown a direct link.

**III.    Plaintiffs' damages claim for alleged service-plan overcharges fails because there were no overpayments under plaintiffs' theory of damages.**

The Court should grant summary judgment to Cricket with respect to plaintiffs' claim that they overpaid for 4G service plans. Plaintiffs concede that under their experts' damages theory, Freitas *underpaid* for her 4G plan. Dkt. 312 at 22-24. Because Freitas has been deemed (over Cricket's objection) typical of absent class members, Cricket is entitled to summary judgment for any claim for service plan overcharges. Plaintiffs likewise do not contest that their experts calculated no overpayment for any service plan purchased before September 15, 2013. Thus, at a minimum, plaintiffs cannot recover any service-plan damages for that period.

**A.    Plaintiffs concede that Freitas did not overpay for her 4G service plan.**

In their expert reports, Mallinson and Browne contend that no class member should have paid more than $40 per month for a 4G service plan after September 2013. Dkt. 312-13 at 9. In its summary-judgment motion, Cricket explained that Freitas's average payment was not more than $40 per month. Because of various plan discounts, she underpaid for Cricket's 4G plan by $3 during the class period. Dkt. 312 at 29-30; *see also* Dkt. 311-4 at 55-56, 138-140.

Plaintiffs do not dispute the amount that Freitas paid. Instead, they contend Freitas is not limited to damages during the class period, which runs through September 2014. Dkt. 332 at 23-24. Instead, they claim she can recover for any damages incurred until January 2015, when she migrated from legacy Cricket to New Cricket. *Id.* But even using that later date, Freitas still would not have overpaid under plaintiffs' damages theory. If the additional monthly payments from September 2014 to January 2015 were included in the calculation, Freitas still would have paid $30 less for her plan than she would have paid at the monthly rate plaintiffs say was allowed. Dkt. 312-15 ¶ 11-12 & Ex. C.

Plaintiffs' other responses simply do not dispute the fact that under their own damages

14

model, Freitas underpaid for her plan. Plaintiffs explain that they did not consider the discounts that Freitas received because their experts relied on a document that lacked that information. Dkt. 332 at 20 (discussing Dkt. No. 312-18). That explains *why* the experts miscalculated the amount that Freitas paid for her service, but it does not generate a dispute over the fact that Freitas suffered no damages.[8] Plaintiffs also contend that the Court should ignore the discounts Freitas received, because the benchmark amount did not consider the possibility of discounts. Dkt. 332 at 20. But plaintiffs have provided no evidence of such discounts, and anyway, their argument makes no sense. Plaintiffs' experts said that Cricket's service plan should have cost $40 per month without 4G, Dkt. 312-13 ¶ 213, and if they had thought a Cricket plan should have cost less, they would have said that. Plaintiffs cannot arbitrarily move the goalposts just because the only remaining named plaintiff suffered no damages under their theory.

Because Freitas did not overpay for her 4G service plan based on the undisputed facts, the Court should grant partial summary judgment to Cricket on her claim to damages from a service-plan overpayment.

### B. The pre-September 15, 2013, class claims for service-plan overpayments fail because there were no overpayments during that period.

It is undisputed that plaintiffs' experts calculated zero damages from the sale of 4G service plans before September 15, 2013. See Dkt. 312 at 30-31. Plaintiffs' only response is that their expert made a "conservative" estimate of service-plan overpayments. Dkt. 332 at 24-25. But their explanation for *why* their experts calculated no overpayment does not change the undisputed fact that under their model, there was no overpayment, and so they cannot recover damages for service-plan overpayments during that time. The Court therefore should grant Cricket partial summary judgment as to damages from plan sales before that date.

### CONCLUSION

The Court should grant summary judgment to Cricket.

---

[8] By contrast, Mallinson and Browne did take into account real-world payment information when calculating the smartphone-related damages of rejected putative class representative Jamie Postpichal. *See* Dkt. 312-13 ¶ 157; Browne Rep. at 13 (same).

1

2       Dated: December 13, 2021                    Respectfully submitted,

3                                                   **MAYER BROWN LLP**

4

5                                                   */s/ Archis A. Parasharami*
                                                    Archis A. Parasharami

6
                                                    Counsel for Defendant
7                                                   CRICKET WIRELESS, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28