| | |
|---|---|
| SIDLEY AUSTIN LLP<br>David L. Anderson (SBN 149604)<br>dlanderson@sidley.com<br>Sheila A.G. Armbrust (SBN 265998)<br>sarmbrust@sidley.com<br>555 California Street, Suite 2000<br>San Francisco, CA 94104<br>Telephone: (415) 772-1200<br>Facsimile: (415) 772-7400<br><br>MAYER BROWN LLP<br>Archis A. Parasharami (State Bar No. 321661)<br>aparasharami@mayerbrown.com<br>Kevin Ranlett (*pro hac vice*)<br>kranlett@mayerbrown.com<br>Daniel E. Jones (*pro hac vice*)<br>jones@mayerbrown.com<br>1999 K Street NW<br>Washington, DC 20006<br>Telephone: (202) 263-3000<br>Facsimile: (202) 263-3300<br><br>*Attorneys for Defendant*<br>*Cricket Wireless, LLC* | MAYER BROWN LLP<br>Matthew Ingber (*pro hac vice*)<br>mingber@mayerbrown.com<br>Jarman D. Russell (*pro hac vice*)<br>jrussell@mayerbrown.com<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 506-2500<br>Facsimile: (212) 849-1910<br><br>CROWELL & MORING LLP<br>Kristin J. Madigan (SBN 233436)<br>KMadigan@crowell.com<br>3 Embarcadero Center, 26th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 986-2800<br>Facsimile: (415) 986-2827<br><br>CROWELL & MORING LLP<br>Christopher A. Cole (*pro hac vice*)<br>CCole@crowell.com<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2595<br>Telephone: (202) 624-2500<br>Facsimile: (202) 628-5116<br><br>*Attorneys for Defendant*<br>*Cricket Wireless, LLC* |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| URSULA FREITAS, individual, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRICKET WIRELESS, LLC,<br><br>Defendant. | Case No. 3:19-cv-07270-WHA<br><br>**DECLARATION OF ANNE-MARIE BLANDINO IN SUPPORT OF CRICKET WIRELESS, LLC'S MOTION TO ENFORCE TEXT-MESSAGE AND ELECTRONIC-SIGNATURE ARBITRATION AGREEMENTS OF POTENTIAL CLASS MEMBERS**<br><br>Date: February 24, 2022<br>Time: 8:00 am.<br>Location: Courtroom 12, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>Complaint Filed: November 4, 2019 |

I, Anne-Marie Blandino, declare as follows:

1. I have personal knowledge of the following facts, and if called as a witness I could and would testify competently as to their truth.

2. Although I am currently employed by AT&T, I was employed by Cricket Wireless, LLC ("Cricket") from May 2014 to January of 2021. Between 2014 and 2016, and between 2018 and 2020, I managed a field marketing organization as Director of Field Marketing. From 2016 through 2017, I managed both a customer acquisition and retention organization.

3. Following approval of the merger between AT&T and legacy Cricket, on May 18, 2014, New Cricket launched on AT&T's GSM network.

4. I am familiar with the manner in which Cricket sent text-message campaigns to account owners following its acquisition by AT&T to inform them of Cricket's new Terms and Conditions. Although I was not personally involved in sending those text-message campaigns, I am familiar with Cricket's policies and procedures after the merger for sending text-message notifications to account owners, as marketing would use text-messaging campaigns to send marketing materials to customers. As a result, I am familiar with the Telescope platform that was used to send text messages. I also have examined the system-generated records regarding those campaigns, which were created in the regular and ordinary course of business when the text messages were sent by the Telescope platform.

5. I have reviewed a document Bates numbered CRICKET02508560, which was also appended to my prior declaration in this matter. Dkt 202-1. This document is a spreadsheet that includes information regarding certain text-message campaigns sent using the Telescope platform. In my position, I have worked with system-generated records of text-message campaigns and am familiar with the information these records contain.

6. According to that spreadsheet, on May 22, 2014, Cricket sent text messages to approximately 3.4 million legacy Cricket recipients ("May 22 Messages"), informing them of Cricket's updated Terms and Conditions of Service, "which includes your agreement to dispute resolution through binding individual arbitration instead of jury trials or class actions[.]" Dkt 202-1.

7. The intended recipients of the May 22 Messages were all 3.4 million Cricket account owners at the time. When Cricket updates its Terms and Conditions, its custom and practice has been to notify all account owners by text message. I have been involved in other text-message campaigns to all Cricket account owners regarding legal notices and policy changes.

8. When Cricket intended to send legal notices affecting all customers, such as updated Terms and Conditions, Cricket would send the text message to all of its account owners using an automated vendor tool (at that time, the Telescope platform).

9. A Cricket account may have multiple lines of service. Based on my experience with marketing in the wireless industry, it is standard practice when speaking publicly about a company's customer base to refer to everyone using a line of service as a "subscriber" or "customer." But Cricket account owners control the account and are responsible for paying for service.

10. According to Cricket's records of the May 22 Messages, Cricket sent text messages in either English or Spanish, depending upon the account owner's language preference.

11. Specifically, Cricket sent the following text message to the 1,933,685 Cricket customers who had smartphones (and an English language preference):

> See Cricket's updated Terms and Conditions of Service, which includes your agreement to dispute resolution through binding individual arbitration instead of jury trials or class actions at http://mycrk.it/1kmlTEn.

- 3 -

DECLARATION OF ANNE-MARIE BLANDINO,
CASE NO. 3:19-CV-07270-WHA

12. That link, if pressed by the recipient, would have taken the account owner to Cricket's then-current Terms and Conditions (at www.cricketwireless.com/terms).

13. Cricket sent the same message, but in Spanish, to the 284,365 legacy Cricket customers who had smartphones (and a Spanish language preference).

14. Cricket sent the following text message to the 1,067,453 legacy Cricket customers who had feature phones (and an English language preference):

> Crickets new Ts&Cs, which includes dispute resolution through binding arbitration instead of jury trials or class actions, are at cricketwireless.com.

15. Cricket sent the same message, but in Spanish, to the 151,711 legacy Cricket customers who had feature phones (and a Spanish language preference).

16. In my experience, there are always a small number of intended recipients of a text-message campaign whose devices do not receive the original text message. When a text message is not immediately delivered to a device, the cellular network will continue to attempt to resend the message for these customers for 48 hours after the original message is sent. If the Cricket customer does not receive the original message within 48 hours, as matter of company policy and practice, Cricket would make another attempt to reach that customer using the Telescope platform as part of a "fallout" campaign to recipients who did not receive the message when originally sent.

17. Cricket made additional attempts to reach the "fallout" customers from the May 22, 2014 text message campaign. Specifically, Cricket sent follow-up text-messages using the Telescope platform on June 10, 2014, June 16, 2014, June 24, 2014, July 1, 2014, and July 7, 2014. *See* Dkt 202-1.

1  I declare under penalty of perjury of the laws of the United States that the foregoing is true
2  and correct.
3  Executed at Alpharetta, Georgia on January __7__, 2022.

Anne-Marie Blandino