SIDLEY AUSTIN LLP
David L. Anderson (SBN 149604)
dlanderson@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

MAYER BROWN LLP
Archis A. Parasharami (SBN 321661)
aparasharami@mayerbrown.com
Kevin S. Ranlett (*pro hac vice*)
kranlett@mayerbrown.com
Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendant*
*Cricket Wireless LLC*

MAYER BROWN LLP
Matthew D. Ingber (*pro hac vice*)
mingber@mayerbrown.com
Jarman D. Russell (*pro hac vice*)
jrussell@mayerbrown.com
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

CROWELL & MORING LLP
Kristin J. Madigan (SBN 233436)
KMadigan@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

CROWELL & MORING LLP
Christopher A. Cole (*pro hac vice*)
CCole@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Defendant*
*Cricket Wireless LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| URSULA FREITAS, individual, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CRICKET WIRELESS, LLC,<br><br>Defendant. | Case No. 3:19-cv-07270-WHA<br><br>**DECLARATION OF GARY W. BRAXTON IN SUPPORT OF CRICKET WIRELESS, LLC's MOTION TO ENFORCE TEXT-MESSAGE AND ELECTRONIC-SIGNATURE ARBITRATION AGREEMENTS OF POTENTIAL CLASS MEMBERS**<br><br>Date: February 24, 2022<br>Time: 8:00 a.m.<br>Location: Courtroom 12, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>Complaint Filed: November 4, 2019 |

I, Gary W. Braxton, declare as follows:

1. I have personal knowledge of the following facts, and if called as a witness I could and would testify competently as to their truth.

2. I am currently employed by Cricket Wireless LLC ("Cricket") as a Senior Manager of Advanced Analytics, which is part of the Advanced Analytics Team within Cricket's Business Operations department.

3. Previously, I was Senior Manager, Strategic Pricing, which is part of the Strategy Team, which is also part of Cricket's Business Operations department.

4. Although I have held a variety of job titles, in all of my roles a significant portion of my responsibilities required interaction with Cricket's databases containing customer information. I am familiar with how, in the regular and ordinary course of business, records in these databases were created, stored, and may be retrieved.

5. Legacy Cricket customer information can be accessed in the Enterprise Data Warehouse (or EDW), where the customer profile information is stored in the regular and ordinary course of business. As part of my responsibilities at Cricket, I routinely retrieve data from the EDW database.

6. In total, on May 1, 2014, there were 3,469,178 unique Cricket accounts, and 4,705,834 lines of service. These accounts are inclusive of all rate plans and product types, and do not include miscellaneous (*e.g.*, demo, employee, test) accounts.

7. In this case, potential class members were assigned customer IDs, an anonymized identification number that is unique for each combination of account number and phone number in order to make it easier for plaintiffs to match smartphone purchases to particular lines of service. A potential class member would have multiple customer IDs if he or she had multiple lines of service on his or her account or multiple accounts. To be consistent with plaintiffs' calculations earlier in this case, which used the number of customer IDs as a proxy for the number of potential class members, in this declaration, I count potential class members by customer ID.

8. Plaintiffs have identified 486,808 unique customer IDs associated with account holders who plaintiffs contend are class members in this case.

9. I reviewed the account records for the 486,808 customer IDs who plaintiffs assert are class members in this case and determined that 480,250 of these customer IDs received at least one legacy Cricket Quick Start Guide (*i.e.*, purchased a device before May 18, 2014). Attached hereto as **Exhibit A** is a list of the customer IDs, names, account numbers, and states (according to their customer address), of these 480,250 customer IDs.

10. In addition, I reviewed the accounts records for the 486,808 customer IDs and determined that 247,797[1] of these customer IDs received at least one New Cricket Terms & Conditions booklet (*i.e.*, purchased a device on or after May 18, 2014). There is some overlap between the number of customers who received both at least one legacy Cricket and one New Cricket booklet (*i.e.*, purchased a device both before and on or after May 18, 2014). Attached hereto as **Exhibit B** is a list of the customer IDs, names, account numbers, and states of these 247,797 customer IDs.

11. The system-generated customer account records I regularly work with and have used to prepare this declaration indicate whether a customer has an active account during a particular billing cycle. Because Cricket provides service on a prepaid basis, if a customer has an active account on a particular date, the customer must have paid for service during the previous billing cycle. Otherwise, Cricket's billing systems would have automatically suspended the account. I reviewed the account records for the 486,808 customer IDs and determined who both (1) had an active account on May 22, 2014, and (2) continued to have an active account in their next billing cycle that began after May 22, 2014. These customers thus paid for service after May 22, 2014.

12. I reviewed the account records for the 486,808 customer IDs and determined that 400,448 of these customer IDs were associated with accounts that were active on May 22, 2014.

---

[1] This number is greater than the number submitted in the September 2, 2021 declaration (Dkt. 313-13) as the date range extends until December 31, 2021.

- 3 -

13. Of those 400,448 customer IDs, 379,813 were associated with account holders that purchased at least one more month of Cricket service (*i.e.*, they had an active account for an additional billing cycle after May 22, 2014) on either the legacy Cricket or New Cricket networks. Attached hereto as **Exhibit C** is a list of the customer IDs, names, account numbers, and states of these 379,813 customer IDs.

14. Of the 400,448 customer IDs associated with accounts active on May 22, 2014, 20,635 customer IDs were associated with account holders that did not pay for an additional month of Cricket service. Attached hereto as **Exhibit D** is a list of the customer IDs, names, account numbers, and states of these 20,635 customer IDs.

15. I also reviewed the account records for these 486,808 customer IDs and determined that 438 customer IDs were associated with accounts that activated (or reactivated) service or added a new line of service online using Cricket's website between April 1, 2017 and December 31, 2021. Attached hereto as **Exhibit E** is a list of the customer IDs, names, account numbers, and states of these 438 customer IDs.

16. I also reviewed the account records for these 486,808 customer IDs and determined which were associated with account holders since May 1, 2017, either returned to Cricket after having terminated service or who added a new line of service onto an existing account at a store. There are 15,529 customer IDs. Attached hereto as **Exhibit F** is a list of the customer IDs, names, account numbers, and states of these 15,529 customer IDs.

[Signature page follows]

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed at San Diego, California on January 7, 2022.

_____
Gary W. Braxton