UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMIE POSTPICHAL and URSULA FREITAS,

       Plaintiffs,

  v.

CRICKET WIRELESS, LLC,

       Defendant.

No. C 19-07270 WHA

**ORDER RE MOTIONS TO EXCLUDE EXPERTS AND FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this RICO action with a tortured history, defendant moves for summary judgment. Defendant has also moved to exclude the opinions and reports of plaintiffs' expert witnesses. For the reasons that follow, defendant's motions are **GRANTED**.

**STATEMENT**

Plaintiffs Jamie Postpichal and Ursula Freitas claim that from 2012 to 2014, defendant Cricket Wireless, LLC, advertised 4G wireless service and sold 4G-capable phones in markets where defendant did not actually provide 4G coverage. The claim is packaged as a RICO violation, based on the theory that Cricket and its retailers formed an enterprise which perpetuated this fraudulent scheme.

The factual allegations underlying the scheme have been explained in prior orders (Dkt. Nos. 261, 277, 298). More relevant here is the roller coaster history. The original complaint in

November 2019 presented over a dozen claims and many different plaintiffs. By the time the third amended complaint was filed in March 2021, thirteen potential class representatives had been dismissed, leaving three plaintiffs asserting two claims: a RICO claim and a California Consumers Legal Remedies Act ("CLRA") claim. The CLRA claim was subsequently dismissed, which led to one of the three plaintiffs withdrawing. The RICO claim meanwhile survived a motion to dismiss. That left our two remaining plaintiffs and their sole RICO claim in this action.

In denying dismissal of the RICO claim, our prior order determined that the injury element of the claim had been sufficiently pled, which relied on "an overcharging theory of harm based on Cricket's premium pricing of 4G phones and plans" (Dkt. No. 261 at 12). Plaintiffs moved for class certification on that same theory and provided preliminary expert reports by Steve Browne and Keith Mallinson outlining potential methods for a corresponding damages model. Among other disputes in opposing class certification, defendant moved to exclude those expert reports, attacking the sufficiency of any proposed damages model.

A subsequent order certified a class with plaintiff Freitas as the sole class representative, as plaintiff Postpichal was deemed unsuitable to be a class representative. That order declined to consider — and therefore denied as moot — defendant's challenges to plaintiffs' experts Browne and Mallinson because their preliminary reports were unnecessary for deciding class certification (Dkt. No. 298 at 18). Specifically, the only damages issue to be decided at the time was whether plaintiffs' price premium damages theory met the commonality and predominance requirements for class certification. The order "relie[d] upon common sense (not the expert reports) in finding that a feasible classwide method[] of damages calculation exists" because "the actual value of the plans and phones . . . can be discerned from Cricket's internal records and comparisons to non-4G phones and plans" (*Id.* at 15). The order explicitly deferred evaluating the sufficiency of the actual model calculating damages in this action, stating that "[t]he admissibility of final expert reports may be reraised at a later stage" (*Id.* at 18).

2

1    Defendant soon reraised those issues. After plaintiffs served final expert reports,
2  defendant moved to disqualify Expert Mallinson, exclude the expert reports of Mallinson and
3  Browne, and for summary judgment. Defendant also moved to compel arbitration of class
4  members, which resulted in two separate modifications of the class definition and
5  corresponding cross-appeals on the first of those modifications (Dkt. Nos. 370, 417). While
6  the cross-appeals were pending, defendant further moved to decertify the class. An order
7  issued granting defendant's motion, decertifying the class because plaintiffs' damages model
8  as laid out in their final expert reports did not comport with their purported price premium
9  theory, thus failing the requirements of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). In
10 sum, given plaintiffs' price premium theory, their "model must isolate the price premium
11 attributable only to overcharges due to misrepresentations about 4G coverage" (Dkt. No. 455 at
12 5, 8, 10). Instead, plaintiffs' "damages model does not even attempt to control for confounding
13 variables," and merely assumed that the entire price difference of any comparison product or
14 price point was attributable to defendant's alleged misrepresentations (*ibid.*). Decertification
15 of the class mooted plaintiffs' cross-appeals (Dkt. No. 462). Plaintiffs were subsequently
16 denied leave to file a motion for reconsideration of class decertification (Dkt. No. 459).
17    Due to the cross-appeals, defendant's prior motions for summary judgment and to
18 exclude plaintiffs' expert reports were held in abeyance. Following decertification, an order
19 denied those motions as moot, providing an opportunity to recalibrate outstanding motion
20 practice to reflect the current posture of the action as two individual plaintiffs asserting a RICO
21 violation (Dkt. No. 468). Defendants now move once again to exclude the reports and
22 opinions of plaintiffs' damages experts Mallinson and Browne under Rule 702, as well as for
23 summary judgment. This order follows full briefing and oral argument.

**ANALYSIS**

25    Cricket moves for summary judgment on two grounds: that our individual plaintiffs have
26 failed to show competent evidence of injury suffered under RICO, and that plaintiffs cannot
27 show that Cricket and its dealers formed a requisite enterprise under RICO. This order need
28 only address the former, which is dispositive.

3

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Bald assertions that genuine issues of material fact exist are insufficient." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). At summary judgment, the record is viewed in the light most favorable to the nonmoving party, and "all reasonable inferences that may be drawn from the facts placed before the court must be drawn" in favor of the nonmoving party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (citations omitted). The judge does not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255. A trial court may consider only admissible evidence. FRCP 56(c).

Cricket has also moved to exclude plaintiffs' damages expert reports. In opposing summary judgment on the issue of injury, plaintiffs point only to those expert reports as evidence (Opp. 13–15). As such, Cricket's motion to exclude Experts Mallinson and Browne takes center stage, as that motion determines the admissibility of the only evidence for whether injury can be shown in this action.

It is the responsibility of the trial court to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In making this determination, a district court conducts "a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. It bears emphasis that "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)). Under Rule 702 of the Federal Rules of Evidence, a district court should therefore focus on whether:

> (a) the expert[] . . . will help the trier of fact to understand the evidence or to determine a fact in issue;

4

>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

When an expert meets this threshold, "the expert may testify and the [fact-finder] decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565. Because the district court acts as a gatekeeper, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

     It is telling that plaintiffs rely on the same expert reports that failed the class — and much of the same arguments — to now sustain the damages theory for the two individual plaintiffs. Plaintiffs' main argument is that because this district court previously found their asserted price premium damages theory — in principle — sufficient for class certification, they are entitled to a less exacting standard when evaluating the actual damages model used (Mot. Exclude Opp. 1–2). Not so. It was common sense that a price premium theory *can* apply here, just as it is common sense that the resultant damages model must demonstrate that the theory actually *does* apply. This is why it is entirely consistent for this district court to have certified a class on a common damages theory, only to later decertify the class when the actual damages model was scrutinized. This very distinction was argued by plaintiffs in their reply brief in support of their motion for class certification:

>    And even if "factors other than [4G/LTE] likely impacted the price" of Cricket's 4G/LTE phones and plans, "the damage claimed here is the difference in price attributable to [4G/LTE], so the alleged overpayment by Plaintiff[s] is tied directly to the loss of value caused by [Cricket]." *Ecodiesel*, 295 F. Supp. 3d at 967. The plaintiffs' expert can use econometric tools to isolate the value of 4G/LTE. *See* Mot. 19. It does not matter whether he has provided "great detail about [his] proposed damages model." *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) (Alsup, J.). "Whether plaintiff will ultimately prevail in proving damages" is "not necessary to determine at this stage. Instead, the question for class certification is whether [the plaintiffs] ha[ve] met [their] burden of establishing that damages can be proven on a class-wide basis." *Id.* They have.

5

(Dkt. 225 at 8–9). As the foregoing passage illustrates, plaintiffs understood they had to eventually provide a damages model that could account for their purported price premium damages theory. This order — as well as our prior orders — declines to excuse counsel from the very assurances they made to obtain class certification.

Plaintiffs also argue that any deficiency with their damages model is merely a matter of exactness, which does not defeat admissibility as long as they are "in the ballpark" (Opp. 5–6, 15–16, 18). The same argument was made and rejected in plaintiffs' motion for leave to file a motion for reconsideration of class decertification (Dkt. No. 458 at 3 n.1). As our decertification order made clear, plaintiffs' "damages model does not even attempt to control for confounding variables" (Dkt. No. 455 at 8, 10). Far from a question of precision, that flaw is a fundamental mismatch between a damages model that declines to analyze variables and a damages theory predicated on the price premium placed on one such variable. This order will not further belabor the explanations laid out in the decertification order of what plaintiffs' experts did and why it is insufficient. Suffice to say, plaintiffs' attempts to distinguish decisions rejecting similarly flawed damages models do not suggest otherwise: "Addressing the damages methodology, the Court noted that plaintiffs' expert's price premium model 'made no attempt, let alone an attempt based on a sound methodology, to explain how Defendants' misrepresentations caused any amount of damages'" (Mot. Exclude Opp. 17 (quoting *In re POM Wonderful LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) (Judge Dean D. Pregerson))). So too here.

This fundamental flaw of plaintiffs' damages model is also why plaintiffs' general assertions of discovery abuses and insufficient data are unavailing (Mot. Exclude Opp. 6–7, 14, 18). Expert Browne asserts that "we lacked sufficient information and data to adequately perform a reliable hedonic regression utilizing conjoint analysis in this case" (Browne Decl. ¶¶ 14–16). If defendant stonewalled on discovery and cheated the other side out of the evidence needed to control for variables, then that problem should have been timely brought to the Court's attention. Moreover, at the hearing for Cricket's initial motion to exclude plaintiffs' experts when class certification was still pending, plaintiffs' counsel specifically stated that

6

"damages can be calculated using a well-recognized methodology" (Dkt. No. 267 at 17). This representation was inconsistent with the idea that the necessary data were missing.

Plaintiffs' attribution of their damages model's shortcomings to discovery issues is belied by their expert's own testimony. Expert Mallinson himself explains in his rebuttal report that it is "not possible to isolate the value of features such as displays and batteries from the value of cellular connectivity including 4G/LTE . . . because those features are so heavily dependent upon the cellular connectivity in a cellphone" (Dkt. No. 311-3 Exh. D). Again, this came after plaintiffs explained that their "expert can use econometric tools to isolate the value of 4G/LTE" at class certification (Dkt. 225 at 8–9). If discovery abuses had deprived plaintiffs of information necessary to sustain their damages model all along, why did plaintiffs' counsel make such representations? The Court is convinced that discovery abuses played no role in the shortcomings of plaintiffs' experts.

Plaintiffs are correct in asserting that under Rule 702, the district court "is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury" (Mot. Exclude Opp. 13 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013))). Plaintiffs' damages model as proffered via Expert Mallinson did not and does not have the substance necessary to be helpful to a jury. Expert Mallinson's report does not present any "specialized knowledge" that might help isolate the price premium Cricket was able to extract by misrepresenting its 4G capability. FRE 702. The analyses of plaintiffs' expert Mallinson are therefore unreliable and inadmissible under Rule 702 of the Federal Rules of Evidence.

Plaintiffs represent that because Expert Browne merely "accepted as true all of [Expert] Mallinson's conclusions and then calculated damages," there is no basis to exclude Expert Browne's report under Rule 702 (Mot. Exclude Opp. 22–23). In any event, Rule 402 proscribes irrelevant evidence as inadmissible. Plaintiffs concede that "if Mr. Mallinson's conclusions are not able to be presented at trial, then Mr. Browne would have no foundation or ability to calculate the damages" (*ibid.*). Therefore, because Mallinson's expert report is inadmissible, Browne's expert report is irrelevant and likewise inadmissible under Rule 402.

7

With the exclusion of plaintiffs' damages experts, plaintiffs have no other admissible evidence of injury suffered (not even a declaration by themselves), which is a required element of their sole RICO claim. This warrants dismissal. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 500 F. Supp. 3d 940, 952 (N.D. Cal. 2020) (Judge Charles R. Breyer). Possibly, plaintiffs could have met their evidentiary burden on summary judgment by submitting declarations explaining the fact of injury as to the two individual plaintiffs. Perhaps for strategic reasons, plaintiffs decided not to make any such declarations, and so our record is bare on that point. Therefore, there actually is nothing in the record to support fact of injury as to these two plaintiffs, which is necessary to sustain their RICO claim.

## CONCLUSION

For the foregoing reasons, defendant's motions to exclude plaintiffs' experts Mallinson and Browne and for summary judgment are **GRANTED**. Final judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: May 4, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE